IN THE U.S. DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK   X

EQUAN YUNUS, a.k.a. DAMON VINCENT

              -Plaintiff              17-Cv-5839 (AJN)(BCM)

        Vs.                            Description: PI/TRO

J. LEWIS-ROBINSON, ET AL.,

              -Defendants       request for hearing within 14 days

                                 X



## DECLARATION IN OF SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION/TRO

1) Plaintiff does declare the statements contained within this declaration are true under penalty of perjury:

2) I am a citizen of the United States and the State of New York, I am over 21 years of Age and component to give the statements within this declaration:

3) Pursuant to a 2002 conviction, as per New York County indictment # 2001-1074 Plaintiff was convicted of Kidnapping in the second degree, of a minor under the age of seventeen. A drug-related kidnapping where $80,000 and cocaine was demanded for the victim's safe return. Plaintiff was sentenced to 18 years determinate. See. Compl. ¶ 1

4) On June 24, 2016 [less than 30 days before his release from custody completing his 18-year sentence] Plaintiff appeared at a Sexual Offender Registration Act (S.O.R.A.) hearing held in front

of his sentencing court Judge Michael J. Obus. This S.O.R.A. hearing was only held to determine Plaintiff's S.O.R.A. risk level [there is no ability to challenge whether there was a sexual nexus connected to Plaintiff's crime at a S.O.R.A. hearing]. See. Compl. ¶ (11(11 32-33.

5) At Plaintiff's S.O.R.A. hearing Judge Obus decided only for legally mandated reasons (that a kidnapper of a child under the age of 17 years old [pursuant to N.Y. Penal law 135.20] must be made a sex offender, even without a sexual component). Judge Obus noted at Plaintiff's S.O.R.A. hearing he was very aware of the facts of Plaintiff's case, as he handled Plaintiff's criminal case. See. Compl. ¶ 3 (S.O.R.A. hearing minutes, page 20, line 12.).

6) Judge Obus at Plaintiff's S.O.R.A. hearing explicitly stated: "Not only is there no allegation of sexual abuse in this case, but that there was also no suggestion of any history of sexual misconduct on the part of the Defendant at all… nor is there any indication of any propensity of the part of the Defendant for sexual misconduct." Judge Obus further explicitly stated: "under the circumstances here, I am satisfied that there is virtually no likelihood that the Defendant will commit a sex crime ever." See. Compl. ¶ 4, S.O.R.A. hearing minutes, pages 21-22.

7) At the conclusion of the Plaintiff's S.O.R.A. hearing, Judge Obus made the Plaintiff a level one sex offender [the lowest level sex offender]. As he was mandated to make a determination by law, but not by fact of a sexual offense. See ¶ 2 above.

8) The District Attorney's office in the Plaintiff's criminal case conceded Plaintiff committed no sexual offense. See Compl. ¶ 4, S.O.R.A. hearing minutes, pages 8,11,13.

9) Plaintiff was released from imprisonment on July 14, 2016 after serving 15 and one-half years. While incarcerated and after his release Plaintiff was never required or mandated by any entity to take sex offender counseling or classes. See Compl. ¶ 5

10) While incarcerated Plaintiff rehabilitated his life. He attended Bard College taking courses in web development (with a grade of 4.0 G.P.A.), received trade certificates as a paralegal, computer operator, and in building maintenance. Plaintiff taught a full-scale M.B.A. and investment course while in prison. Plaintiff remained completely drug free during his whole incarceration and today is totally drug-free. He has a total of over 17 years of drug abstinence. See Compl. ¶ 6

11) Plaintiff reported to the NYS DOCCS Division of parole within 24 hours of his release from incarceration on July 15, 2016 at approximately 8:30 a.m. when Plaintiff reported to the NYS DOCCS Division of Parole, at 15 2nd Avenue, Brooklyn, New York 11215, He was seen by Parole Officer Bell who conducted his Parole Orientation. See Compl. ¶ 7

12) Plaintiff provided P.O. Bell with the address of the redemption center, a half-way transitional house as his primary residence. He was connected with this half-way house through Jed Tucker, the director of reentry at Bard College, a College the Plaintiff attended during July of 2016. See Compl. 8

13) P.O. Bell who attempted to enter the address of the redemption center as the Plaintiff's residence was notified by Parole Supervisor Smith of NYS DOCCS Division of Parole, 15 2nd Avenue, Brooklyn, NY 11215 that Plaintiff was to register as a sex offender and that he was imposing and would be administering 48-plus special sex offender conditions. These are special

sex offender conditions given to all sex offenders (including the worst level III sex offenders). Without regard to their risk-level, or the particular individual circumstances of each offender. See Compl. ¶ 9

14) Defendant Smith notified the Plaintiff of these 48 plus special sex offender conditions which included the highly intrusive freedom of speech, freedom of expression, freedom of thought, unconstitutionally vague, and unconstitutional liberty restrictions.: providing DNA samples (although NYS DOCCS already had Plaintiff's DNA); registration requirements with local law enforcement; not entering school grounds or facilities with children under 18; notice to law enforcement when registering as a student at a school (See ¶ ) below; total ban on computer and internet use at the total discretion of the parole officer. See special sex offender conditions # 13, and 39. See Compl. Exhibit B; Total Ban on Cellular phone use at the total discretion of the Parole officer. See Compl. Exhibit B, condition# 35; No Photo or Video equipment use at the total discretion of the Parole Officer. Compl. Exhibit B, conditions # 22, 35; No contact with children under 18 (which includes family members). Compl. Exhibit B condition #15; No Photos of family members who are minors. Compl. Exhibit B, condition # 20; No residence or entering a area within 300 yards of where children congregate [virtually the whole of New York City]. Compl. Exhibit B condition #17; No possession of toys, and No Pets. Compl. Exhibit B conditions #18-19; No entering Bookstores, massage Parlors, Juice Bars. Compl. Exhibit B condition #11; No Sexually explicit materials, publications or services. Compl. Exhibit B conditions #12-14; Notice and meeting with Parole Officer of relationships with consenting adults. Compl. Exhibit B condition #24; Notice of entrance of Alcohol and substance abuse treatment programs [even when not necessary]. Compl. Exhibit B condition #25; Forced Sex Offender Counseling [even when not

necessary]. Compl. Exhibit B conditions # 5-10, 29; No Answering Machines. Compl. Exhibit B condition #36; No P.O. Box. Compl. Exhibit B condition #37; No Sexual Enha4ncement. Compl. Exhibit B conditions #45-47; No Operating or Riding in a Motor Vehicle without Permission of the Parole Officer. Compl. Exhibit B condition # 31; No Social Media Use. Compl. Exhibit B condition # 48; Notice of All Visitors to approved residences. Compl. Exhibit B condition # 49-50.

15) All the special sex offender parole conditions were and are at the discretion of the parole officer. Compl. ¶ 10. Doe v. Annucci, 14 Civ. 2953 (PAE) (S.D.N.Y. July 15, 2015)

16) Plaintiff argued to Defendant Smith that there were no standards provided by the NYSDOCCS Division of Parole used to determine exemptions for any of the special sex offender conditions he imposed upon the Plaintiff, and that the conditions were arbitrary and capricious. See Compl. ¶ 11.

17) Plaintiff then attempted to submit to Defendant Smith facts in dispute of these special sex offender conditions which included his S.O.R.A. decision. Plaintiff submitted evidence which showed he had no sexual component to his crime; no suggestion of any history of sexual misconduct, and no likelihood to ever commit a sex offense. See. Compl. ¶ 12, Ex. A, Pages 21-22, ¶¶ 3-5 above.

18) Defendant Smith refused to hear the Plaintiff's factual contest of the 48 plus special sex offender conditions which he imposed. Defendant Smith told Plaintiff to "Man-up" and "hold it down." Plaintiff stated to Defendant Smith: "these are conditions for the worst level two and level three sex offenders." Defendant Smith told the Plaintiff that he didn't care if Plaintiff had

no history of sexual misconduct, he stated he gave these conditions to every sex offender, whose crime is a designated offense. See. Compl. ¶ 13.

19) Plaintiff went further to tell Defendant Smith that his sex offender conditions were case specific to be imposed by the P.O. See Compl. ¶ 14. Ex. C, original parole conditions upon release from NYSDOCCS Custody, Special condition # 14. Plaintiff asked if he could appeal Smith's decision (to impose the 48 highly intrusive and restrictive special sex offender conditions). Defendant Smith stated: "there is no appeal, my decision is final. If you don't sign these special sex offender conditions I will lock you up." Plaintiff reluctantly signed these conditions under duress. See. Compl. ¶ 14.

20) On July 15, 2016 based on Defendant Smith's decision to apply special sex offender conditions as noted in ¶ 10 above, in his discretion Plaintiff was denied the ability to reside at the redemption center and was ordered to stay in a New York City shelter by Defendant Smith, consistent with NYSDOCCS Division of Parole administrative and economic policies. See Compl ¶ 30-35.

21) On July 15, 2016 Plaintiff was notified by P.O. Bell that P.O. Yolanda Vazquez would be his assigned Parole Officer.

22) During the Months between July through September of 2016, Plaintiff made numerous verbally fact-based requests to Defendants Vazquez and her supervisor Granum at scheduled Parole Report dates at 15 2nd Avenue, Brooklyn, NY 11215 to have the most restrictive special sex offender conditions removed, as it was within their discretion. Defendant Vazquez first

refused, with Granum refusing to hear the Plaintiff and echoing Vazquez's decision. See Compl ¶ 17.

23) Defendant Vazquez refused Plaintiff's three submissions of residential addresses from family and friends in request to leave the NYC Shelter system. Claiming these addresses were less than 1,000 feet from a school. These denials were arbitrary and irrational. Plaintiff Provided reliable evidence from three different mapping websites provided by Attorneys showing these residences were more than 1,000 feet from a school. Not only did Plaintiff provide P.O. Vazquez with evidence of his S.O.R.A. hearing Judge's statement of Plaintiff having no likelihood to ever commit a sex crime, Plaintiff also passed schools where minors attended every day while in transit to attend the Borough of Manhattan Community College where Plaintiff is a student. See Compl ¶ 18

24) 1,000 feet, 300-yard buffer zone exclusions doesn't give the Plaintiff notice of these Zones. See Compl ¶ 18. Which subjects the Plaintiff to over-police himself erring on the side of caution, and leaves him open to arbitrary parole violations if he enters these exclusionary zones, these exclusionary zones literally cover the whole city of New York.

25) Plaintiff was forced to stay at BRC Shelter on 146 Clay Avenue, Brooklyn, New York by Defendant's Vazquez, and her supervisor Granum. Defendant Vazquez stated to Plaintiff it was easier to monitor him at BRC than a private residence. Defendant Vazquez would inform everyone she would encounter at BRC and NYSDOCCS Division of Parole Office that Plaintiff was a sex offender, most were not legally required to know this. Plaintiff faced shame, humiliation, ostracism from staff and residents at BRC, and Staff and Parolees at 15 2nd avenue, Brooklyn,

NY. Plaintiff was not a sex offender in fact or by action. He was a sex offender because the law (although wrongly) required it. See Compl ¶ 19.

26) Plaintiff was registered as a sex offender during July of 2016. See Compl ¶ 19. Defendants Granum and Vazquez during the months of July through September of 2016 strictly enforced and applied the 48 Plus Special Sex Offender Conditions Defendant Smith imposed upon the Plaintiff at their discretion. See Compl ¶ 10.

27) Due to these special sex offenders imposed and administered by Defendants Smith, Granum, and Vazquez Plaintiff was denied housing outside the NYC shelter system, 2 job opportunities, Cell Phone Usage, Computer usage, internet usage, and all of the 48 conditions at their discretion. Plaintiff was denied one job in particular, a counseling opportunity with adults because minors "could" possibly attend this facility. The second because Minors were "sometimes" in the facility. Plaintiff was forced to accept a less paying sales job, where he was allowed to have extremely limited use of a tablet of the company he worked for which only processed company orders. See Compl ¶ 20.

28) Plaintiff was never provided a factual contested hearing or appeal from Defendants Vazquez, Granum, and Smith's decisions to deny Plaintiff's Liberty interests, First Amendment Freedom of speech, Freedom of expression and Freedom of thought in violation of his liberty interests without due process protections. Plaintiff wrote Albany, NYS DOCCS Division of Parole to remedy these constitutional violations, there was never any reply. See Compl ¶ 20.

29) During the Month of October of 2016 Plaintiff who was still forced to arbitrarily and irrationally live in the New York City shelter system for Administrative and Economic reasons. See

Compl ¶¶ 30-39. Was transferred out of BRC shelter in Brooklyn to Westhab (Willow Men's Shelter) on 781 East 135th Street, Bronx, NY 10454 by DHS Administrators. As a result, Plaintiff was transferred to the Bronx II special offender's unit with Parole Officer Defendant J. Lewis-Robinson assigned as his parole officer.

30) At his initial parole interview with Defendant P.O. J. Lewis-Robinson on October 26, 2016. Plaintiff (as in the complaint ¶ 9) explained to Defendant J. Lewis-Robinson the true nature of his crime, a kidnapping for ransom with no sexual component, the fact of no suggestion of any history of sexual misconduct, and no likelihood of ever committing a sexual offense. See Compl. ¶ 3. Plaintiff attempted to provide his S.O.R.A. minutes to Defendant J. Lewis-Robinson refused to hear any facts of non-sexual conduct.

31) Defendant J. Lewis-Robinson refused to hear any facts of non-sexual conduct, and stated it was her discretion to assign 48 special sex offender conditions which were restrictive and highly intrusive upon Plaintiff's Freedom of Speech, expression, thought, and due process liberty interests. They were the same 48-plus special sex offender parole conditions as the ones Defendant Smith imposed on July 15, 2016. See Complaint, Ex. B. Defendant J. Lewis-Robinson informed the Plaintiff if he did not sign the special sex offender conditions he'd be "locked up". Plaintiff signed these conditions under duress. See Compl. ¶ 23.

32) On October 28, 2016, Plaintiff Provided a written letter to Defendant J. Lewis-Robinson spelling out each constitutional violation that he believed he sustained at the time, with court precedents showing the illegality of the imposition of the 48 special sex offender conditions particularly the denial of the use of the internet, computers, cellular phones, housing, social

media, job opportunities, and denial of contact with family members who are minors in violations, in violation of freedom of speech and due process. Plaintiff in this written letter notified Defendant J. Lewis-Robinson that his special sex offender parole conditions were not designed to prevent recidivism and future offenses and were arbitrary and capricious. See Compl. Ex. D. Written request to remove S.O.R.A. conditions as unconstitutional, October 28, 2016.

33) In response to the above letter Defendant J. Lewis-Robinson stated she would not hear any facts concerning his request, and her decision was final, and there was no appeal of special conditions, because the Parole Board imposed conditions in her discretion. See Compl. Ex. C

34) Plaintiff while on Defendant J. Lewis-Robinson's Parolee case load made every attempt at employment, while on her caseload he was a counselor at Fortune Society working with the formerly incarcerated and was a business administration student at Borough of Manhattan Community College (BMCC). Plaintiff has over 17 years of drug abstinence, and was forced to participate and attend New York Center of Addiction treatment services ("NYCATS") . See Compl. ¶ 26

35) At his initial Parole interview with Defendant J. Lewis-Robinson on October 26, 2016, Defendant J. Lewis-Robinson scaled back Plaintiff's original curfew from 7 a.m. until 9 p.m. to 8 a.m. to 8 p.m. J. Lewis-Robinson claimed Plaintiff was a sex offender that is why she scaled it back. However, Plaintiff was already labeled a sex offender by Defendants Smith, Granum, and Vazquez who decided to give Plaintiff a curfew from 7 a.m. until 9 p.m. the scale back of Plaintiff's curfew was irrational as Plaintiff maintained good-conduct under the previous curfew. Defendant simply chose to abuse her discretion once again. See Compl. ¶ 27

36) Plaintiff explained to Defendant J. Lewis-Robinson that between employment, college, and drug program counseling (she enforced without Plaintiff's drug use), He needed time to travel, operate, and study. Due to the scale back of his curfew and unnecessary drug programming at NYCATS by Defendant J. Lewis-Robinson, Plaintiff's G.P.A. dropped from 3.7 at Bard College to 2.7 at BMCC while on Defendant J. Lewis-Robinson's caseload. See Compl. ¶ 28.

37) As noted in ¶¶ 29-31 above Defendant J. Lewis-Robinson in her discretion forced Plaintiff to attend NYCATS for substance abuse treatment and anger management, although Plaintiff had not used (marijuana his former drug of choice) in over 16 years, and had not committed any violent conduct in over 13 years. Plaintiff spent 4 hours out of each day to attend NYCATS between sessions and travel time. Defendant J. Lewis-Robinson informed all Parolees at Willow Men's shelter which included the Plaintiff, that she didn't care about parolees' employment, or schooling, she only cared about drug, and sex counseling that's where NYSDOCCS gets its money and that's where parolees will keep their freedom.

38) Defendant J. Lewis-Robinson within her discretion along with Defendant D. Jones forced the Plaintiff who had given 4 Different addresses to reside at, the last one given by the Plaintiff during April of 2017 to Defendant J. Lewis-Robinson was by her own admission more than 1,000 feet from an area where children congregate. Plaintiff requested from Defendants J. Lewis-Robinson and Defendant D. Jones (Robinson's Supervisor) on over 6 occasions to be allowed to reside at this address. Defendants J Lewis-Robinson and D. Jones refused to allow Plaintiff to reside at this address without cause and in abuse of their discretion. See Compl. ¶ 30.

39) Defendant J. Lewis-Robinson refused to make a site visit to the above address without cause and in abuse of discretion. Defendant D. Jones during April of 2016 at 82 Lincoln Ave, Bronx, NY 10454 informed the Plaintiff he would defer to Defendant J. Lewis-Robinson in imposing and applying the 48-plus special sex offender conditions and refused to hear facts in dispute. Defendant J. Lewis-Robinson informed the Plaintiff in refusing to allow him to leave the shelter that she wished to keep him (the Plaintiff) on her caseload. Defendant D. Jones enforced the 48 plus special sex offender parole conditions against the Plaintiff. See Compl. ¶ 30.

40) There are over 100 individuals at Willow Men's Shelter on Parole. The city of New York pays Willow Men's Shelter (Westhab); Ward's Island; and Many Other Shelters which house Parolees, $3,000 per month per Parolee to house individuals on Parole in New York City alone. Defendants Smith, Granum, and Vazquez in the same light forced Plaintiff and many other Parolees to stay at BRC, 146 Clay Ave, Brooklyn, NY at a rate of $3,000 a month, per parolee. See Compl. ¶ 31.

41) Defendants J. Lewis-Robinson and Vazquez stated they would rather administer Parole within the shelter than allow individuals to stay at private residences. They both stated to the Plaintiff while he was on their caseload, it is easier to monitor parolees, administer drug testing, polygraphs, and submit parole violations at the shelter, than make individual visits to individual private residences. Most parole violations are for non-serious, non-misdemeanor offenses. Which she and her fellow employees use to bolster the appearance of protecting society through inflated recidivism rates, which lead to division of parole employee promotions and favorable statistics for the NYSDOCCS Division of parole to justify their importance to society, and keep funding for the NYSDOCCS Division of Parole. See Compl. ¶ 32.

42) Another source of bolstered recidivist statistics for the NYSDOCCS Division of parole comes from NYCATS. Many individuals whose drug usage extends from mental health and stress issues are placed in substance abuse treatment at NYCATS which is also forced on individuals with other issues such as anger management, domestic violence, and sex offender treatment. Many individuals like the Plaintiff who are not drug users at all are forced to go to NYCATS by Defendant P.O. J. Lewis-Robinson and her Co-Workers. Plaintiff is forced at NYCATS to submit to drug toxicology testing a minimum of 3-5 times per week. Plaintiff is constantly drug tested even without any history of positive toxicology or illegal drug use. Each toxicology costs Medicaid approximately $700. Plaintiff has attended NYCATS since October of 2016 to May of 2017, and from July 2017 until the current date the minimum cost to Medicaid is $75,000 for the first period. See Compl. ¶ 33 and over $50,000 for the second period.

43) The NYCATS program runs this racket with the NYSDOCCS Division of Parole. Hundreds if not thousands of Parolees a year are sent to NYCATS by Parole, many are kept for years or the duration of their Parole at NYCATS. See Compl. ¶ 34.

44) Plaintiff brought these issues of Medicaid fraud to the attention of Medicaid officials by calling a Medicaid fraud hotline, his complaint was taken, and Medicaid officials said they'd be in contact with the plaintiff. As of this Date no action has been taken. See. Compl. ¶ 35.

45) Plaintiff who had no history of misconduct in a sexual form, and who was determined by a court of law to have no likelihood to commit a sex crime ever (a lack of recidivism or future offenses) was given by defendants J. Lewis-Robinson, and Smith through special sex offender conditions broad and sweeping bans on social media, internet use, cellular phone use, photo and

video equipment, computer ownership and use, and unique internet identifiers. See Compl. ¶ 10, 20-26, 36, Ex. B.

46) Punishment for violations of these conditions require a minimum of 15 months prison time, up to the maximum remainder of his sentence. Defendants J. Lewis-Robinson, Smith, D. Jones, Granum, Vazquez, and Annucci, all made decisions to deny Plaintiff internet, cellular phone usage, social media, video and photos and their equipment, and use internet identifiers without any history of sexual misconduct or a likelihood of sex offenses ever. See Compl. ¶¶ 3-5 was a denial of his first amendment rights and due process. Defendants Annucci, D. Jones, Smith, J. Lewis-Robinson, Granum, or Vazquez developed no standards or procedure to be used to evaluate requests for exemptions. See Compl. ¶¶ 36.

47) The Free Speech, Free Expression, Free thought, social media, cellular phone usage, video and photo, and video and photo equipment, and internet identifiers bans by Defendants J. Lewis-Robinson, Smith, D. Jones, Granum, Yolanda Vazquez, and Annucci have caused not only the Plaintiff to cease using these mediums of communication, speech, and expression to be able to communicate with family and friends. It has stopped his family and friends from using these forms of speech to communicate with the Plaintiff and others similarly situated. See Compl. ¶ 37.

48) The Special sex offender conditions implemented and applied by Defendants J. Lewis-Robinson, Smith, Granum, D. Jones, Vazquez, and Annucci do not target specific conduct they include complete bans of free speech, free expression, free thought and their mediums of communication. See Compl. ¶ 37. These means of speech and communication are integral to everyday life in today's world.

49) Defendants J. Lewis-Robinson, Smith, Granum, D. Jones, Vazquez, and Annucci have all arbitrarily and capriciously implemented, given, and applied 48 plus special sex offender conditions. See Compl. ¶¶ 39, 10, 20-28. Without due process notice and hearing. See Compl. ¶¶ 10, 20-28, 36-39. Which are highly intrusive and restrictive of the Plaintiff's freedom of speech, expression, thought and liberty interests. See Compl. ¶¶ 10, 20-28, 36-39.

50) Plaintiff without any history of sexual misconduct, or sexual nexus to any crime committed. See Compl. ¶¶ 3-4, was required by his special sex offender parole conditions given and applied by Defendants J. Lewis-Robinson, D. Jones, Smith, Granum, Vazquez, and Annucci to immediately register with local law enforcement, as a sex offender. See Compl. Ex. B, Condition # 1. (upon his release) these requirements of registration last a minimum 20 years. See Compl. ¶ 40.

51) As a result of registration requirements as a sex offender Plaintiff was known in the community and law enforcement circles as a sex offender. Plaintiff during one parole report date with Defendant J. Lewis-Robinson began to cry due to the intense requirements of the special sex offender conditions. (this was during February of 2017). Defendant J. Lewis-Robinson Demanded to meet Plaintiff's Fiancée and required that he describe the nature of their relationship sexual or otherwise. Defendants J. Lewis-Robinson, D. Jones, Smith, Granum, Vazquez, and Annucci all strictly enforced and applied the 48 plus special sex offender parole conditions. See Compl. ¶ 10, 41.

52) Plaintiff who was forced to live in the NYC Shelter system could not find housing nor live with his fiancée or family members. See Compl. ¶¶ 10, 15, 18-21, 30-32 due to sex offender status. This was also irrational as Willow Men's shelter is directly across the street from a family shelter

in the Bronx where children are housed. Being a sex offender in the shelter system placed a significant strain on his relationship with his fiancée and family which would range from them worrying about Plaintiff's travel, which places curfew in jeopardy and Plaintiff's safety due to Plaintiff's stay at the shelter with other parolees, there are also frustrated arguments as to why Plaintiff was even a sex offender at all. Having Plaintiff remain in the shelter system was odd given NYSDOCCS Division of Parole policy against association with known felons. See Compl. 42.

53) Plaintiff's Son experienced sorrow and frustration due to his father being labeled a sex offender. Plaintiff faced humiliation, fear of safety due to the sex offender label (where he always had to explain to other parolees and shelter residents, his crime had no sexual component, and he had no history of sexual misconduct). See Compl. ¶¶ 18-21, 43.

54) Plaintiff's employment opportunities were limited to low paying sales jobs and working with the formerly incarcerated. See Compl. ¶¶ 18-21, 43. Plaintiff constantly feared losing employment if it was discovered he was labeled as a sex offender. Plaintiff could not find jobs in his true occupational callings of web development, paralegal, and finance due to the sex offender label being placed on him without a true sex crime, sexual component or nexus, history of sexual misconduct, and no likelihood to ever commit a sex offense. See Compl. ¶¶ 4, 44. After July of 2017 Defendant J. Lewis-Robinson refused to allow Plaintiff any employment without true justification, and used his sex offender status to do so.

55) Other Tangible burdens on Plaintiff's Liberty Interests including the fact that Plaintiff cannot engage in first amendment activities of using social media, the internet, cellular phone, a computer, going into bookstores, inability to use internet identifiers (for anonymous speech),

video and photo equipment, sex offender registration requirements and information made available to the public, inability to have contact with family members who are minors (and have photos of them), inability to watch or look at pornography, notice of all visitors at approved residence, no operation or riding in motor vehicle. See Compl. ¶¶ 45 [See Compl. Paragraph 10 for full list of tangible burdens]. These 48 plus special sex offender parole conditions were arbitrary and capriciously given without minimum due process notice, hearing, discovery or standard of review (proof), or appeal. Nor were they reasonably related to Plaintiff's conduct, designed to prevent recidivism, and future offenses. See Compl. ¶¶ 45.

56) Plaintiff was also forced into humiliation at his college, Borough of Manhattan Community College by Defendants Vazquez, Granum, and Smith during the months between August – September of 2016 when Plaintiff was forced to notify school officials that he was a sex offender, which was disseminated at the school, Plaintiff faced humiliation and ostracism. See Compl. ¶ 46.

57) Defendants J. Lewis-Robinson, D. Jones, Smith, Granum, Yolanda Vazquez, and Anthony Annucci by imposing and administering special sex offender parole conditions due to his registration as a sex offender have placed tangible burdens on Plaintiff's liberty interests that are not rationally related to this past conduct, or to prevent future offenses. By denying Plaintiff access to computer, and the internet, the defendants have denied the Plaintiff the means to conduct research pertinent to and prosecute this lawsuit and Yunus v. Jones, et al., 16-CV-1282 (GTS/ATB). See Compl. ¶ 47.56) Defendant J. Lewis-Robinson Plaintiff's Current Parole Officer, before July of 2017 used Plaintiff's special sex offender parole conditions to control every minute detail of his life, while knowing he had no past history of sexual misconduct for future propensity

for sexual misconduct. After learning of this lawsuit which was filed on August 1, 2017 Defendant J. Lewis-Robinson has used Plaintiff's special sex offender conditions as a means to deny Plaintiff all forms of employment and residence not outside Willow Men's shelter without reason or justification.

58) Plaintiff filed this lawsuit Informa pauperis he is willing to post a bond which he can pay. He is actually unable to post any bond he can pay a bond of $5.00 U.S. The Defendants would not sustain any economic loss as a result of this proceeding, actually the favorable determination of this motion would result in cost savings for the Defendants as NYSDOCCS Division of Parole resources would not be used to provide intense parole supervision for the Plaintiff.

59) The Plaintiff since July of 2016 has made every attempt to remove these special sex offender parole conditions. The Defendants have denied the Plaintiff every request. The Plaintiff has been in contact with Defense counsel Amanda Shoffel since November of 2017, During January of 2018 she explained to that Plaintiff she was aware of the facts of this case, and could and would make no attempt to resolve this matter, and preferred litigation and explained to the Plaintiff he was free to file any motion he wished.

## **CONCLUSION**

For the reasons stated above, the Court must grant Plaintiff's motion and issue a preliminary injunction and TRO prohibiting and ordering the Defendants, their agents, officers, and employees to refrain from enforcing any of the challenged conditions, pending adjudication of this matter on the merits.

(SWORN) I DO DECLARE UNDER PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT.

28 U.S.C. 1746

                                  Respectfully submitted,

                              X _____
                              Equan Yunus, a.k.a. Damon Vincent, Pro Se
                              2068 Daly Ave, Apt # 4-A
                              Bronx, NY 10460

Date: January 22, 2018