IN THE U.S. DISTRICT COURT FOR
<u>THE SOUTHERN DISTRICT OF NEW YORK   X</u>

**Equan Yunus Sr. a.k.a. Damon Vincent**

                                        **-Plaintiff**                    **17-Cv-5839 (AJN)(BCM)**


                                                                         **42 U.S.C. 1983**

                    **Vs.**

                                                                         **AMENDED COMPLAINT**

**Joan Lewis-Robinson, Parole Officer; Derek Jones,**
**Bureau Chief; Rodney Young, Regional Director;**
**Rodney Smith, Senior Parole Officer;**
**Denise Grannum, Senior Parole Officer, Yolanda**
**Vazquez, Parole Officer; Anthony Annucci**
**Acting Commissioner, NYS DOCCS DIVISION**
**OF PAROLE; Andrew Cuomo, Governor, New**
**York State – In their Individual and Official**
**Capacities, Jointly and Severally**

                                        **-Defendants**
_____ **X**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/18

### 1)  <u>STATEMENT OF JURISDICTION</u>

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. 1331, 1334 (3)(4), and 2201. The Court has proper venue over this action pursuant to 28 U.S.C. 1391(b)(1)(2).

### 2)  <u>PARTIES TO THIS ACTION</u>

Plaintiff: Equan Yunus Sr. a.k.a. Damon Vincent
Mailing Address: 2068 Daly Avenue, Apt# 4-A, Bronx, NY 10460


Defendant: Joan Lewis-Robinson
Official Position: Parole Officer
Employment Address: NYSDOCCS Division of Parole
82 Lincoln Ave, Bronx, NY 10454

Defendant: Derek Jones
Official Position: Bureau Chief
Employment Address: NYSDOCCS Division of Parole
82 Lincoln Ave, Bronx, NY 10454

Defendant: Rodney Young
Official Position: Regional Director
Employment Address: NYSDOCCS Division of Parole
82 Lincoln Ave, Bronx, NY 10454

Defendant: Rodney Smith
Official Position: Senior Parole Officer
Employment Address: NYSDOCCS Division of Parole
15 2nd Avenue, Brooklyn, NY 11215

Defendant: Denise Grannum
Official Position: Senior Parole Officer
Employment Address: NYSDOCCS Division of Parole
15 2nd Avenue, Brooklyn, NY 11215

Defendant: Yolanda Vazquez
Official Position: Parole Officer
Employment Address: NYSDOCCS Division of Parole
15 2nd Avenue, Brooklyn, NY 11215

Defendant: Anthony Annucci
Official Position: Acting Commissioner
Employment Address: NYSDOCCS Division of Parole
Bldg. #2, 1220 Washington Ave., Albany NY, 12226

### 3)   PREVIOUS LAWSUITS

Vincent v. House, et al., 07-CV-0632a (W.D.N.Y. 2009) – Monetary Settlement

Vincent v. Smith, et al., 07-CV- 0676 (N.D.N.Y. 2010) – Monetary Settlement

Vincent v. Sitnewski, et al., 10-CV-3340 (S.D.N.Y. 2015) - Monetary Settlement

Yunus v. Jones, et al., 16-CV-1282 (N.D.N.Y.) – Pending

### 4)   EXHAUSTION OF ADMINISTRATIVE REMEDIES

i)   Plaintiff Equan Yunus Sr. a.k.a. Damon Vincent ("Plaintiff") was informed by

Defendants Joan Lewis-Robinson ("Robinson") and Rodney Smith ("Smith") there

was no formal, hearing, or appeal mechanism to challenge his illegal sex offender

status, classification, S.O.R.A. conditions, and Special Sex Offender Parole Conditions

imposed and administered by Defendants Robinson, Smith, Denise Grannum

("Grannum"), Derek Jones ("Jones"), Anthony Annucci ("Annucci"), and Andrew

Cuomo ("Cuomo"). See

ii)   Defendant Robinson informed the Plaintiff on October 26, 2016 at 82 Lincoln Ave,

Bronx, NY 10454 On October 26, 2016 at 82 Lincoln Ave, Bronx, NY 10454 at

Approximately 1:30 p.m. as to Plaintiff's attempts at exhaustion of administrative

remedies: "the buck stops with me, it's at my discretion whether you have sex

offender special conditions." Plaintiff was given these special sex offender

conditions which required his registration with law enforcement and have many

liberty interests' restrictions by Defendant Robinson without notice, hearing,

standard of proof, or appeal. Plaintiff replied to these denials on October 26, 2016.

See exhibit C

iii)    During April of 2017 Defendant Jones informed Plaintiff that he and Defendant

Robinson would administer and implement all special sex offender parole conditions

without notice, hearing, standard of proof, and appeal despite the fact plaintiff had

no history of sexual misconduct, and the S.O.R.A. hearing judge Michael J. Obus

stating Plaintiff presented no likelihood of sexual misconduct ever. See ¶4-5.

Defendant Jones informed the Plaintiff that he could not Appeal or grieve parole

conditions.


iv)    On July 15, 2016 at approximately 10:30 a.m. at 15 2nd Avenue, Brooklyn, NY 11215

Defendant Smith verbally informed the Plaintiff to "man-up, and hold it down."

Defendant Smith told the Plaintiff there was no grievance or appeal mechanism to

challenge his special sex offender parole conditions, when Plaintiff attempted to

present evidence showing his special sex offender conditions were illegal. Plaintiff's

S.O.R.A. hearing lawyer Sam Mendez faxed information concerning Plaintiff's non-

sexual misconduct history and lack of evidence of recidivism or future offenses. ."

Plaintiff was given these special sex offender conditions which required his

registration with law enforcement and have many liberty interests' restrictions by

Defendant Smith without notice, hearing, standard of proof, or appeal.

### 5.  CLAIM # 1

Where Plaintiff's Crime of conviction Kidnapping for ransom had no sexual component, and he had no suggestion or evidence of past history of sexual misconduct, no propensity for sexual misconduct, and no future chances of sexual misconduct, and he was forced to register as a sex offender. NYS DOCCS Division of Parole Officials Robinson, Jones, Young, Smith, Grannum, Vazquez, and Annucci have all violated the 14th Amendment Procedural Due Process Liberty Interest Rights of the Plaintiff causing a "Stigma-Plus" violation damaging Plaintiff's reputation and causing tangible burdens by imposing, enforcing and administering special sex offender parole conditions without notice, hearing, standard of proof, and appeal process. Where these parole conditions were not based on past conduct, designed to prevent recidivism, or future offenses, and not related to the goals of protecting the public.

1)      Pursuant to a 2002 conviction, as per New York County indictment # 2001-1074 Plaintiff was convicted of Kidnapping in the second degree, of a minor under the age of seventeen. A drug-related kidnapping where $80,000 and cocaine was demanded for the victim's safe return. Plaintiff was sentenced to 18 years determinate. At No time during his Plaintiff allocution or, sentencing was Plaintiff ever made aware of a mandatory sex offender designation or sex offender registration.


2) During April of 2016, 90 days before June 24, 2016, Plaintiff was first made aware that he was by law mandated to appear at a S.O.R.A. hearing to determine his Sex offender risk level.

3) On June 24, 2016 [less than 30 days before his release from custody completing his 18-year sentence] Plaintiff appeared at a Sexual Offender Registration Act (S.O.R.A.) hearing held in front of his sentencing court Judge Michael J. Obus. This S.O.R.A. hearing was only held to determine Plaintiff's S.O.R.A. risk level [there is no ability to challenge whether there was a sexual nexus connected to Plaintiff's crime at a S.O.R.A. hearing].


4) At Plaintiff's S.O.R.A. hearing Judge Obus decided only for legally mandated reasons (that a kidnapper of a child under the age of 17 years old [pursuant to N.Y. Penal law 135.20] must be made a sex offender, even without a sexual component). Judge Obus noted at Plaintiff's S.O.R.A. hearing he was very aware of the facts of Plaintiff's case, as he handled Plaintiff's criminal case.  See Exhibit A (S.O.R.A. hearing minutes, page 20, line 12.).

5) Judge Obus at Plaintiff's S.O.R.A. hearing explicitly stated: "Not only is there no allegation of sexual abuse in this case, but that there was also no suggestion of any history of sexual misconduct on the part of the Defendant at all... nor is there any indication of any propensity of the part of the Defendant for sexual misconduct." Judge Obus further explicitly stated: "under the circumstances here, I am satisfied that there is virtually no likelihood that the Defendant will commit a sex crime ever." See. EX. A, S.O.R.A. hearing minutes, pages 21-22.

6) At the conclusion of the Plaintiff's S.O.R.A. hearing, Judge Obus made the Plaintiff a level one sex offender [the lowest level sex offender]. As he was mandated to make a determination by law, but not by fact of a sexual offense. See ¶ 3 – 5 above.

7)  During Plaintiff's S.O.R.A hearing Judge Micheal J. Obus never made any determination of parole conditions applicable to the Plaintiff, parole condition determinations were to made by and within the Authority of the NYS DOCCS Division of Parole.

8) The District Attorney's office in the Plaintiff's criminal case conceded Plaintiff committed no sexual offense. See EX. A, S.O.R.A. hearing minutes, pages 8,11,13.

9) During the months of between April until July of 2016, Plaintiff was given parole conditions by the NYS DOCCS Division of Parole which stated: "I will comply with all case specific sex offender conditions to be imposed by the P.O. (Parole Officer)."

10) Plaintiff was released from imprisonment on July 14, 2016 after serving 15 and one-half years. While incarcerated and after his release Plaintiff was never required or mandated by any entity to take sex offender counseling or classes.

11) While incarcerated Plaintiff rehabilitated his life. He attended Bard College taking courses in web development (with a grade of 4.0 G.P.A.), received trade certificates as a paralegal, computer operator, and in building maintenance. Plaintiff taught a full-scale M.B.A. and investment course while in prison. Plaintiff remained completely drug free during his whole incarceration and today is totally drug-free. He has a total of over 17 years of drug abstinence. See Ex. A

12) Plaintiff reported to the NYS DOCCS Division of parole within 24 hours of his release from incarceration on July 15, 2016 at approximately 8:30 a.m. when Plaintiff reported to the NYS DOCCS Division of Parole, at 15 2nd Avenue, Brooklyn, New York 11215, He was seen by Parole Officer Bell who conducted his Parole Orientation.

13) Plaintiff provided P.O. Bell with the address of the redemption center, a half-way transitional house as his primary residence. He was connected with this half-way house through Jed Tucker, the director of reentry at Bard College, a College the Plaintiff attended during July of 2016.

14) P.O. Bell who attempted to enter the address of the redemption center as the Plaintiff's residence was notified by Parole Supervisor Smith of NYS DOCCS Division of Parole, 15 2nd Avenue, Brooklyn, NY 11215 that Plaintiff was to register as a sex offender and that he was imposing, enforcing, and would be administering 48-plus special sex offender conditions. These are special sex offender conditions given to all sex offenders (including the worst level III sex offenders). Without regard to their risk-level, or the particular individual circumstances of each offender. these 48 plus special sex offender conditions were and are at the total discretion of the individual parole officer. See Ex. B

15) Defendant Smith notified the Plaintiff of these 48 plus special sex offender conditions which included the highly intrusive freedom of speech, freedom of expression, freedom of thought, unconstitutionally vague, and unconstitutional liberty restrictions.: providing DNA samples (although NYS DOCCS already had Plaintiff's DNA); registration requirements with local law enforcement; not entering school grounds or facilities with children under 18; notice to law enforcement when registering as a student at a school (See ¶ ) below; total ban on computer and internet use at the total discretion of the parole officer. See special sex offender conditions # 13, and 39. See Exhibit B; Total Ban on Cellular phone use at the total discretion of the Parole officer. See Exhibit B, condition# 35; No Photo or Video equipment use at the total discretion of the Parole Officer.  Exhibit B, conditions # 22, 35; No contact with children under 18 (which

8

includes family members).  Exhibit B condition #15; No Photos of family members who are

minors.  Exhibit B, condition # 20; No residence or entering a area within 300 yards of where

children congregate [virtually the whole of New York City].  Exhibit B condition #17; No

possession of toys, and No Pets. Exhibit B conditions #18-19; No entering Bookstores, massage

Parlors, Juice Bars.  Exhibit B condition #11; No Sexually explicit materials, publications or

services.  Exhibit B conditions #12-14; Notice and meeting with Parole Officer of relationships

with consenting adults. Exhibit B condition #24; Notice of entrance of Alcohol and substance

abuse treatment programs [even when not necessary].  Exhibit B condition #25; Forced Sex

Offender Counseling [even when not necessary].  Exhibit B conditions # 5-10, 29; No Answering

Machines. Exhibit B condition #36; No P.O. Box.  Exhibit B condition #37; No Sexual

Enhancement. Exhibit B conditions #45-47; No Operating or Riding in a Motor Vehicle without

Permission of the Parole Officer.  Exhibit B condition # 31; No Social Media Use.  Exhibit B

condition # 48; Notice of All Visitors to approved residences. Compl. Exhibit B condition # 49-50.

16) these special Parole conditions were given to the Plaintiff Smith without notice, hearing,

standard of proof, right to present evidence to refute the conditions, nor any right to appeal.

17) All the special sex offender parole conditions were and are at the discretion of the parole

officer. " I will have no contact with any person under the age of eighteen, without written

Permission of the P.O. See Special condition # 13, "I will comply with all case specific sex

offender conditions to be imposed by the P.O." See Special condition # 13. See. Ex.C,

mandatory special parole conditions imposed by the Board of Parole, NYS DOCCS division of

parole, July 11, 2016.  Doe v. Annucci, 14 Civ. 2953 (PAE) (S.D.N.Y. July 15, 2015)

18) Plaintiff argued to Defendant Smith that there were no standards provided by the NYSDOCCS Division of Parole used to determine exemptions for any of the special sex offender conditions he imposed upon the Plaintiff, and that the conditions were arbitrary and capricious.

19) Plaintiff then attempted to submit to Defendant Smith facts in dispute of these special sex offender conditions which included his S.O.R.A. decision. Plaintiff submitted evidence which showed he had no sexual component to his crime; no suggestion of any history of sexual misconduct, and no likelihood to ever commit a sex offense. Ex. A, Pages 21-22, ¶¶ 3-5 above.

20) Defendant Smith refused to hear the Plaintiff's factual contest of the 48 plus special sex offender conditions which he imposed. Defendant Smith told Plaintiff to "Man-up" and "hold it down." Plaintiff stated to Defendant Smith: "these are conditions for the worst level two and level three sex offenders." Defendant Smith told the Plaintiff that he didn't care if Plaintiff had no history of sexual misconduct, he stated he gave these conditions to every sex offender, whose crime is a designated offense.

21) Plaintiff went further to tell Defendant Smith that his sex offender conditions were case specific to be imposed by the P.O. See Ex. C, original parole conditions upon release from NYSDOCCS Custody, Special condition # 14. Plaintiff asked if he could appeal Smith's decision (to impose the 48 highly intrusive and restrictive special sex offender conditions). Defendant Smith stated: "there is no appeal, my decision is final. If you don't sign these special sex offender conditions I will lock you up." Plaintiff reluctantly signed these conditions under duress.

22) On July 15, 2016 based on Defendant Smith's decision to apply special sex offender conditions as noted in ¶ 15 above, in his discretion Plaintiff was denied the ability to reside at the redemption center and was ordered to stay in a New York City shelter by Defendant Smith, consistent with NYSDOCCS Division of Parole administrative and economic policies. See Compl ¶ 30-35.

23) On July 15, 2016 Plaintiff was notified by P.O. Bell that P.O. Yolanda Vazquez would be his assigned Parole Officer.

24) During the Months between July through September of 2016, Plaintiff made numerous verbally fact-based requests to Defendants Vazquez and her supervisor Granum at scheduled Parole Report dates at 15 2nd Avenue, Brooklyn, NY 11215 to have the most restrictive special sex offender conditions removed, as it was within their discretion. Defendant Vazquez first refused, with Granum refusing to hear the Plaintiff and echoing Vazquez's decision.

**"STIGMA-PLUS" - TANGIBLE BURDEN IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS– RESIDENCY, EMPLOYMENT RESTRICTIONS, FREEDOM OF SPEECH VIOLATIONS**

**UNCONSTITUTIONALLY VAGUE SPECIAL SEX OFFENDER PAROLE CONDITION**

**RESIDENCY RESTRICTION**

25) Defendant Vazquez refused Plaintiff's three submissions of residential addresses from family and friends in request to leave the NYC Shelter system. Claiming these addresses were less than 1,000 feet from a school. These denials were arbitrary and irrational. Plaintiff provided reliable evidence from three different mapping websites provided by Attorneys showing these residences were more than 1,000 feet from a school. Not only did Plaintiff provide P.O. Vazquez with evidence of his S.O.R.A. hearing Judge's statement of Plaintiff having no likelihood to ever

commit a sex crime, Plaintiff also passed schools where minors attended every day while in transit to attend the Borough of Manhattan Community College where Plaintiff is a student.

26) Defendants Joan. Lewis-Robinson, Derek Jones, Rodney Smith, Denise Grannum, Yolanda Vazquez and Anthony Annucci all provided Plaintiff with Special Sex Offender Parole Condition which provides 1,000 feet, 300-yard buffer zone exclusions. These exclusionary buffer zones doesn't give the Plaintiff notice of these Zones.  Which subjects the Plaintiff to over-police himself erring on the side of caution and leaves him open to arbitrary parole violations if he enters these exclusionary zones, these exclusionary zones literally cover the whole city of New York.

**"STIGMA-PLUS" - Reputational Harm**

27) Plaintiff as a registered Sex offender was forced to stay at BRC Shelter on 146 Clay Avenue, Brooklyn, New York by Defendant's Vazquez, and her supervisor Granum. Defendant Vazquez stated to Plaintiff it was easier to monitor him at BRC than a private residence. Defendant Vazquez would inform everyone she would encounter at BRC and NYSDOCCS Division of Parole Office that Plaintiff was a sex offender, most were not legally required to know this. Plaintiff faced shame, humiliation, ostracism from staff and residents at BRC, and Staff and Parolees at 15 2nd avenue, Brooklyn, NY. Plaintiff was not a sex offender in fact or by action. He was a sex offender because the law (although wrongly) required it. Plaintiff was and is currently a registered sex offender.

28) Plaintiff was registered as a sex offender during July of 2016. Defendants Granum and Vazquez during the months of July through September of 2016 strictly enforced and applied the

48 Plus Special Sex Offender Conditions Defendant Smith imposed upon the Plaintiff at their discretion. See ¶ 15 above and Ex. B.

**EMPLOYMENT RESTRICTIONS**

29) Not only was Plaintiff denied the ability to engage his occupational callings of web development, paralegal, and finance Due to these special sex offenders imposed and administered by Defendants Smith, Granum, and Vazquez Plaintiff was denied housing outside the NYC shelter system, 4 job opportunities, Cell Phone Usage, Computer usage, internet usage, and all of the 48 conditions at their discretion. Plaintiff was denied one job in particular, a counseling opportunity with adults because minors "could" possibly attend this facility. The second because Minors were "sometimes" in the facility. Plaintiff was forced to accept a less paying sales job, where he was allowed to have extremely limited use of a tablet of the company he worked for which only processed company orders.

30) During May of 2016 Defendant J. Lewis-Robinson caused Plaintiff to lose his job with the Fortune Society due to the actions of his Defendant Robinson imposing, and enforcing sex offender parole conditions, denial of cellular phone usage and computer use (which plaintiff had for college purposes) she gave Plaintiff a parole violation which caused him to lose his job while other parole officers did not for the same parole violations. Defendant Robinson during January of 2018 caused Plaintiff to lose a job opportunity with CGS agents a call center with Access-A-Ride without reason or justification, under the guise of sex offender parole conditions.

# Lack of Sufficiency of Process by Defendants Rodney Smith, Denise Grannum, Yolanda Vazquez, and Anthony Annucci

31) Plaintiff was never provided notice, a factual contested hearing, an opportunity to present evidence, standard of proof or appeal from Defendants Vazquez, Granum, and Smith's decisions to deny Plaintiff's Liberty interests, First Amendment Freedom of speech, Freedom of expression, Freedom of thought (through denial of cell phone usage, internet, social media, denial of entrance into bookstores), occupational calling of one's choice, providing unconstitutional vague parole conditions (residency restrictions. See ¶ 24 above), Denial of relationships with extended family members. (as he could not visit relatives who had minors present), and lack of privacy in sexual relationships. These Defendants decision is in violation of his liberty interests without due process protections. Plaintiff wrote Albany, NYS DOCCS Division of Parole to remedy these constitutional violations, there was never any reply. See November 22, 2016 letter to NYS DOCCS Division of Parole. Defendant Anthony Annucci as acting NYSDOCCS Commission enforced a policy which allowed Defendants Smith, Grannum, and Vazquez to implement and administered special sex offender parole conditions upon the Plaintiff without notice, hearing, standard of proof or appeal.

## Lack of Sufficiency of Process by Defendants Joan Lewis-Robinson, Derek Jones, Rodney Young and Anthony Annucci

32) During the Month of October of 2016 Plaintiff who was still forced to arbitrarily and irrationally live in the New York City shelter system for Administrative and Economic reasons. Was transferred out of BRC shelter in Brooklyn to Westhab (Willow Men's Shelter) on 781 East 135th Street, Bronx, NY 10454 by DHS Administrators. As a result, Plaintiff was transferred to the Bronx II special offender's unit with Parole Officer Defendant J. Lewis-Robinson assigned as his parole officer.

33) At his initial parole interview with Defendant P.O. J. Lewis-Robinson on October 26, 2016.

Plaintiff explained to Defendant J. Lewis-Robinson the true nature of his crime, a kidnapping for

ransom with no sexual component, the fact of no suggestion of any history of sexual

misconduct, and no likelihood of ever committing a sexual offense. See ¶¶ 1-6 above. Plaintiff

attempted to provide his S.O.R.A. minutes to Defendant J. Lewis-Robinson refused to hear any

facts of non-sexual conduct and no likelihood to ever commit a sex offense ever.

34) Defendant J. Lewis-Robinson refused to hear any facts of non-sexual conduct, and stated it

was her discretion to assign 48 special sex offender conditions which were restrictive and highly

intrusive upon Plaintiff's Freedom of Speech, expression, thought, and due process liberty

interests. They were the same 48-plus special sex offender parole conditions as the ones

Defendant Smith, Grannum and Vazquez imposed on July 15, 2016. See¶ 15 above. See

Complaint, Ex. B. Defendant J. Lewis-Robinson informed the Plaintiff if he did not sign the

special sex offender conditions he'd be "locked up". Plaintiff signed these conditions under

duress. See Ex. B

35) Plaintiff was never provided notice, a factual contested hearing, an opportunity to present

evidence, standard of proof or appeal from Defendant Joan Lewis-Robinson, Derek Jones,

Rodney Young, and Anthony Annucci. These Defendants decisions to deny Plaintiff's Liberty

interests, First Amendment Freedom of speech, Freedom of expression, Freedom of thought

(through denial of cell phone usage, internet, social media, denial of entrance into bookstores.),

occupational calling of one's choice, providing unconstitutional vague parole conditions

(residency restrictions. See ¶ 10 above), Denial of relationships with extended family members.

(as he could not visit relatives who had minors present), and lack of privacy in sexual

relationships were are in violation of his liberty interests without due process protections.

Plaintiff wrote Albany, NYS DOCCS Division of Parole to remedy these constitutional violations,

there was never any reply. See November 22, 2016 letter to NYS DOCCS Division of Parole.

Defendant Anthony Annucci as acting NYSDOCCS Commission enforced a policy which allowed

Defendants Joan Lewis-Robinson to implement and administered special sex offender parole

conditions upon the Plaintiff without notice, hearing, standard of proof or appeal.

36)On October 28, 2016, Plaintiff Provided a written letter to Defendant J. Lewis-Robinson

spelling out each constitutional violation that he believed he sustained at the time, with court

precedents showing the illegality of the imposition of the 48 special sex offender conditions

particularly the denial of the use of the internet, computers, cellular phones, housing, social

media, job opportunities, and denial of contact with family members who are minors in

violations, in violation of freedom of speech and due process. Plaintiff in this written letter

notified Defendant J. Lewis-Robinson that his special sex offender parole conditions were not

designed to prevent recidivism and future offenses and were arbitrary and capricious. See

Compl. Ex. D. Written request to remove S.O.R.A. conditions as unconstitutional, October 28,

2016.

37) In response to the above letter Defendant J. Lewis-Robinson stated she would not hear any

facts concerning his request, and her decision was final, and there was no appeal of special

conditions, because the Parole Board imposed conditions in her discretion. See Compl. Ex. D

38) Plaintiff while on Defendant J. Lewis-Robinson's Parolee case load made every attempt at

employment, while on her caseload he was previously a counselor at Fortune Society working

with the formerly incarcerated and was a currently a business administration student at Borough of Manhattan Community College (BMCC). Plaintiff has over 17 years of drug abstinence, and was forced to participate and attend New York Center of Addiction treatment services ("NYCATS") . See Compl. ¶ 26

39) At his initial Parole interview with Defendant J. Lewis-Robinson on October 26, 2016, Defendant J. Lewis-Robinson scaled back Plaintiff's original curfew from 7 a.m. until 9 p.m. to 8 a.m. to 8 p.m. J. Lewis-Robinson claimed Plaintiff was a sex offender that is why she scaled it back. However, Plaintiff was already labeled a sex offender by Defendants Smith, Granum, and Vazquez who decided to give Plaintiff a curfew from 7 a.m. until 9 p.m. the scale back of Plaintiff's curfew was irrational as Plaintiff maintained good-conduct under the previous curfew. Defendant simply chose to abuse her discretion once again. See Compl.  ¶ 27

40) Plaintiff explained to Defendant J. Lewis-Robinson that between employment, college, and drug program counseling (she enforced without Plaintiff's drug use), He needed time to travel, operate, and study. Due to the scale back of his curfew and unnecessary drug programming at NYCATS by Defendant J. Lewis-Robinson, Plaintiff's G.P.A. dropped from 3.7 at Bard College to 2.7 at BMCC while on Defendant J. Lewis-Robinson's caseload. See Compl. ¶ 28.

41)  Defendant J. Lewis-Robinson in her discretion forced Plaintiff to attend NYCATS for substance abuse treatment and anger management, although Plaintiff had not used (marijuana his former drug of choice) in over 16 years, and had not committed any violent conduct in over 13 years. Plaintiff spent 4 hours out of each day to attend NYCATS between sessions and travel time. Defendant J. Lewis-Robinson informed all Parolees at Willow Men's shelter which

included the Plaintiff, that she didn't care about parolees' employment, or schooling, she only cared about drug, and sex counseling that's where NYSDOCCS gets its money and that's where parolees will keep their freedom.

42) Defendant J. Lewis-Robinson within her discretion along with Defendant D. Jones forced the Plaintiff who had given 4 Different addresses to reside at, the last one given by the Plaintiff during April of 2017 to Defendant J. Lewis-Robinson was by her own admission more than 1,000 feet from an area where children congregate. Plaintiff requested from Defendants J. Lewis-Robinson and Defendant D. Jones (Robinson's Supervisor) on over 6 occasions to be allowed to reside at this address. Defendants J Lewis-Robinson and D. Jones refused to allow Plaintiff to reside at this address without cause and in abuse of their discretion.

43) Defendant J. Lewis-Robinson refused to make a site visit to the above address without cause and in abuse of discretion. Defendant D. Jones during April of 2016 at 82 Lincoln Ave, Bronx, NY 10454 informed the Plaintiff he would defer to Defendant J. Lewis-Robinson in imposing, enforcing and applying the 48-plus special sex offender conditions and refused to hear facts in dispute. Defendant J. Lewis-Robinson informed the Plaintiff in refusing to allow him to leave the shelter that she wished to keep him (the Plaintiff) on her caseload. Defendant D. Jones enforced the 48 plus special sex offender parole conditions against the Plaintiff.

44) There are over 100 individuals at Willow Men's Shelter on Parole. The city of New York pays Willow Men's Shelter (Westhab); Ward's Island; and Many Other Shelters which house Parolees, $3,000 per month per Parolee to house individuals on Parole in New York City alone.

Defendants Smith, Granum, and Vazquez in the same light forced Plaintiff and many other Parolees to stay at BRC, 146 Clay Ave, Brooklyn, NY at a rate of $3,000 a month, per parolee.

45) Defendants J. Lewis-Robinson and Vazquez stated they would rather administer Parole within the shelter than allow individuals to stay at private residences. They both stated to the Plaintiff while he was on their caseload, it is easier to monitor parolees, administer drug testing, polygraphs, and submit parole violations at the shelter, than make individual visits to individual private residences. Most parole violations are for non-serious, non-misdemeanor offenses. Which she and her fellow employees use to bolster the appearance of protecting society through inflated recidivism rates, which lead to division of parole employee promotions and favorable statistics for the NYSDOCCS Division of parole to justify their importance to society, and to keep funding for the NYSDOCCS Division of Parole.

46) Another source of bolstered recidivist statistics for the NYSDOCCS Division of parole comes from NYCATS. Many individuals whose drug usage extends from mental health and stress issues are placed in substance abuse treatment at NYCATS which is also forced on individuals with other issues such as anger management, domestic violence, and sex offender treatment. Many individuals like the Plaintiff who are not drug users at all are forced to go to NYCATS by Defendant P.O. J. Lewis-Robinson and her Co-Workers. Plaintiff is forced at NYCATS to submit to drug toxicology testing a minimum of 3-5 times per week. Plaintiff is constantly drug tested even without any history of positive toxicology or illegal drug use. Each toxicology costs Medicaid approximately $700. Plaintiff has attended NYCATS since October of 2016 to May of 2017, and from July 2017 until the current date the minimum cost to Medicaid is $75,000 for the first period, and over $50,000 for the second period.

47) The NYCATS program runs this racket with the NYSDOCCS Division of Parole. Hundreds if not thousands of Parolees a year are sent to NYCATS by Parole, many are kept for years or the duration of their Parole at NYCATS.

48) Plaintiff brought these issues of Medicaid fraud to the attention of Medicaid officials by calling a Medicaid fraud hotline, his complaint was taken, and Medicaid officials said they'd be in contact with the plaintiff. As of this Date no action has been taken.


TANGIBLE BURDEN IN VIOLATION OF FOURTEENTH AMENDMENT- DUE PROCESS - DENIAL OF FREEDOM OF SPEECH IN VIOLATION OF THE FIRST

AMENDMENT BY DEFENDANTS JOAN LEWIS-ROBINSON, DEREK JONES, RODNEY YOUNG, RODNEY SMITH, DENISE GRANNUM, YOLANDA VAZQUEZ, AND ANTHONY ANNUCCI.

49) Plaintiff who had no history of misconduct in a sexual form, and who was determined by a court of law to have no likelihood to commit a sex crime ever (a lack of recidivism or future offenses) was given by defendants J. Lewis-Robinson, and Smith through special sex offender conditions broad and sweeping bans on social media, internet use, cellular phone use, photo and video equipment, computer ownership and use, and unique internet identifiers. Ex. B.

50) Punishment for violations of these conditions require a minimum of 15 months prison time, up to the maximum remainder of his sentence. Defendants J. Lewis-Robinson, Smith, D. Jones, Young, Granum, Vazquez, and Annucci, all made decisions to deny Plaintiff internet, cellular phone usage, social media, video and photos and their equipment, and use internet identifiers without any history of sexual misconduct or a likelihood of sex offenses ever. See above. ¶¶ 3-5 was a denial of his first amendment rights and due process. Defendants Annucci, Young, D.

Jones, Smith, J. Lewis-Robinson, Granum, or Vazquez developed no standards or procedure to be used to evaluate requests for exemptions.

51) The Free Speech, Free Expression, Free thought, social media, cellular phone usage, video and photo, and video and photo equipment, and internet identifiers bans by Defendants J. Lewis-Robinson, Smith, D. Jones, Granum, Yolanda Vazquez, and Annucci have caused not only the Plaintiff to cease using these mediums of communication, speech, and expression to be able to communicate with family and friends. It has stopped his family and friends from using these forms of speech to communicate with the Plaintiff and others similarly situated. See Compl. ¶ 37.

52) The Special sex offender conditions implemented and applied by Defendants J. Lewis-Robinson, Smith, Granum, D. Jones, Vazquez, and Annucci do not target specific conduct they include complete bans of free speech, free expression, free thought and their mediums of communication. See Compl. ¶ 37. These means of speech and communication are integral to everyday life in today's world.

53) Defendants J. Lewis-Robinson, Smith, Granum, D. Jones, Vazquez, and Annucci have all arbitrarily and capriciously implemented, given, and applied 48 plus special sex offender conditions. See Compl. ¶¶ 39, 10, 20-28. Without due process notice and hearing. See Compl. ¶¶ 10, 20-28, 36-39. Which are highly intrusive and restrictive of the Plaintiff's freedom of speech, expression, thought and liberty interests. See Compl. ¶¶ 10, 20-28, 36-39.

54) Plaintiff without any history of sexual misconduct, or sexual nexus to any crime committed. See Compl. ¶¶ 3-4, was required by his special sex offender parole conditions given and applied

by Defendants J. Lewis-Robinson, D. Jones, Smith, Granum, Vazquez, and Annucci to

immediately register with local law enforcement, as a sex offender. See Compl. Ex. B, Condition

# 1. (upon his release) these requirements of registration last a minimum 20 years. See Compl.

¶ 40.

TANGIBLE BURDEN IN VIOLATION OF THE FOURTEENTH AMENDMENT

DUE PROCESS– DENIAL IN PRIVACY IN SEXUAL RELATIONSHIPS BY DEFENDANT
JOAN LEWIS-ROBINSON.

55) As a result of registration requirements as a sex offender Plaintiff was known in the

community and law enforcement circles as a sex offender. Plaintiff during one parole report

date with Defendant J. Lewis-Robinson began to cry due to the intense requirements of the

special sex offender conditions. (this was during February of 2017). Defendant J. Lewis-

Robinson Demanded to meet Plaintiff's Fiancée and required that he describe the nature of

their relationship sexual or otherwise, which the Plaintiff was forced to describe. Defendants J.

Lewis-Robinson, D. Jones, Smith, Granum, Vazquez, and Annucci all strictly enforced and

applied the 48 plus special sex offender parole conditions. See Compl. ¶ 10, 41.

## "STIGMA-PLUS" Reputational Harms

56) Plaintiff who was forced to live in the NYC Shelter system could not find housing nor live

with his fiancée or family members. See Compl. ¶¶ 10, 15, 18-21, 30-32 due to sex offender

status. This was also irrational as Willow Men's shelter is directly across the street from a family

shelter in the Bronx where children are housed.  Being a sex offender in the shelter system

placed a significant strain on his relationship with his fiancée and family which would range

from them worrying about Plaintiff's travel, which places curfew in jeopardy and Plaintiff's

safety due to Plaintiff's stay at the shelter with other parolees, there are also frustrated arguments as to why Plaintiff was even a sex offender at all. Having Plaintiff remain in the shelter system was odd given NYSDOCCS Division of Parole policy against association with known felons. See Compl. 42.

57) Plaintiff's Son experienced sorrow and frustration due to his father being labeled a sex offender. Plaintiff faced humiliation, fear of safety due to the sex offender label (where he always had to explain to other parolees and shelter residents, his crime had no sexual component, and he had no history of sexual misconduct). Plaintiff was and is currently a registered sex offender. See Compl. ¶¶ 18-21, 43.

58) Plaintiff was also forced into humiliation at his college, Borough of Manhattan Community College by Defendants Vazquez, Granum, and Smith during the months between August – September of 2016 when Plaintiff was forced to notify school officials that he was a sex offender, which was disseminated at the school, Plaintiff faced humiliation and ostracism. See Compl.  ¶ 46.

"STIGMA-PLUS" TANGIBLE BURDEN IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS– DENIAL ABILITY TO WORK IN ONE'S OCCUPATIONAL CALLING BY DEFENDANT JOAN LEWIS-ROBINSON.

59) Plaintiff's employment opportunities were limited to low paying sales jobs and working with the formerly incarcerated. See Compl. ¶¶ 18-21, 43. Plaintiff constantly feared losing employment if it was discovered he was labeled as a sex offender. Plaintiff could not find jobs in his true occupational callings of web development, paralegal, and finance due to the sex offender label being placed on him without a true sex crime, sexual component or nexus,

history of sexual misconduct, and no likelihood to ever commit a sex offense. See Compl. ¶¶ 4,

44. After July of 2017 Defendant J. Lewis-Robinson refused to allow Plaintiff any employment

without true justification, and used his sex offender status to do so.

60) Other Tangible burdens on Plaintiff's Liberty Interests including the fact that Plaintiff cannot

engage in first amendment activities of using social media, the internet, cellular phone, a

computer, going into bookstores, inability to use internet identifiers (for anonymous speech),

video and photo equipment, sex offender registration requirements and information made

available to the public, inability to have contact with family members who are minors (and have

photos of them), inability to watch or look at pornography, notice of all visitors at approved

residence, no operation or riding in motor vehicle. See Compl. ¶¶ 45 [See Compl. Paragraph 10

for full list of tangible burdens]. These 48 plus special sex offender parole conditions were

arbitrary and capriciously given without minimum due process notice, hearing, discovery or

standard of review (proof), or appeal. Nor were they reasonably related to Plaintiff's conduct,

designed to prevent recidivism, and future offenses. See Compl. ¶¶ 45.

61) Defendants J. Lewis-Robinson, D. Jones, Smith, Granum, Yolanda Vazquez, and Anthony

Annucci by imposing, enforcing, and administering special sex offender parole conditions due to

his registration as a sex offender have placed tangible burdens on Plaintiff's liberty interests

that are not rationally related to this past conduct, or to prevent future offenses. By denying

Plaintiff access to computer, and the internet, the defendants have denied the Plaintiff the

means to conduct research pertinent to and prosecute this lawsuit and Yunus v. Jones, et al.,

16-CV-1282 (GTS/ATB). See Compl. ¶ 47.56) Defendant J. Lewis-Robinson Plaintiff's Current

Parole Officer, before July of 2017 used Plaintiff's special sex offender parole conditions to

control every minute detail of his life, while knowing he had no past history of sexual

misconduct for future propensity for sexual misconduct. After learning of this lawsuit which

was filed on August 1, 2017 Defendant J. Lewis-Robinson has used Plaintiff's special sex

offender conditions as a means to deny Plaintiff all forms of employment and residence not

outside Willow Men's shelter without reason or justification. Plaintiff lost 2 jobs in particular

Fortune Society ($45,000 per year) and CGS agents (access-a-ride call center dispatch $30,000

per year) due to Defendant Robinson's irrational enforcement of Plaintiff's special sex offender

parole conditions.

62) The Plaintiff since July of 2016 has made every attempt to remove these special sex

offender parole conditions. The Defendants have denied the Plaintiff every request. The

Plaintiff has been in contact with Defense counsel Amanda Shoffel since November of 2017,

During January of 2018 she explained to that Plaintiff she was aware of the facts of this case,

and could and would make no attempt to resolve this matter, and preferred litigation and

explained to the Plaintiff he was free to file any motion he wished.

63) On November 22, 2017 at approximately 1 p.m. at NYSDOCCS Division of Parole 82 Lincoln

Ave, Bronx, NY 1045 Defendant Rodney Young after Plaintiff showed Defendant Young

documents of no history or future risk of sexual misconduct, and no future likelihood of sex

misconduct, while showing Defendant Young case law in support of his constitutional explained

how and why his sex offender parole conditions were unconstitutional to Defendant Young.

Defendant Young stated to Plaintiff that he would not change these special sex offender parole

conditions and stated to Plaintiff: "get your relief in court." Defendant J. Lewis-Robinson was

present for this meeting.

64) Since July of 2016 over one and a half years Plaintiff was forced by Defendants Robinson, Jones, Young, Smith, Grannum, Vazquez, and Annucci to live within the New York City shelter system first at BRC Men's shelter at 146 Clay Avenue, Brooklyn, NY, and then at Willow Men's shelter at 781 135th Street, Bronx, NY these shelter environments are no different than a prison environment, they are filthy dormitory style settings with staff at these shelters and the parole defendants stated above maintaining these shelters like prison environments, there are daily counts, feedings, and punitive obligatory parole and staff meetings orchestrated no different than a state prison. When you add the defendants using special sex offender parole conditions that cover every minute detail of the Plaintiff's life. See S.O.R.A. parole conditions. ¶ 15 above it is shown how Plaintiff still remains without liberty beyond what is normal for a parolee.

A) **The First Constitutional Basis for this Claim under 42 U.S.C. 1983:**
**Where Plaintiff's Crime of conviction kidnapping for ransom had no sexual component, and he no suggestion or evidence of past history of sexual misconduct, no propensity for sexual misconduct, and no future chances of sexual misconduct, and he was forced to register as a sex offender. NYS DOCCS Division of Parole Officials Robinson, Jones, Young, Smith, Grannum, Vazquez, and Annucci have all violated the 14th Amendment Procedural Due Process Liberty Interest Rights of the Plaintiff causing a "Stigma-Plus" violation damaging Plaintiff's reputation and causing tangible burdens by imposing, enforcing and administering special sex offender parole conditions without notice, hearing, standard of proof, and appeal process. Where these parole conditions were not based on past conduct, designed to prevent recidivism, or future offenses, and not related to the goals of protecting the public.**

**B) The Second Constitutional Basis for this Claim under 42 U.S.C. 1983:**
**"STIGMA-PLUS" - TANGIBLE BURDEN IN VIOLATION OF THE FOURTEENTH**
**AMENDMENT DUE PROCESS– RESIDENCY, EMPLOYMENT RESTRICTIONS,**
**FREEDOM OF SPEECH VIOLATIONS, UNCONSTITUTIONALLY VAGUE**
**SPECIAL SEX OFFENDER PAROLE CONDITION RESIDENCY RESTRICTION.**

**C) The Third Constitutional Basis for this Claim under 42 U.S.C. 1983:**
**TANGIBLE BURDEN IN VIOLATION OF THE FOURTEENTH AMENDMENT**
**DUE PROCESS– DENIAL IN PRIVACY IN SEXUAL RELATIONSHIPS BY**
**DEFENDANT JOAN LEWIS-ROBINSON.**

**D) The Fourth Constitutional Basis for this Claim under 42 U.S.C. 1983:**

**TANGIBLE BURDEN IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE**
**PROCESS– DENIAL IN SUBSTANTIVE RIGHT TO RELATIONSHIPS WITH EXTENDED**
**FAMILY MEMBERS.**

**E) THE RELIEF I AM SEEKING FOR THESE CLAIMS IS:**

**$1,500,000.00 IN COMPENSATORY DAMAGES AND $1,500,000.00 IN PUNITIVE**
**DAMAGES. PRELIMINARY, MANDATORY AND PERMANENT INJUNCTIVE RELIEF**
**ENJOINING THE DEFENDANTS, THEIR AGENTS, CO-WORKERS, EMPLOYEES, AND**
**ALL PERSONS ACTING IN CONCERT WITH THEM FROM GIVING, IMPLEMENTING,**
**APPLYING, AND ENFORCING SPECIAL SEX OFFENDER PAROLE CONDITIONS**
**UNLESS NOTICE, HEARING, DISCOVERY OF EVIDENCE, AND A STANDARD OF**
**REVIEW ARE PROVIDED THAT SATISFY THE REQUIREMENTS OF DUE PROCESS.**
**PLAINTIFF REQUESTS DECLARATORY RELIEF DECLARING THE ACTIONS OF THE**
**DEFENDANTS UNCONSTITUTIONAL.**

**F) EXHIBITS IN SUPPORT OF THIS CLAIM:**

EXHIBIT A – S.O.R.A. hearing Damon Vincent, June 24, 2016

EXHIBIT B – Special Sex Offender Parole Conditions Damon Vincent

EXHIBIT C – Original Parole Conditions of Release. July 11, 2016 – Damon Vincent

EXHIBIT D – Letter Equan Yunus a.k.a. Damon Vincent, October 28, 2016. Requesting removal of S.O.R.A. Conditions

EXHIBIT E – Appeal to Acting NYSDOCCS Commissioner Anthony Annucci, November 22, 2016.

Claim # 2

**Defendants Governor Andrew Cuomo and acting NYSDOCCS Commissioner Anthony Annucci have violated Plaintiff's 14th Amendment due process rights substantively and damaged his reputation in applying and enforcing New York correction law 168 to 168v by labeling and forcing Plaintiff to register as a sex offender for the crime of kidnapping [for ransom] a child under 17 years of age under New York Penal Law 135.20 where his crime of kidnapping had no sexual component or nexus, no sexual misconduct, no suggested history of sexual misconduct, and no likelihood to ever commit a sex crime. Correction law 168 to 168v avers a new fact of kidnapping itself, or Plaintiff's conviction. Heightened constitutional review is necessary as Plaintiff belongs to a suspect class "disenfranchised sex offender of minors" wo have no sexual nexus or history who had no voice during the legislative process during the enactment of S.O.R.A. laws, whose important civil rights were trampled on by a hostile majority. N.Y. correction law 168 to 168v are not narrowly tailored under heightened constitutional review to serve a compelling governmental interest. In violation of the 14th amendment's equal protection clause, as applied.**

65) Plaintiff was convicted of the crime of kidnapping in the second degree. This was a ransom-based, drug related kidnapping of a 14 year old boy demanding $80,000 and cocaine for his safe return. See ¶ 1 above.

66) The sentencing (S.O.R.A. hearing) Judge Micheal J. Obus acknowledged that there was no sexual abuse in this case, no suggestion of any sexual misconduct on the part of the Plaintiff, no indication of any propensity for sexual misconduct, and no likelihood that Plaintiff will commit a sex crime ever. See ¶ 1-4 above.

67) At his S.O.R.A hearing Plaintiff could only challenge his S.O.R.A. risk level and not the nexus of sexual conduct to his crime. See Ex. A

68) Plaintiff belongs to the suspect and distinct class of disenfranchised sex offender of minors. He is convicted of kidnapping of a minor. Although his crime has no sexual component or sexual nexus.

69) Plaintiff labeled as a sex offender against belongs to a class who is suspect, discrete, insular, socially identifiable, and unpopular minority. Plaintiff belongs to a politically powerless, disfavored, and unpopular group, who has no voice in the democratic process, and especially had no defenders of their rights during the S.O.R.A. debates nationwide in both the federal and state legislative process. Sex offenders of minors are a highly disfavored group. To quote Professor Ofer Raban of the University of Utah: "it is hard to think of a group less popular than suspected sex offenders who victimized minors, even terrorists may lose on this one."

70) N.Y. Correction law 168 defines "sex offense" as N.Y. Penal law 135.20 kidnapping, "provided the victim of such… offense is less than seventeen years old and the offender is not the parent of the victim." N.Y. Correction law 168-a[2][a][i]. Kidnapping pursuant to N.Y. Penal law 135.20 is simply an abduction. N.Y. Correction law 168 avers a new fact "sex offense" beyond conviction, not inherent in the crime of kidnapping itself or the Plaintiff's conviction. ¶ 1-4 above which is a violation of due process.)

71) During the legislative process of the jacob wetterling bill in the U.S. senate senator David Durenberger of Minnesota, one of the Sponsors of the Jacob Wetterling Act Stated: "Mr. President, for this senator, there are no competing issues to debate. If a registration requirement for convicted sex offenders will assist law enforcement authorities in one criminal apprehension, or if it will deter a single kidnapping, I believe it is worth implementing." Cong. Rec. 12, 529 (1991).

72) Senator Durenberger's declared – indeed, flaunted – disregard for potential sex offender registrants was echoed in word and action by many federal and state legislators. Unanimous votes often without debates on sex offender registration statutes were common, as were unanimous votes.

73) The Stated purposes of S.O.R.A in New York State, The Federal Government, and other States is to prevent sex offender recidivism and future sex offenses.

74) The evidence used in support of the Jacob wetterling bill and New York's S.O.R.A which includes N.Y. Penal Law 168 – 168v are faulty and inaccurate. It was not the two-thirds recidivism rate, which was later reduced to 46%. Later more accurate studies found the recidivism rate was closer to 15% - 20% when taken from larger and more diverse crime and police statistics (it now stands in the single digits percentage wise). [15% of non-parent abductions involved a sexual crime]. See David Finkelhor & Richard Ormrod, office of Juvenile justice & delinquency prevention, kidnapping of juveniles: patterns from NIBRS@ 6 (june 2000), available at http://wwwncjrs.gov/pdfiles1/181161.pdf["NIBRS"].

75) At all relevant times of this complaint Anthony Annucci was the acting commissioner of NYSDOCCS, and Andrew Cuomo was the Governor of New York State.

76) NYS S.O.R.A, targets those parolees who have parole conditions who are sex offenders as to 1,000 feet buffer zones, but does not target sex offenders who are not on parole.

A) <u>The First Constitutional Basis for this Claim under 42 U.S.C. 1983</u>:
Defendants Governor Andrew Cuomo and acting NYSDOCCS
Commissioner Anthony Annucci have violated Plaintiff's 14th Amendment
due process rights substantively and damaged his reputation in applying
and enforcing New York correction law 168 to 168v by labeling and
forcing Plaintiff to register as a sex offender for the crime of kidnapping
[for ransom] a child under 17 years of age under New York Penal Law
135.20 where his crime of kidnapping had no sexual component or nexus,
no sexual misconduct, no suggested history of sexual misconduct, and no
likelihood to ever commit a sex crime. Correction law 168 to 168v avers a
new fact of kidnapping itself, or Plaintiff's conviction. Heightened
constitutional review is necessary as Plaintiff belongs to a suspect class
"disenfranchised sex offender of minors" wo have no sexual nexus or
history who had no voice during the legislative process during the
enactment of S.O.R.A. laws, whose important civil rights were trampled
on by a hostile majority. N.Y. correction law 168 to 168v are not narrowly
tailored under heightened constitutional review to serve a compelling
governmental interest. In violation of the 14th amendment's equal
protection clause, as applied.

B) <u>THE RELIEF I AM SEEKING FOR THESE CLAIMS IS:</u>
$1,500,000.00 IN COMPENSATORY DAMAGES AND $1,500,000.00 IN
PUNITIVE DAMAGES. PRELIMINARY, MANDATORY AND PERMANENT
INJUNCTIVE RELIEF ENJOINING THE DEFENDANTS, THEIR AGENTS, CO-
WORKERS, EMPLOYEES, AND ALL PERSONS ACTING IN CONCERT WITH
THEM FROM GIVING, IMPLEMENTING, APPLYING, AND ENFORCING
SPECIAL SEX OFFENDER PAROLE CONDITIONS UNLESS NOTICE, HEARING,
DISCOVERY OF EVIDENCE, AND A STANDARD OF REVIEW ARE PROVIDED
THAT SATISFY THE REQUIREMENTS OF DUE PROCESS. PLAINTIFF
REQUESTS DECLARATORY RELIEF DECLARING THE ACTIONS OF THE
DEFENDANTS UNCONSTITUTIONAL.

(SWORN) I DO DECLARE UNDER PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT.
28 U.S.C. 1746

Respectfully submitted,

X_____

Equan Yunus, a.k.a. Damon Vincent, Pro Se

2068 Daly Ave, Apt # 4-A

Bronx, NY 10460

Date: February 13, 2018

Exhibit A

Exhibit A

1

1   SUPREME COURT OF THE STATE OF NEW YORK
2   COUNTY OF NEW YORK:   CRIMINAL TERM: PART 51
    ------------------------------------------X
3   THE PEOPLE OF THE STATE OF NEW YORK       :   Indictment No.
4                   -against-                 :   1074/2001
5   DAMON VINCENT,
6                           Defendant.        :
7   ------------------------------------------X
8                           100 Centre Street
                            New York, N.Y. 10013
9                           June 24, 2016
10

11

12   H O N O R A B L E:     MICHAEL OBUS,

13                                          Justice.

14   A P P E A R A N C E S:

15                       FOR THE PEOPLE:

16                       CYRUS R. VANCE, JR., ESQ.
                         DISTRICT ATTORNEY
17                       NEW YORK COUNTY
                     BY:   ALISSA WIMMER, ESQ.
18

19                       FOR THE DEFENDANT:

20                       OFFICE OF THE APPELLATE DEFENDER

21                   BY:   SAM MENDEZ, ESQ.

22                       ALEXANDRA KEELING, ESQ.

23

24                       SUE-LYNN IRVING
                         SENIOR COURT REPORTER
25

Proceedings                          2

1          THE CLERK:  Calling calendar number three, Damon

2    Vincent, indictment number 1074 of 2001.

3          THE COURT:  Your appearances, please.

4          MR. MENDEZ:  Good afternoon, your Honor.

5          Sam Mendez with the Office of the Appellate

6    Defender for Mr. Vincent.

7          THE COURT:  Good afternoon.

8          MS. KEELING:  And Alexandra Keeling also for --

9    with the Office of the Appellate Defender for Mr. Vincent.

10         Good afternoon, your Honor.

11         THE COURT:  Good afternoon.

12         MS. WIMMER:  Alissa Wimmer for the People.

13         Good afternoon, your Honor.

14         THE COURT:  Good afternoon.

15         This is on the calendar for the sex offender

16   assessment proceeding.  I did receive the defendant's

17   submission.  And I was wondering if the People were

18   intending to submit something in writing at this point?

19         MS. WIMMER:  Your Honor, I emailed your court

20   attorney, because I just got defense motions, I think, last

21   week.  So I'm prepared to do the hearing today without a

22   written response.  If you want a written response at the end

23   of the hearing, before your decision, I'm happy to submit

24   it.

25         THE COURT:  That's fine with the Court.

Proceedings                         2

1          THE CLERK:  Calling calendar number three, Damon

2    Vincent, indictment number 1074 of 2001.

3          THE COURT:  Your appearances, please.

4          MR. MENDEZ:  Good afternoon, your Honor.

5    Sam Mendez with the Office of the Appellate

6    Defender for Mr. Vincent.

7          THE COURT:  Good afternoon.

8          MS. KEELING:  And Alexandra Keeling also for —

9    with the Office of the Appellate Defender for Mr. Vincent.

10          Good afternoon, your Honor.

11          THE COURT:  Good afternoon.

12          MS. WIMMER:  Alissa Wimmer for the People.

13          Good afternoon, your Honor.

14          THE COURT:  Good afternoon.

15          This is on the calendar for the sex offender

16    assessment proceeding.  I did receive the defendant's

17    submission.  And I was wondering if the People were

18    intending to submit something in writing at this point?

19          MS. WIMMER:  Your Honor, I emailed your court

20    attorney, because I just got defense motions, I think, last

21    week.  So I'm prepared to do the hearing today without a

22    written response.  If you want a written response at the end

23    of the hearing, before your decision, I'm happy to submit

24    it.

25          THE COURT:  That's fine with the Court.

1

1  SUPREME COURT OF THE STATE OF NEW YORK
2  COUNTY OF NEW YORK:  CRIMINAL TERM: PART 51
   ------------------------------------------X
3  THE PEOPLE OF THE STATE OF NEW YORK      :   Indictment No.

4              -against-                    :   1074/2001

5  DAMON VINCENT,

6                          Defendant.       :

7  ------------------------------------------X

8                          100 Centre Street
                            New York, N.Y. 10013
9                          June 24, 2016

10

11

12  H O N O R A B L E:      MICHAEL OBUS,

13                                         Justice.

14  A P P E A R A N C E S:

15                          FOR THE PEOPLE:

16                          CYRUS R. VANCE, JR., ESQ.
                            DISTRICT ATTORNEY
17                          NEW YORK COUNTY
                    BY:     ALISSA WIMMER, ESQ.
18

19                          FOR THE DEFENDANT:

20                          OFFICE OF THE APPELLATE DEFENDER

21                  BY:     SAM MENDEZ, ESQ.

22                          ALEXANDRA KEELING, ESQ.

23

24                          SUE-LYNN IRVING
                            SENIOR COURT REPORTER
25

Proceedings                                    3

1          What is Mr. Vincent's CR date at this point?

2          MR. MENDEZ:  It is July 15th, your Honor.

3          Would your Honor be willing to have Mr. Vincent's

4    handcuffs removed so he can write?

5          THE COURT:  Yes.

6          With regard to the assessment itself, I have also

7    reviewed the proposed point assessment from the board.  And

8    I first wanted to inquire, apart from anything else, whether

9    the defense was contesting any of the points allocated on

10   that instrument?

11         MR. MENDEZ:  Yes, your Honor.  Under factor 11,

12   Mr. Vincent should not be scored 15 points, because he has

13   not used drugs or alcohol in many years.  He has been clean

14   and sober.  He has completed a number of drug treatment

15   programs.

16         And the guidelines specifically state that, where

17   a defendant may have had a history of abuse of substances,

18   where since then there has been a period of prolonged

19   abstinence, the Court may decide that no points should be

20   assessed.  And that's very much the case here.  Mr. Vincent

21   has never had any tickets or any positive drug tests during

22   his 15 years of incarceration.

23         THE COURT:  And is there something the People

24   wanted to say about that particular matter?

25         MS. WIMMER:  Well, I will inquire of the Court if

1    you have the presentence report?

2            THE COURT:  I do.

3            MS. WIMMER:  I actually called the board and they

4    would not send me a copy.

5            THE COURT:  It just was faxed here today.

6            Did you want to look at that?

7            MS. WIMMER:  Yes, if I could.  I'm assuming that

8    the board was relying on the presentence report when they

9    stated that the defendant said he started using marijuana at

10   the age of four and alcohol at the age of five.  And that he

11   was using those substances at the time of his arrest.  I

12   could not find anything in the file about that.

13           But I want to give your Honor a number of exhibits

14   that I'm relying on during this hearing.

15           Certainly, the defendant, when he was admitted to

16   prison, indicated that he had a substance and/or alcohol

17   abuse program and did go to programs and complete programs

18   while he was in prison for drug and alcohol abuse.  So we

19   agree with the board's recommendation of --

20           THE COURT:  I think the crux of counsel's argument

21   is that since that time, which is a long time, but, of

22   course, he has been in custody, there is no indication of

23   substance abuse.

24           MS. WIMMER:  I have no indication that he has been

25   abusing drugs or alcohol.  But he has also been incarcerated

Proceedings                                      5

1          for the past 15 years.

2                    THE COURT:  All right.  That's what I understood

3          your position likely to be.  I recognize that in and of

4          itself would not change the assessment level under the

5          board's recommendations, given the other elements.  But that

6          counsel is, among other things, arguing that there should be

7          a downward departure.

8                    I guess the way to do this would be for counsel to

9          present what it is you want to present about why we should

10         do a downward departure.

11                   MR. MENDEZ:  Yes, your Honor.

12                   As your Honor is aware, this is an unusual case in

13         which someone -- Mr. Vincent, who is not a sex offender,

14         must register as a sex offender.  We don't dispute -- there

15         is no dispute that what happened in this case was serious

16         and it was violent.  But what happened in this case was not

17         sexual.

18                   Mr. Vincent has never committed a sex offense.

19         There is no evidence in the record of any sexual misconduct,

20         ever.  And he, therefore, presents no cognizable risk under

21         SORA.  And the only appropriate designation here is level

22         one.

23                   The Court of Appeals has made clear in upholding

24         provision at issue here, the reason why we are here, that

25         persons who are convicted of kidnapping children, who are

Proceedings                                      6

1    not their children, must without exception register under

2    SORA.

3              The Court of Appeals has made clear that it would

4    actually be a better discussion in a case like this to

5    whether Mr. Vincent should register at all.

6              And the Court of Appeals even said that for

7    someone like Mr. Vincent, sex offender is, quote, an

8    incorrect label.

9              And although the Court of Appeals did uphold this

10   provision, the cases in which it has done so made clear, and

11   really answer the question that a level one is all but

12   required.

13             In the first place -- and I will be brief, your

14   Honor -- in the first place there is no dispute that this

15   case was not a sex offense.

16             The board's case summary says, specifically, that

17   Mr. Vincent was not referred, which is in quote, not

18   referred to a sex offender program due to the nature of the

19   instant offense.  And it says that Mr. Vincent must register

20   only because the complainant was an unrelated child.

21             There is nothing else in the record at all that

22   indicates a likelihood of sexual recidivism or that would

23   prove that by clear and convincing evidence, which is the

24   issue and purpose of this case.

25             And I will also just note, your Honor, that in the

Proceedings

7

1   15 years –– as we have also just briefly discussed –– in the

2   15 years since Mr. Vincent was convicted here, he has become

3   a different person.

4        He has told me that he is ashamed of his conduct

5   in this case.  He has a family.  He also has educated

6   himself, essentially, from middle school to college.  He is

7   now enrolled in a program run by Bard College.  He is

8   earning excellent progress reports.

9        This is –– and we have discussed this in our

10  submission –– this is not a typical prison program.  This is

11  a highly selected program.  It has, basically, normal

12  college admissions rate at about 10 percent.

13        Mr. Vincent has been receiving aids.  He has been

14  getting, again, superlative reports, that your Honor can

15  read.  They are attached to our ––

16        THE COURT:  I have them.

17        MR. MENDEZ:  It is a different kind of program

18  than many defendants will be presenting to show their

19  progress.  It is opportunities like this that actually make

20  a difference.

21        So, unless your Honor has any further questions,

22  the issues are laid out in our papers.  And I would say

23  simply put, Mr. Vincent is not a sex offender.

24        And without minimizing –– without minimizing in

25  any way what happened in this case, Mr. Vincent has served

Proceedings                                            8

1     15 years in prison.  And he will be on conditional release

2     until 2019.

3                    There is simply nothing in the record to indicate

4     a likelihood of future sexual offending.  And he should,

5     therefore, be designated a level one.

6                    THE COURT:  Thank you.

7                    If there is something else, I will inquire.

8                    But let me hear what the People have to say.

9                    MS. WIMMER:  Well, your Honor, we do agree with

10    the board's assessment.  The defendant -- we are not

11    contesting that there was not a sexual offense in this case.

12                   But, as your Honor knows, kidnapping is a -- an

13    offense that makes a defendant have to register under SORA.

14    So, the defendant -- I'm sorry -- the board gave the

15    defendant 30 points for being armed with a dangerous

16    instrument.

17                   I don't think there is any issue as to that.  It's

18    laid out in the grand jury minutes and the plea minutes.  I

19    have also provided your Honor with a copy of the voucher.

20                   This is a case in which the defendant abducted a

21    14-year-old innocent boy at gunpoint, threw him into a car,

22    handcuffed him, put a hood over his head, drove him for

23    three hours up to Philadelphia, where he held him hostage,

24    threatening him, assaulted him, shot guns over his head

25    while he was in the closet.  And finally only returned him

Proceedings

9

1    when he received money and drugs.  So, it was a violent act,

2    certainly.

3         The board gave him 30 point for the use of a

4    dangerous instrument.  We do, obviously, agree with that.

5    And he received 20 points because the victim was 14 years

6    old again.  And that's laid out in the grand jury minutes,

7    which was just turned over to your Honor.

8         The board looked at the defendant's criminal

9    history, including the nature and the number of his prior

10   crimes.  And he got 30 points for that, notably because the

11   defendant had a violent felony that was -- that he finished

12   his sentence on within three years of committing this

13   offense.

14        So, he was convicted of an assault two, obviously

15   a violent felony, in 1999.  He received nine months jail.

16   And I believe within a year committed this act and was

17   arrested for this incident.

18        I think it's notable for the Court that this plea

19   on this case also covered another kidnapping incident that

20   occurred two months prior to this, in which the defendant

21   with remarkably similar facts abducted another person 27

22   years of age and held him hostage, drove him to

23   Philadelphia, threatened him with a gun, and kept him there

24   until somebody paid $60,000 for his release.

25        So, this is certainly a violent person with a

1   history of kidnapping.

2           Besides that, he has a number of arrests from out

3   of state, which I gave your Honor a certificate of

4   disposition for a Brooklyn -- I'm sorry -- the assault two

5   was from Brooklyn.  But he also had a drug possession

6   conviction from New Jersey, a violation of probation, and a

7   conspiracy and retail theft from Pennsylvania, and again a

8   simple assault from Pennsylvania.

9           So, obviously, the guidelines for the board

10  indicates that an offender's prior history is significantly

11  related to his likelihood of recidivism, particularly when

12  it includes a violent crime or a sex crime.  In this case,

13  the defendant has committed two kidnappings.  So I think

14  that's relevant to show his rate of recidivism when he is

15  released.

16          The board also scored him 15 points for drug and

17  alcohol abuse.  Again I'm relying on the board indicating

18  that the defendant stated that he used marijuana and alcohol

19  at a young age, and was using marijuana and PCP at the time

20  of his arrest.

21          Certainly, he was referred to a treatment program

22  in prison.  And he has been in prison for the last 15 years.

23  So he doesn't have access to alcohol or drugs.  We don't

24  know that that behavior is going to continue when he gets

25  out of prison.

Proceedings                                          11

1          So I read the defense counsel's motion.  And
2     defense counsel relies on a case, People v. Knox.  I have a
3     copy for the Court -- K-n-o-x.
4          But actually this case supports the People's
5     position.
6          It's really irrelevant that the defendant did not
7     commit a sexual offense in this case.  Because the nature of
8     the defendant's behavior has already been taken into account
9     by the board and really by the legislature, who decided that
10    this charge should be part of SORA.
11         The Court of Appeals has found that it's
12    constitutional.  The term sex offender is defined to include
13    kidnapping a person who is under the age of 17 by someone
14    who is not that person's adult.
15         In People v. Knox, the Court of Appeals stated --
16    and I think that this is important -- that the governmental
17    interest that's advanced by SORA is the protection of the
18    community against people who have shown themselves capable
19    of committing sex crimes.  Not of those who have committed
20    sex crimes but "capable" of committing sex crimes.
21         And that the particular provisions of SORA at
22    issue here were, obviously, designed to protect children
23    from such crimes.
24         So they found that the challenge in legislation
25    was rationally related to the legitimate government

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 46 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 21 of 69
Proceedings                         12

1    interest.

2          If you look at the reason why kidnapping is a

3    requirement in SORA is because of a federal law in which the

4    Federal Government agrees to give aid to states if they

5    included or had this SORA program, and, specifically,

6    required that kidnapping be one of those offenses.  That

7    comes from a case, Jacob Wetterling, W-e-t-t-e-r-l-i-n-g.

8    And in that case there was also no evidence of a sexual

9    assault.

10         But, the Court held that the legislature could

11   have found that a child cut off from the safety of every day

12   surroundings is vulnerable to sexual abuse, even if the

13   offender's sexual desires are not the motive of the crime.

14         So, certainly, the legislature could have made an

15   exception for cases like this.  It could have made it within

16   the discretion of the Court not to make individuals who have

17   been convicted of kidnapping to register.  But it did not.

18   And this is an issue for the legislature.

19         You know, the prevention of child kidnapping,

20   whether it's sexual or not, has been found to be a

21   legitimate and government interest.  And it's a crime that

22   SORA was intended to help prevent.

23         So, I don't believe that your Honor should even

24   look to the lack of a sexual offense as a mitigating factor

25   in this case, because it's something -- first of all, it

Proceedings

13

1    lies within the legislature, but, second, something that has

2    been taken into account by the board already in their

3    assessment.

4         We oppose the downward departure from the board's

5    recommendation.  I don't believe that the defendant has

6    shown by clear and convincing evidence that there are

7    mitigating factors.

8         They look at, you know, the fact that there was no

9    sex crime.  But, clearly, the legislatures found that

10   kidnapping is a appropriate crime to make the defendant

11   register as a sex offender for the purposes that we just

12   spoke about.

13        You know, the board gave the defendant a 105

14   points.  That's five points lower than what would make him

15   eligible as a level three.  So, even without committing a

16   sex offense, he is still almost borderline of a level three

17   offender.  And that's because of his high risk of

18   reoffending.

19        And the Court has taken into consideration all the

20   factors that show that he is likely to reoffend.  There are

21   things that they did not take into consideration.  For

22   example, he didn't get any points for inflicting physical

23   injury.  The complainant in this case did suffer physical

24   injury.  I only have one copy of these photographs, and I

25   apologize.  But, if your Honor looks, he has bruises,

Proceedings                    14

1    scratches.  He has a black eye.

2           So, certainly, the complainant did suffer physical

3    injury.  It's also talked about in the grand jury minutes.

4           I think notably also that the board did not award

5    the defendant any points for refusing to take

6    responsibility.  It's clear in the sentencing minutes the

7    defendant states, on page three, you know, to my knowledge,

8    there was a sufficient amount of evidence to convict me.

9    But that's the only reason that I took the plea.  You know,

10   because there was evidence, not because I was guilty.

11          Finally, the defendant relies on, you know, the

12   progress the defendant has made since his conviction as a

13   mitigating circumstances why there should be a downward

14   departure.

15          The board did take that into consideration.  They

16   looked at his behavior since he has been incarcerated.  They

17   did not give him points for being unsatisfactory.  But I

18   certainly wouldn't think that the defendant's conduct in

19   prison has been satisfactory.

20          I have submitted to your Honor the disciplinary

21   records that we received while he was incarcerated.  He has

22   a 11 Tier II and four Tier III incidents.  They included

23   violence, threats, and fights, and harassment while he has

24   been in prison.

25          Defendant states that, you know, he has completed

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 49 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 24 of 69
Proceedings                                                    15

1   programs while he has been in prison, and that when he gets

2   out -- he has a wife and children -- he is going to get a

3   job.

4         Whatever his future arrangements are, are

5   prospective -- I mean they are speculative at this point.

6   You need to look at the behavior that the defendant engaged

7   in before he committed that crime, which the board looks at,

8   and type of crime that he committed, as a predictor for his

9   likeliness to reoffend as opposed to him saying, well, I'm

10  going to get a job.  And, you know, I completed an anger

11  management course and, therefore, my life is going in a good

12  direction.

13        I don't think the Court should give that as much

14  weight when considering whether or not he is likely to

15  reoffend.  The board took all of these factors into

16  consideration.  They scored him a level two as a moderate

17  likeliness to reoffend.

18        And, as I have said, your Honor, the Court of

19  Appeals and a number of courts has upheld the

20  constitutionality of SORA and include kidnapping as one of

21  those offense.  And that's because there was a legitimate

22  reason for the public to be concerned about their safety

23  when individuals like the defendant are released.  And they

24  should have the right to know, you know, who the defendant

25  is and where he is staying, so that they can be safe and the

1    community can be protected.

2         So I'm asking your Honor — you know, we are not

3    asking for an upward departure. But, certainly, there

4    should not be a downward departure in this case. There are,

5    I think, a number of factors that the board did not score

6    him for that they could have. And that would push him up to

7    a level three.

8         THE COURT: All right. Thank you.

9         Was there something else, counsel?

10        MR. MENDEZ: May I respond, your Honor.

11        There are a number of things that I will like to

12   point out again just quickly if I may. In the first place

13   it is not our burden to demonstrate the facts supporting a

14   downward departure by clear and convincing evidence. That

15   is not the standard. It is preponderance of the evidence.

16   The cases making that clear are cited in our submission.

17        Although the prosecution says that it agrees with

18   the board's recommendation, it does seem to be seeking, on

19   the day of the hearing, additional points under a number of

20   factors. I will go through those very quickly.

21        Under factor one, Mr. Vincent has already been

22   scored 30 points. He may not be doubly scored under the

23   same factor. I don't, unfortunately, have authority for

24   that proposition, but I'm quite certain it's the case. And

25   I can provide some after the hearing, if that's necessary.

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 51 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 26 of 69
Proceedings                                      17

1        Under factors 12 and 13, I have already addressed

2   the general ideas underlying these factors, acceptance and

3   responsibility, and conduct while supervised.

4        I would just say that the proof is in the pudding,

5   as far as these factors are concerned. Mr. Vincent, as I

6   said, is a different person. And the fact that he is now,

7   as he has told me, ashamed of his past actions. He does not

8   want to be the person he was then. The fact that he is now

9   enrolled in a respected and demanding academic program.

10  These are factors not taken into account in the RAI.

11       And finally, your Honor, we did hear a lot about

12  this case and the seriousness of this case, which again we

13  do not dispute. But what we did not hear from the

14  prosecution is anything indicating, much less by a clear and

15  convincing evidence, a likelihood of future sexual

16  offending. That is the issue in this case. That's People

17  versus Gillotti, as I think I said before.

18       And the cases we cite in our submission, People

19  versus Knox, and Howard do support our position.

20       In the first place, Knox itself, and Jackson,

21  which was a companion case, was consolidated with Knox.

22  Those are both level one cases.

23       Cintron, which was another companion case, a third

24  of those three, was a level three. But in Cintron there was

25  a history of sexual violence. And even since the conviction

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 52 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 27 of 69
Proceedings                    18

1      in Cintron, there had been a serious Tier III ticket in

2      prison for a sex offense.

3              And, finally, Howard was also different from this

4      case.  That is a more recent Court of Appeals case.  It was

5      different from this case because it was -- it involved an

6      override to level three.  The defendant actually scored as a

7      level one.  But there was an override to level three based

8      on really extreme physical abuse in that case.

9              There was a -- it was an eight-year-old boy who

10     was tortured over several days, naked, tied to a bed,

11     suffered a collapsed lung and a torn liver.  Really terrible

12     injuries.  And for that reason there was an override to

13     level three based on serious physical injury.  Again that

14     does not apply to this case.

15             So the case which we cite, those cases, Knox and

16     Howard, do support.  In fact, frankly indicate that, as I

17     said, a level one designation is really the only appropriate

18     designation in a case like this, where is no sexual

19     misconduct.

20                  THE COURT:  Thank you.

21             I have read those cases.

22             Is there anything that Mr. Vincent wants to say

23     himself at this point?

24                  THE DEFENDANT:  Yes.

25                  THE COURT:  Please.

Proceedings

19

1          You can remain seated.  That's okay.  And you will

2     just point the microphone in his direction.

3          THE DEFENDANT:  Judge Obus, I apologize.  Since I

4     was at that time I was really in a state of denial.  And

5     over the years I really had to do some soul searching.  And

6     I had to go through a lot of bad to realize that I didn't

7     want to be that type of person anymore.

8          What I do now is, young men that I meet up there,

9     I'm constantly counseling them about misbehaving and bad

10    conduct.  And I try to give back.

11         THE COURT:  I'm sorry, did you say that you are

12    doing the counseling?

13         THE DEFENDANT:  Yes.  I try my very best on an

14    individual basis and sometimes even in an academic setting.

15         I apologize about everything.  I accept

16    responsibility for what I have done in the past.

17         And the reason I started crying in here is because

18    I am ashame for what I used to be.

19         And I thank you, Judge Obus.  I couldn't see it

20    back then.  But I thank you.

21         THE COURT:  All right, Mr. Vincent.  I am going to

22    reserve decision at this point briefly.  And I will let you

23    know whether I'll be able to resolve this now or whether I

24    need to adjourn it for that purpose.  But we will just have

25    a brief recess for that purpose.

Proceedings
20

1              (A recess was taken.)

2              COURT OFFICER:  Come to order.

3              THE CLERK:  Recall calendar number three, Damon

4      Vincent, from the back.

5              THE COURT:  The Court has considered this.  And I

6      did have a chance to read the written submission before

7      today.  So I am prepared to render a decision at this point.

8              First of all, I will repeat that I am very

9      familiar with this case.  While the proceedings took place

10     quite some time ago, I conducted the trial of the

11     codefendant.  I accepted the plea from Mr. Vincent.  And, as

12     I say, I'm very familiar with what this was all about.

13             Undeniably, as no one is contesting, there are a

14     few cases that are more serious, unless they involve some

15     actual injury of a serious nature to a victim.  But this was

16     terrible, a terrible crime.  And the sentence reflects that,

17     that was imposed even after a plea.

18             Having said that, as we all also recognize, there

19     is no allegation of actual sexual abuse in this case.

20     Although the defendant must register as a sex offender,

21     because the legislature has determined that, generally,

22     cases involving kidnapping of a child, other than of the

23     parent or by the parent, such cases have substantial

24     potential to involved sexual abuse.  And the people who

25     commit such crimes are potentially abusers of that nature.

Proceedings

21

1          The Court of Appeals has also upheld the

2    constitutionality of the statutory scheme generally for that

3    reason.

4          In this case, the point assessment proposed by the

5    board, whether or not 15 points are assessed for a history

6    of substance abuse, will call for a presumptive level two

7    assessment.  And I do note that the history of substance

8    abuse is just that, in the sense that the last evidence of

9    actually using any substance took place approximately 15

10   years ago before the defendant's incarceration.

11         But even without that, based on the 30 points for

12   being armed with a dangerous instrument, 20 points for the

13   age of the victim, 30 points for a prior violent felony, and

14   10 points for the recency of that felony, the total would be

15   90.  And it will still bring Mr. Vincent within the

16   presumptive level two range.

17         The issue is whether there is a basis for a

18   downward departure.  The primary basis presented is that not

19   only is there no allegation of sexual abuse in this case,

20   but that there was also no suggestion of any history of

21   sexual misconduct on the part of the defendant at all.

22         And although I recognize there was another

23   kidnapping allegation that may have been covered by this

24   disposition.  That involved a 27-year-old victim, obviously

25   not a child.  And there is no allegation of any kind of

Proceedings

1    sexual abuse in that matter either. Nor is there any

2    indication of any propensity on the part of the defendant

3    for sexual misconduct.

4        In addition to that basic argument, there is

5    evidence that the defendant has for the most part conducted

6    himself well during his incarceration and has, in fact, done

7    particularly well in certain areas, most notably in his

8    academic studies.

9        The basic purpose for all of this is to consider

10   the likelihood that the defendant will commit a sex offense

11   in the future and assess that risk accordingly. Of course,

12   no one can guarantee what will happen with any defendant in

13   the future.

14       Under the circumstances here, I am satisfied that

15   there is virtually no likelihood that the defendant will

16   commit a sex crime ever.

17       Recognizing that a level one assessment will still

18   involve substantial oversight of the defendant, along with

19   the post-release supervision oversight that will be

20   required, I believe that a level one assessment is more than

21   sufficient for the purpose of these proceedings.

22       So I will grant the downward departure,

23   notwithstanding the seriousness of this case, to a level one

24   assessment. And I will simply mark the papers accordingly,

25   so that the defendant would have an order. And the People

Proceedings                                          23

1          will have an order if they wish to seek review.

2                   But the defendant is assessed a level one offender

3          and the matter is concluded.

4                   MS. WIMMER:  Thank you, your Honor.

5                              *****

6          Certified to be a true and accurate transcript.

7

8

9          <u>Sue-Lynn Irving</u>
           Sue-Lynn Irving
10         Senior Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Proceedings                        24

1
2
3
4
5
6

SUE—LYNN IRVING
SENIOR COURT REPORTER
SUPREME COURT—NEW YORK COUNTY
100 CENTRE STREET
Room 1134
New York, New York 10013
(646)386—4216

7   BILL TO:  Office of the Appellate Defender

8   PEOPLE v. Damon Vincent

9   INDICTMENT NUMBER:  1074/2001

10  DATE OF PROCEEDING:  June 24, 2016

11  PART: 51

12  JUDGE: Obus

13

14

15  DELIVERY: (X) REGULAR    ( ) EXPEDITED    ( ) DAILY

16

17

18  23 Pages @ $2.50 per page = Total Due: $ 57.50

19

20

21

22

23

24

25

EXhibit B

New York State - DOCCS
Community Supervision
MANDATORY CONDITIONS OF RELEASE TO PAROLE SUPERVISION

Name: VINCENT,DAMON                          NYSID: 08013901R
Date of Release: 07/14/2016                  Supervision Maximum: 02/13/2019

I, VINCENT,DAMON          , acknowledge that the following Special Conditions
have been imposed upon me and that these Special Conditions will remain in
effect until the termination of my legal period of supervision 02/13/2019
unless otherwise amended, in writing, by the Department of Corrections and
Community Supervision.

        SEXUAL ASSAULT REFORM ACT (SARA), CHAPTER 1 OF THE LAWS OF 2000

Upon your release you shall not knowingly enter into or upon any school grounds
or facilities, or any other facilities or institutions primarily used for the
care or treatment of people under the age of 18, while one or more persons
under the age of 18 are on or within these types of premises.

The term "SCHOOL GROUNDS" means any and all buildings, structures, athletic
playing fields, playgrounds and all of the property that is part of a public or
private elementary, parochial, intermediate, junior high, vocational, or high
school. The term "SCHOOL GROUNDS" includes all areas that are (a) accessible to
the public and (b) within 1000 feet of any building, structure, athletic
playing field, playground, or property that is part of a public or private
elementary, parochial, intermediate, junior high, vocational or high school.

Areas that are "ACCESSIBLE TO THE PUBLIC" are all of those places where there
are sidewalks, streets, parking lots, playgrounds, stores and restaurants.
In addition, you can never be in a parked car or any other type of vehicle
that is within 1000 feet of "SCHOOL GROUNDS".

Only under the following circumstances may you enter upon or into the grounds
or buildings of such facilities or institutions:

    a. When you are a registered student, participant or employee of one
       of the described institutions or facilities AND have the written
       permission of either the superintendent or chief administrator of
       such institution or facility AND your Parole Officer for the
       limited purpose stated by these individuals;

    b. You are an employee of a business that has a contract with one of
       the described institutions or facilities AND have the written per-
       mission of either the superintendent or chief administrator of such
       institution or facility AND your Parole Officer for the limited
       purpose stated by these individuals; or

    c. You have a family member who is enrolled in one of the described
       institutions or facilities AND have the written permission of either
       the superintendent or chief administrator of such institution or
       facility AND your Parole Officer for the limited purpose stated by
       these individuals.

Because these conditions must be imposed by operation of law, any violation
thereof will be deemed to constitute a violation in an important respect for
the revocation of your release status within the community and return to
State Prison.

I hereby certify that I have read and understand the above Mandatory Conditions
of my release and that I have received a copy of this document.

Signed this _15ᵗʰ_ day of _July_, _16_

Releasee: _____     Witness: _PO Bell #839_
SPCND96 (03/08)                              Print Date: 07/15/2016

New York State - DOCCS
Community Supervision
SPECIAL CONDITIONS OF RELEASE TO PAROLE SUPERVISION

Page:                    1
Name: VINCENT,DAMON                              NYSID: 08013901R
Date of Release: 07/14/2016         Supervision Maximum: 02/13/2019

I, VINCENT,DAMON          , acknowledge that the following Special Conditions
have been imposed upon me and that these Special Conditions will remain in
effect until the termination of my legal period of supervision  02/13/2019
unless otherwise amended, in writing, by the Department of Corrections and
Community Supervision.


I hereby certify that I have read and understand the above Special Conditions
of my release and that I have received a copy of these Special Conditions.

Signed this  15  day of  July , 16

Releasee:X                          Witness:  PO Bell #839

1) copy to Releasee     2) copy to Area Office        3) copy to Central Office

FORM 3020A  (09/2008)                        Print Date: 07/15/2016

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS & COMMUNITY SUPERVISION
SPECIAL CONDITIONS OF RELEASE TO PAROLE SUPERVISION

Name: **Vincent, Damon**          NYSID# **08013901R**

Date of Release: **7/14/16**     Supervision Maximum: **2/13/19**

I, **Vincent, Damon**, acknowledge that under the provisions of my Conditions of Release that the following Special Conditions have been imposed upon me and that these Special Conditions will remain in effect until the termination of my legal period of Supervision **2/13/19** unless otherwise amended, in writing by the Division of Parole.

1. **I will not leave the five boroughs of NYC (Brooklyn, Manhattan, Bronx, Queens and Staten Island)** without prior approval of my Parole Officer.
2. **I WILL ONLY RESIDE AT THE ADDRESS MY P.O. HAS ON RECORD FOR ME AND NOT RESIDE AT ANY RESIDENCE THAT HAS NOT BEEN APPROVED BY MY PO.** X ~~signature~~    The Redemption Cent
   _____
   Parolee signature        1186 Herkimer Street
3. **I will remain indoors** at my approved residence **seven** days a week between the Bklyn NY1123 hours of **9** P.M. and **7** A.M.
4. **I will contact my PO immediately if at any time I am arrested.**
5. **I will make an office report to 15 2nd Avenue Brooklyn, NY upon release from any law enforcement custody (ie precinct, courts, jail/facility).**
6. I will **enter, fully participate** in, and **successfully complete** the treatment program established for me by my Parole Officer, including outpatient, inpatient, residential and/or day treatment as well as any treatment program established for me upon discharge.
7. **Should any emergency arise and I am not able to reach my PO. I will call the Parole Command Center at (212) 239-6159. It has been explained to me that I must only use the command center number for true emergencies.** OFF= 718-780-9233

**Next Report Day: 7/19/16** to Parole Officer **Bazille** CELL=347-525-380

✱ 210 Joralemon St. 3rd Flr. Bklyn 930am ✱

I understand that any violation of these special conditions of release to Parole Supervision may result in the revocation of my release. I hereby certify that I have read and understand the above special conditions of my release and that I have received a copy of these Special Conditions.     718-780-924

Signed this **15th** day of **July**, 20 **16**.   SPO: **Moses-**

Released X ~~signature~~        Witness: **Bell**
                                          DUTY OFFICER

✱ Report to Parole Orientation ✱
   on 7/29/16 at 9am

*(handwritten, top right)* #5 VAZWEC
646 596-227?
718 760-9294

NEW YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION
SPECIAL CONDITIONS OF RELEASE TO COMMUNITY SUPERVISION
FOR SEX OFFENDERS

Name _Vincent Damon_      NYSID _0D013901R_
Date of Release: _7/14/16_      Supervision Maximum: _2/13/19_

I, _____, acknowledge that under the provisions of my Conditions of Release that the Special Conditions have been imposed upon me and that these Special conditions will remain in effect until the termination of my legal period of supervision. _2/13/19_

Unless otherwise amended, in writing by the Division of Parole.

1. I will provide a sample for DNA testing if conviction appropriate pursuant to Section 95-C, Subdivision 3 of the Executive Law, if applicable.      X Initial _Dv_ud_

**Special Conditions Related to Sex Offenders/ Treatment:**

2. I will immediately register as a sex offender with the local law enforcement agency where I reside, if applicable.      X Initial _Dv_ud_

3. I will comply with all the requirements of the Sex Offender Registration Act, if applicable.      X Initial _Dv_ud_

4. I will not knowingly enter into or upon any school grounds as that term is defined in Penal law 220(14) or facilities, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen (18) while one or more of such persons under the age of eighteen are present.

Only under the following circumstances may I enter upon or into the buildings or ground of such facilities or institutions:

   a) When I am a registered student, participant or employee of one of the described institutions or facilities and have the written permission of either the superintendent or chief administrator of such institution or facility and my parole officer for the limited purpose stated by these individuals.

   b) I am an employee of a business that has a contract with one of the described institutions or facilities and have the written permission of either the superintendent or chief administrator of such institution or facility and my parole officer for the limited purpose stated by these individuals.

"School grounds" means (a) in or on or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (b) any area accessible to such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an "area accessible to the public" shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants or near school grounds.      X Initial _Dv_ud_

Signed this _19th_ day of _July_ _2016_

Releasee: _Dv Vin ud_      Witness: _PO Vazquiz_
_SPO Freeman_

Name: _Vincent Damon_          NYSID: _____

5. I will keep my appointment for treatment assessment and intake on _____. I will answer fully and truthfully during sex offender treatment evaluation and assessment.          Initial _Dv ud_

6. I will participate and fully cooperate with the directives of sex offender treatment program including signing the treatment program's consent to release information to the Division of Parole and taking any medications as prescribed.          Initial _Dv ud_

7. I will remain in sex offender treatment at _____ and remain in treatment until its completion and will not leave without the knowledge and permission of my parole officer and treatment team.          Initial _Dv ud_

8. I will follow the directives of my sex offender treatment, attend treatment regularly participate fully in treatment and not miss scheduled treatment appointments. I will report any difficulties I experience in my treatment to my provider and my parole officer.          Initial _Dv ud_

9. I will not leave my sex offender treatment program without prior written permission of my parole officer. Should my participation in the treatment program be terminated for any reason, I will personally and immediately inform my parole officer and report to my parole officer within 24 hours of the termination.          Initial _Dv ud_

10. I will comply with and follow through with the discharge plan and treatment directives developed for me, upon discharge from my sex offender treatment plan.          Initial _Dv ud_

11. I will not frequent areas or promote pornographic/ sexual activity or material such as bookstores, message parlors, topless bars, juice bars and sex shops. Further, I will not purchase or possess pornography or any sexually explicit materials.          Initial _Dv ud_

12. I will not engage or participate in any online computer service that involves the exchange of electronic messages or establishes sexual encounters or liaisons.          Initial _Dv ud_

13. I will not call or view sexually explicit telephone, movies or television services and I will submit copies of telephone, television, internet service and/ or cable bills to my parole officer upon his request.          Initial _Dv ud_

14. I will not purchase, possess or engage in any way, the use of any sexually explicit materials or erotic magazines, tapes, pictures, films or digital images          Initial _Dv ud_

Signed this _19th_ day of _July_ _2016_

Witness: _____

Name: Vnest, Damin     NYSID: 080139011

15. I will not be in contact with any children under the age of eighteen (18) unless I have prior approval from my parole officer, and a responsible adult age twenty-one (21) and over is present.                                    Initial DV ud

16. I will not have contact with the following individual (s): _____ . This means that I will not attempt to meet in person, communicate by letter, telephone, electronically (computer) or through a third party, this/ these individuals (s) without the knowledge and permission of my parole officer.
                                                       Initial DV ud

7. I will not enter or be within 300 yards of places where children congregate, such as toys stores, parks, pet stores, schools, playgrounds, video galleries, malls, bike trails, skating rinks, amusement parks, bowling parks, bowling alleys, pool halls, etc., without the prior approval of my parole officer.        Initial DV ud

8. I will not have children's toys, children's magazines/ books or children's clothing in my possession without the prior knowledge and permission of my parole officer.
                                                       Initial DV ud

9. I will not have animal (puppies, kittens, etc.) in my possession without prior knowledge and permission of my parole officer.           Initial DV ud

0. I will not have names, addresses, cut out pictures or photos of minors in my possession without the prior permission of my parole officer.    Initial DV ud

1. I will not hitchhike or pick up hitchhikers at any time. I shall not offer anyone a ride in my motor vehicle without the permission of my Parole Officer.
                                                       Initial DV ud

2. I will not purchase or possess photographic or video equipment without prior and written permission of my parole officer.              Initial DV ud

3. I will not cross dress or participate in any sexual fetishes.     Initial

4. I will notify my Parole Officer when I establish a relationship with a consenting adult and then shall inform the party of my prior criminal history concerning sexual abuse, in the presence of my parole officer. I will also inform my parole officer of HOW and WHEN this person can be contacted, and provide an address and telephone number for this person.                              Initial DV ud

5. I will enter and complete _____ Alcohol/ Substance Abuse Treatment Program, and I will not leave that program without the consent of my parole officer.                                     Initial DV ud

Signed this 19th day of July 2016

Releasee Dm Van     ud   Witness: D. Jazzote

Name: _Vincent, Damon_   NYSID: _08059440_

26. I will abstain from the use of ALL alcoholic beverages, I will not frequent any establishment that sells alcoholic beverages for onsite consumption. Additionally, I will not possess or purchase any alcohol.
_Initial Dv   vd_

27. I will submit to random drug/ alcohol testing. Further, I will not purchase, possess or consume substances for the purpose of altering the results of any substance abuse testing.
_Initial Dv   vd_

28. I will not use or possess any drug paraphernalia, or use or possess any controlled substance without proper medical authorization.
_Initial Dv   vd_

29. I will participate and fully cooperate with any therapy or counseling as directed by the Court and/ or my parole officer.
_Initial Dv   vd_

30. I will abide by the following curfew:
I shall be in my approved residence between the hours of _9pm_ and _7am_ on weekdays between the hours of _9pm_ and _7am_ on weekends (Friday and Saturday nights) unless given written permission by Parole Officer to do otherwise.
_Initial Dv   vd_

31. I will not own or operate a motor vehicle nor will I apply for, or possess a driver's license without the knowledge and permission of my parole officer. Should I be given permission to apply for and receive a driver's license, I will keep a driving log specifying distances, dates, times, places and mileage. I will also inform my parole officer of all vehicles that I may operate if given permission to drive. Further, I will only use this mode of transportation to attend sex offender treatment, medical appointments, vocational training, employment, pre-approved leisure activities and reporting to my parole officer. I further agree to go directly to and from these destinations only.
_Initial Dv   vd_

32. I will not rent, operate or be a passenger in any vehicle without the permission of my parole officer.
_Initial Dv   vd_

33. I will live and remain at my approved residence and have NO unauthorized visitations from others without prior approval or knowledge of my parole officer.
_Initial Dv   vd_

34. I will enter into a vocational and/ or academic program if directed by my parole officer to do so. I will not leave such program without the knowledge or permission of my parole officer.
_Initial Dv   vd_

35. I will not own or possess a beeper, scanner or cell phone without permission of my parole officer. If given permission to possess a cell phone, I will not possess one that is video or photo-capable.
_Initial Dv   vd_

Signed this _1_ _8th_ day of _July_, _2016_

Releasee: _Damon Vincent vd_   Witness: _Diangra_

Name: Vincent, Shawn                    NYSID: _____

36. I will have no telephone blocks or answering machines used to screen telephone calls.

        Initial _D v_____ _s d_

37. I will not rent or have control of a U.S. Post Office box without the prior knowledge or permission of my parole officer.

        Initial _D v_____ _s d_

38. I will cooperate fully with the implementations of a GPS or ELECTRONIC MONITORING PROGRAM. I will not tamper with ANY equipment and will ensure that ALL equipment is returned to the Division of Parole upon completion.

        Initial _D v_____ _s d_

39. I will possess only one computer and/ or laptop at my residence if granted permission by my parole officer. I will give my parole officer my password.

> I will not use, possess, have control of any/ all computer or computer related materials until I obtain approval by my parole officer.

> If I use someone else's computer, I will inform my parole officer.

> I will provide all personal/ business phones, internet and/ or cable records to my parole officer.

> I will obtain prior written approval from my parole officer to use an electronic bulletin board system, services that provide access to the internet, or any public or private computer network. Billing/ transaction records will be submitted to my parole officer upon request.

> I will not use any form of encryption, cryptography, steganography, compression and/ or other method that might limit access to, or change the appearance of, date and/ or images of any computer without prior written approval from my parole officer.

> I will cooperate with unannounced examinations by my parole officer of any and all computer's and/ or other electronic device (s) to which I have access. This includes access to all date and/ or images stored on hard disk drives, floppy diskettes, CD-ROMs, optical disks, magnetic tape and/ or any other storage media whether installed within a device or removable.

> I will install or allow to be installed at my own expense equipment and/ or software to monitor or limit computer use, remove any hardware device including modem, network card, and/ or other device that may be used to provide access to another computer or computers.

> I will acknowledge that individuals who have access to (my) any computer system and/ or other communication or electronics storage devices that are approved will also be subject to monitoring and/ or search and seizure. I agree to be fully responsible for all material, data, images and information found on (my) such computer and/ or other communication or electronic storage devices at all times.

Signed this _19th_ day of _July_ _2016_

Release: _____    Witness: _____

Name: *Vincent Damm*   NYSID: *080139109*

> I will not attempt to circumvent, alter, inhibit, or prevent the functioning of any monitoring or limiting equipment, device or software that has been installed by or at the behest of, or is being utilized by, the Division of Parole for the purposes of recording, monitoring or limiting my computer or Internet use and access, nor will I attempt or remove or tamper with such equipment, device or software in any way;

> I will not alter or destroy any records of computer use without the approval of the Division of Parole. This includes, but is not limited to, the deletion or removal of browser history data regardless of its age, and the possession of software or any items designed to boot into the utilize RAM kernels, alter or "wipe" computer media, defeat forensic software, or block monitoring software. This also includes a prohibition against restoring a computer to a previous state or the reinstallation of operating systems without the prior approval of the Division of Parole.

> I will not, if prohibited by condition (s) of release access or possess certain items, information of material, utilize or attempt to utilize any computer or device for purposes of accessing or possessing such items, information or material. If I am prohibited by condition (s) of release from contacting or communicating with any person (s), I will not utilize or attempt to utilize any computer or device for purposes of contacting or communicating with such person (s).

Initial *DV* *ud*

40. I will participate and fully cooperate with any recommended mental health evaluations and, will fully comply with the mental health provider's recommendations that may include and not be limited to psychiatric examinations, medication therapy, individual therapy, group therapy and appropriate laboratory testing for levels of psychotropic or neuroactive medication.

Initial *DV* *ud*

41. I will submit to psychiatric examinations as designated by the Commissioner of Mental Health to determine continued suitability for Strict and Intensive Supervision and Treatment.

Initial *DV* *ud*

42. I will participate and fully cooperate with my case manager in areas of case management services that may include but not be limited to entitlements, housing, vocational, educational and recreational programs.

Initial *DV* *ud*

43. I will not leave the five boroughs for work or pleasure without prior approval of parole officer/ senior parole officer.

Initial *DV* *ud*

44. If I have police contact I will report to my parole officer within 24 hours.

Initial *DV* *ud*

**Sexual Enhancements**

45. I will not use any medication prescribed or non-prescribed that is meant to enhance stimulation, erectile functioning and performance (such as Viagra) for any reason unless I have permission of NYS Division of Parole.

Initial *DV* *ud*

Signed this *9th* day of *July* *2016*

Name: Vincent, Damon   NYSID: 08013931R

46. I will not submit to any medical procedures meant to enhance my sexual functioning such as penal implants.

Initial DV ud

47. I will not use or have in my possession any type of sexually enhancing toys.

Initial DV ud

48. I will not use the internet to access pornographic material, access a commercial social networking website, communicate with other individuals or groups for the purpose of promoting sexual relations with persons under the age of eighteen, and communicate with a person under the age of eighteen unless I receive written permission from the Board of Parole to use the internet to communicate with a minor child under eighteen years of age who I am the parent of and who I am not otherwise prohibited from communicating with.

Initial DV ud

**Additional Conditions Imposed**

I will provide my assigned parole officer with a list of all individuals who I expect to visit with me at my approved residence:

I will not allow spontaneous visitors to enter my approved residence without the prior permission from my assigned parole officer.

**Name(s)**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signed this 19th day of July 2016

Releasee: _____ Witness: _____

Exhibit C

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (DOCCS)
APPLICATION FOR CONDITIONAL RELEASE TO PAROLE SUPERVISION

SENTENCE:      ☐ INDETERMINATE          ☐ DEFINITE          NYSID# 08013901R   DIN# 02A2314

I, VINCENT, Damon, now confined in Fishkill CF, having been convicted of Kidnapping 2nd and sentenced in the county of New York at a term of the Supreme Court, Judge Obus presiding on the 10th day of April, 2002, for the term of 60-00-00/18-00-00 the maximum term of which expires on the 13th day of February, 2019, hereby apply for Conditional Release. I understand that I will be in the legal custody of the Division of Parole until the 13th day of February, 2019, and agree to abide by the conditions of my release with the full knowledge that failure to do so may result in my imprisonment by order of the Board of Parole pursuant to law.

I, VINCENT, Damon voluntarily accept Parole Supervision. I fully understand that my person, residence and property are subject to search and inspection. I understand that Parole Supervision is defined by these Conditions of Release and all other conditions that may be imposed upon me by the Board or its representatives. I understand that my violation of these conditions may result in the revocation of my release

CONDITIONS OF RELEASE

1.  I will proceed directly to the area to which I have been released, and, within twenty-four hours of my release, make my arrival report to the Community Supervision Office indicated below, unless other instructions are designated on my release agreement.
2.  I will make office and/or written reports as directed.
3.  I will not leave the State of New York or any other state to which I am released or transferred, or any area defined in writing by my Parole Officer without permission.
4.  I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property. I will discuss any proposed changes in my residence, employment or program status with my Parole Officer. I understand that I have an immediate and continuing duty to notify my Parole Officer of any changes in my residence, employment or program status when circumstances beyond my control make prior discussion impossible.
5.  I will reply promptly, fully and truthfully to any inquiry of or communication by my Parole Officer or other representative of the Department of Corrections and Community Supervision.
6.  I will notify my Parole Officer immediately any time I am in contact with or arrested by any law enforcement agency. I understand that I have a continuing duty to notify my Parole Officer of such contact or arrest.
7.  I will not be in the company of or fraternize with any person I know to have a criminal record or whom I know to have been adjudicated a Youthful Offender except for accidental encounters in public places, work, school or in any other instance with the permission of my Parole Officer.
8.  I will not behave in such a manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment, nor will my behavior threaten the safety or well-being of myself or others.
9.  I will not own, possess, or purchase any shotgun, rifle or firearm of any type without the written permission of my Parole Officer. I will not own, possess or purchase any deadly weapon as defined in the Penal Law or any dangerous knife, dirk, razor, stiletto, or imitation pistol. In addition, I will not own, possess or purchase any instrument readily capable of causing physical injury without a satisfactory explanation for ownership, possession or purchase.
10. In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to resist extradition to the State of New York from any state in the Union and from any territory or country outside the United States. This waiver shall be in the full force and effect until I am discharged from Parole or Conditional Release. I fully understand that I have the right under the Constitution of the United States and under law to contest an effort to extradite me from another state and return me to New York, and I freely and knowingly waive this right as a condition of my Parole or Conditional Release.
11. I will not use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization.
12. Special Conditions:
    See attachment for special conditions.
13. I will fully comply with the instructions of my Parole Officer and obey such special additional written conditions as he or she, a Member of the Board of Parole or an authorized representative of the Department of Corrections and Community Supervision, may impose

☐  Local Sentence:  I also understand and agree that if I am returned to a correctional facility for violation of any of the above conditions; the time spent under Conditional Release will not be credited against the term of my sentence.

☒  State Sentence:  I understand and agree that if I am returned to an institution under the jurisdiction of the Department of Corrections and Community Supervision for violation of any of the above conditions, that the good behavior time earned by me prior to the date of my Conditional Release cannot be used as a basis for requesting any subsequent release. I further understand that if I am so returned I may, however, subsequently receive time allowances against the remaining portion of my maximum or aggregate maximum term is more than one year and that I shall not again earn any good behavior time against the remaining portion of my sentence if such remaining portion of my sentence is one year or less.

I certify that I have read and that I understand the foregoing and have received a copy of this application.

Signed this 11th day of July 20 16

Applicant: _____          Witness: _____

Form 3041 (Rev. 2/00)
COPY TO:  OFFENDER; FACILITY IRC; FIELD / AREA OFFICE; INSTITUTIONAKL FILE; COMMUNITY SUPERVISION CENTRAL FILES

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
APPLICATION FOR CONDITIONAL RELEASE TO PAROLE SUPERVISION
NAME:  VINCENT, Damon                          DIN: 02A2314
                                                           NYSID:  08013901R

CONTINUATION OF FORM 3041 - 12) SPECIAL CONDITIONS:

SC 1   -   I will seek, obtain, and maintain employment and/or an academic/vocational program.
SC 2   -   I will submit to substance abuse testing as directed by the P.O.
SC 3   -   I will participate in a substance abuse treatment program as directed by the P.O.
SC 5   -   I will not consume alcoholic beverages.
SC 8   -   I will abide by a curfew established by the P.O.
SC 10  -   I will participate in anti-aggression/anti-violence counseling as directed by the Parole Officer.
SC 13  -   I will have no contact with any person under the age of eighteen, without written permission of the P.O.
SC 14  -   I will comply with all case specific sex offender conditions to be imposed by the P.O.
SC 15  -   I will not associate in any way or communicate by any means with (victim) without the permission of the P.O.
SC 16  -   I will not associate in any way or communicate by any means with (associate) without the permission of the P.O.
SC 26  -   I will comply with all Orders of Protections.

**You must present your release sheets when making your initial arrival report.**
For Emergencies occurring after office hours and on weekends, call

STATE OF NEW YORK
EXECUTIVE DEPARTMENT -- DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION SPECIAL CONDITIONS OF RELEASE TO
COMMUNITY SUPERVISION
FOR SEX OFFENDERS

Name **Vincent Damon**   NYSID **08013901R**

Date of Release: **7/4/06**   Supervision Maximum: **2/13/19**

I, _____, acknowledge that under the provisions of my Conditions of Release that the Special Conditions have been imposed upon me and that these Special conditions will remain in effect until the termination of my legal period of supervision. **2/13/19**

Unless otherwise amended, in writing by Department of Corrections and Community Supervision.

1. I will provide a sample for DNA testing if conviction appropriate pursuant to Section 95-C, Subdivision 3 of the Executive Law, if applicable.

    Initial ____

Special Conditions Related to Sex Offenders/ Treatment:

2. I will immediately register as a sex offender with the local law enforcement agency where I reside, if applicable.

    Initial ____

3. I will comply with all the requirements of the Sex Offender Registration Act, if applicable.

    Initial ____

4. I will not knowingly enter into or upon any school grounds as that term is defined in Penal law 220(14) or facilities, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen (18) while one or more of such persons under the age of eighteen are present.

Only under the following circumstances may I enter upon or into the buildings or ground of such facilities or institutions:

   a) When I am a registered student, participant of employee of one of the described institutions or facilities and have the written permission of either the superintendent or chief administrator of such institution or facility **and** my parole officer for the limited purpose stated by these individuals.

   b) I am an employee of a business that has a contract with one of the described institutions or facilities and have the written permission of either the superintendent or chief administrator of such institution or facility **and** my parole officer for the limited purpose stated by these individuals.

"School grounds" means (a) in or on or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (b) any area accessible to such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an "area accessible to the public" shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants or near school grounds.

   Initial ____

Signed this **26** day of **October** 20**06**

\Releasee: _____   Witness: _____

Name: _Vincent, Damon_   NYSID: _08013901R_

5. I will keep my appointment for treatment assessment and intake on _already in services_
_____. I will answer fully and truthfully during sex offender treatment _in outreach_
evaluation and assessment.

Initial _de_ _development corp_

6. I will participate and fully cooperate with the directives of sex offender treatment program including signing the treatment program's consent to release information to the Division of Parole and taking any medications as prescribed.

Initial _dv_

7. I will remain in sex offender treatment at _____ N/A.
and remain in treatment until its completion and will not leave without the knowledge and permission of my parole officer and treatment team.

Initial _N/A_

8. I will follow the directives of my sex offender treatment, attend treatment regularly participate fully in treatment and not miss scheduled treatment appointments. I will report any difficulties I experience in my treatment to my provider and my parole officer.

Initial _N/A_

9. I will not leave my sex offender treatment program without prior written permission of my parole officer. Should my participation in the treatment program be terminated for any reason, I will personally and immediately inform my parole officer and report to my parole officer within 24 hours of the termination.

Initial _N/A_

10. I will comply with and follow through with the discharge plan and treatment directives developed for me, upon discharge from my sex offender treatment plan.

Initial _N/A_

11. I will not frequent areas or promote pornographic/ sexual activity or material such as bookstores, message parlors, topless bars, juice bars and sex shops. Further, I will not purchase or possess pornography or any sexually explicit materials.

Initial _dv_

12. I will not engage or participate in any online computer service that involves the exchange of electronic messages or establishes sexual encounters or liaisons.

Initial _dv_

13. I will not call or view sexually explicit telephone, movies or television services and I will submit copies of telephone, television, internet service and/ or cable bills to my parole officer upon his request.

Initial _dv_

14. I will not purchase, possess or engage in any way, the use of any sexually explicit materials or erotic magazines, tapes, pictures, films or digital images

Initial _dv_

Signed this _26_ day of _October_ _2016_

Releaser: _____   Witness: _____

Name: *Vincent, Damon*    NYSID: *08013901R*

15. I will not be in contact with any children under the age of eighteen (18) unless I have prior approval from my parole officer, and a responsible adult age twenty-one (21) and over is present.

Initial ___

16. I will not have contact with the following individual (s):

_____. This means that I will not attempt to meet in person, communicate by letter, telephone, electronically (computer) or through a third party, this/ these individuals (s) without the knowledge and permission of my parole officer.

Initial ___

17. I will not enter or be within 300 yards of places where children congregate, such as toys stores, parks, pet stores, schools, playgrounds, video galleries, malls, bike trails, skating rinks, amusement parks, bowling parks, bowling alleys, pool halls, etc., without the prior approval of my parole officer.

Initial ___

18. I will not have children's toys, children's magazines/books or children's clothing in my possession without the prior knowledge and permission of my parole officer.

Initial ___

19. I will not have animal (puppies, kittens, etc.) in my possession without prior knowledge and permission of my parole officer.

Initial ___

20. I will not have names, addresses, cut out pictures or photos of minors in my possession without the prior permission of my parole officer.

Initial ___

21. I will not hitchhike or pick up hitchhikers at any time. I shall not offer anyone a ride in my motor vehicle without the permission of my Parole Officer.

Initial ___

22. I will not purchase or possess photographic or video equipment without prior and written permission of my parole officer.

Initial ___

23. I will not cross dress or participate in any sexual fetishes.

Initial ___

24. I will notify my Parole Officer when I establish a relationship with a consenting adult and then shall inform the party of my prior criminal history concerning sexual abuse, in the presence of my parole officer. I will also inform my parole officer of HOW and WHEN this person can be contacted, and provide an address and telephone number for this person.

Initial ___

25. I will enter and complete_____ Alcohol/ Substance Abuse Treatment Program, and I will not leave that program without the consent of my parole officer.

Initial ___

Signed this _____ day of _October_ , _2016_

Release: _____  Witness: _____

*under duress*

Name: _Vincent, Damon_ NYSID: _08 013 901 R_

26. I **will** abstain from the use of ALL alcoholic beverages, I will not frequent any
establishment that sells alcoholic beverages for onsite consumption. Additionally, I
will not possess or purchase any alcohol.

Initial _dv_

27. I **will** submit to random drug/ alcohol testing. Further, I will not purchase, possess or
consume substances for the purpose of altering the results of any substance abuse
testing.

Initial _dv_

28. I **will not** use or possess any drug paraphernalia or use or possess any controlled
substance without proper medical authorization.

Initial _dv_

29. I **will** participate and fully cooperate with any therapy or counseling as directed by the
Court and/ or my parole officer.

Initial _dv_

30. I **will** abide by the following curfew:

I shall be in my approved residence between the hours of _8PM_ and _8AM_
on weekdays between the hours of _8PM_ and _8AM_ on weekends (Friday
and Saturday nights) unless given written permission by Parole Officer to do
otherwise.

Initial _dv_

31. I **will not** own or operate a motor vehicle nor will I apply for, or possess a driver's
license without the knowledge and permission of my parole officer. Should I be
given permission to apply for and receive a driver's license, I will keep a driving log
specifying distances, dates, times, places and mileage. I will also inform my parole
officer of all vehicles that I may operate if given permission to drive. Further, I will
only use this mode of transportation to attend sex offender treatment, medical
appointments, vocational training, employment, pre-approved leisure activities and
reporting to my parole officer. I further agree to go directly to and from these
destinations only.

Initial _dv_

32. I **will not** rent, operate or be a passenger in any vehicle without the permission
of my parole officer.

Initial _dv_

33. I **will** live and remain at my approved residence and have NO unauthorized
visitations from others without prior approval or knowledge of my parole officer.

Initial _dv_

34. I **will** enter into a vocational and/ or academic program if directed by my parole
officer to do so. I will not leave such program without the knowledge or permission
of my parole officer.

Initial _dv_

35. I **will not** own or possess a beeper, scanner or cell phone without permission of my
parole officer. If given permission to possess a cell phone, I will not possess one
that is video or photo–capable.

Initial _dv_

Signed this _26_ day of _October_ _2016_

Releasee: _____   Witness: _____

_under_
_Duress_

Name: Vincent, Damon   NYSID: 08OB901R

36. I will have no telephone blocks or answering machines used to screen telephone calls.

Initial _dv_

37. I will not rent or have control of a U.S. Post Office box without the prior knowledge or permission of my parole officer.

Initial _dv_

38. I will cooperate fully with the implementations of a GPS or ELECTRONIC MONITORING PROGRAM. I will not tamper with ANY equipment and will ensure that ALL equipment is returned to the Division of Parole upon completion.

Initial _N/A_

39. I will possess only one computer and/ or laptop at my residence if granted permission by my parole officer. I will give my parole officer my password.

➤ I will not use, possess, have control of any/ all computer or computer related materials until I obtain approval by my parole officer.

➤ If I use someone else's computer, I will inform my parole officer.

➤ I will provide all personal/ business phones, internet and/ or cable records to my parole officer.

➤ I will obtain prior written approval from my parole officer to use an electronic bulletin board system, services that provide access to the internet, or any public or private computer network. Billing/ transaction records will be submitted to my parole officer upon request.

➤ I will not use any form of encryption, cryptography, steganography, compression and/ or other method that might limit access to, or change the appearance of, date and/ or images of any computer without prior written approval from my parole officer.

➤ I will cooperate with unannounced examinations by my parole officer of any and all computer's and/ or other electronic device (s) to which I have access. This includes access to all date and/ or images stored on hard disk drives, floppy diskettes, CD-ROMs, optical disks, magnetic tape and/ or any other storage media whether installed within a device or removable.

➤ I will install or allow to be installed at my own expense equipment and/ or software to monitor or limit computer use, remove any hardware device including modem, network card, and/ or other device that may be used to provide access to another computer or computers.

➤ I will acknowledge that individuals who have access to (my) any computer system and/ or other communication or electronics storage devices that are approved will also be subject to monitoring and/ or search and seizure. I agree to be fully responsible for all material, data, images and information found on (my) such computer and/ or other communication or electronic storage devices at all times.

Signed this _Ile_ day of _October_ 20 _16_

Release: _By us_   Witness:

_under Duress_

Name: Vincent, Damien NYSID: 08013901R

> I will not attempt to circumvent, alter, inhibit, or prevent the functioning of any monitoring or limiting equipment, device or software that has been installed by or at the behest of, or is being utilized by, the Division of Parole for the purposes of recording, monitoring or limiting my computer or internet use and access, nor will I attempt or remove or tamper with such equipment, device or software in any way.

> I will not alter or destroy any records of computer use without the approval of the Division of Parole. This includes, but is not limited to, the deletion or removal of browser history data regardless of its age, and the possession of software or any items designed to boot into the utilize RAM kernels, alter or "wipe" computer media, defeat forensic software, or block monitoring software. This also includes a prohibition against restoring a computer to a previous state or the reinstallation of operating systems without the prior approval of the Division of Parole.

> I will not, if prohibited by condition (s) of release access or possess certain items, information of material, utilize or attempt to utilize any computer or device for purposes of accessing or possessing such items, information or material. If I am prohibited by condition (s) of release from contacting or communicating with any person (s), I will not utilize or attempt to utilize any computer or device for purposes of contacting or communicating with such person (s).

Initial _____

40. I will participate and fully cooperate with any recommended mental health evaluations and will fully comply with the mental health provider's recommendations that may include and not be limited to psychiatric examinations, medication therapy, individual therapy, group therapy and appropriate laboratory testing for levels of psychotropic or neuroactive medication.

Initial _____

41. I will submit to psychiatric examinations as designated by the Commissioner of Mental Health to determine continued suitability for Strict and Intensive Supervision and Treatment.

Initial _____

42. I will participate and fully cooperate with my case manager in areas of case management services that may include but not be limited to entitlements, housing, vocational, educational and recreational programs.

Initial _____

43. I will not leave the five boroughs for work or pleasure without prior approval of parole officer/ senior parole officer.

Initial _____

44. If I have police contact I will report to my parole officer within 24 hours.

Initial _____

**Sexual Enhancements**

45. I will not use any medication prescribed or non prescribed that is meant to enhance stimulation, erectile functioning and performance (such as Viagra) for any reason unless I have permission of NYS Division of Parole.

Initial _____

Signed this 26 day of October 2016

Releasee: _____          Witness: _____

Name: _Vincent, Damon_   NYSID: _98013901R_

46. I will not submit to any medical procedures meant to enhance my sexual functioning such as penal implants.

Initial _dv_

47. I will not use or have in my possession any type of sexually enhancing toys.

Initial _dv_

48. I will not use the internet to access pornographic material, access a commercial social networking website, communicate with other individuals or groups for the purpose of promoting sexual relations with persons under the age of eighteen, and communicate with a person under the age of eighteen unless I receive written permission from the Board of Parole to use the internet to communicate with a minor child under eighteen years of age who I am the parent of and who I am not otherwise prohibited from communicating with.

Initial _dv_

**Additional Conditions Imposed**

I will provide my assigned parole officer with a list of all individuals who I expect to visit with me at my approved residence:

I will not allow spontaneous visitors to enter my approved residence without the prior permission from my assigned parole officer.

**Name(s)**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signed this _26_ day of _October_ _2016_

Releasee: _____   Witness: _____

_under Duress_

STATE OF NEW YORK
EXECUTIVE DEPARTMENT – DEPARTMENT OF CORRECTIONS AND
COMMUNITY SUPERVISION SPECIAL CONDITIONS OF RELEASE TO
COMMUNITY SUPERVISION
FOR SEX OFFENDERS

Name **Vincent Damon**          NYSID **08013901R**

Date of Release: **7/14/17**          Supervision Maximum: **2/13/19**

I, **Damon Vincent**, acknowledge that under the provisions of my Conditions of Release that the Special Conditions have been imposed upon me and that these Special conditions will remain in effect until the termination of my legal period of supervision. **2/13/19**

Unless otherwise amended, in writing by Department of Corrections and Community Supervision.

1. I **will** provide a sample for DNA testing if conviction appropriate pursuant to Section 95-C, Subdivision 3 of the Executive Law, if applicable.

   Initial **dV**

Special Conditions Related to Sex Offenders/ Treatment:

2. I **will** immediately register as a sex offender with the local law enforcement agency where I reside, if applicable.

   Initial **dV**

3. I **will** comply with all the requirements of the Sex Offender Registration Act, if applicable.

   Initial **dV**

4. I **will not** knowingly enter into or upon any school grounds as that term is defined in Penal law 220(14) or facilities, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen (18) while one or more of such persons under the age of eighteen are present.

Only under the following circumstances may I enter upon or into the buildings or ground of such facilities or institutions:

   a) When I am a registered student, participant of employee of one of the described institutions or facilities and have the written permission of either the superintendent or chief administrator of such institution or facility **and** my parole officer for the limited purpose stated by these individuals.

   b) I am an employee of a business that has a contract with one of the described institutions or facilities and have the written permission of either the superintendent or chief administrator of such institution or facility **and** my parole officer for the limited purpose stated by these individuals.

   "School grounds" means (a) in or on or within any building, structure, athletic playing field, playground or land contained within the real property boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school, or (b) any area accessible to such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an "area accessible to the public" shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants or near school grounds.

   Initial **dV**

Signed this **26** day of **July**, **2017**

Releaser: **Dmn V** _____   Witness: _____

**under Duress**

Name: *Vincent, Damon*   NYSID: *08013901R*

@nyc APS
98 Broadway
1, NY
2) 966-9537

RO 7/28/17
) Walan

5. I will keep my appointment for treatment assessment and intake on _7/27/17 @ NAM__. I will answer fully and truthfully during sex offender treatment evaluation and assessment.    S/ Abuse   A/Management   Initial *dv*

6. I will participate and fully cooperate with the directives of sex offender treatment program including signing the treatment program's consent to release information to the Division of Parole and taking any medications as prescribed.   Initial *N/A*

7. I will remain in sex offender treatment at ____N/A____ and remain in treatment until its completion and will not leave without the knowledge and permission of my parole officer and treatment team.   Initial *N/A*

8. I will follow the directives of my sex offender treatment, attend treatment regularly participate fully in treatment and not miss scheduled treatment appointments. I will report any difficulties I experience in my treatment to my provider and my parole officer.   Initial *N/A*

9. I will not leave my sex offender treatment program without prior written permission of my parole officer. Should my participation in the treatment program be terminated for any reason, I will personally and immediately inform my parole officer and report to my parole officer within 24 hours of the termination.   Initial *N/A*

10. I will comply with and follow through with the discharge plan and treatment directives developed for me, upon discharge from my sex offender treatment plan.   Initial *N/A*

11. I will not frequent areas or promote pornographic/ sexual activity or material such as bookstores, message parlors, topless bars, juice bars and sex shops. Further, I will not purchase or possess pornography or any sexually explicit materials.   Initial *dv*

12. I will not engage or participate in any online computer service that involves the exchange of electronic messages or establishes sexual encounters or liaisons.   Initial *dv*

13. I will not call or view sexually explicit telephone, movies or television services and I will submit copies of telephone, television, internet service and/ or cable bills to my parole officer upon his request.   Initial *dv*

14. I will not purchase, possess or engage in any way, the use of any sexually explicit materials or erotic magazines, tapes, pictures, films or digital images   Initial *dv*

Signed this _26_ day of _July_, 20_17_

Releasee_____ *Dan V*   Witness:_____
under Duress

Name: _Vincent, Damon_   NYSID: _08013901R_

15. I will not be in contact with any children under the age of eighteen (18) unless I have prior approval from my parole officer, and a responsible adult age twenty-one (21) and over is present.

Initial _d √_

16. I will not have contact with the following individual (s):
_MOM_   This means that I will not attempt to meet in person, communicate by letter, telephone, electronically (computer) or through a third party, this/ these individuals (s) without the knowledge and permission of my parole officer.

Initial _d √_

17. I will not enter or be within 300 yards of places where children congregate, such as toys stores, parks, pet stores, schools, playgrounds, video galleries, malls, bike trails, skating rinks, amusement parks, bowling parks, bowling alleys, pool halls, etc., without the prior approval of my parole officer.

Initial _d √_

18. I will not have children's toys, children's magazines/ books or children's clothing in my possession without the prior knowledge and permission of my parole officer.

Initial _d √_

19. I will not have animal (puppies, kittens, etc.) in my possession without prior knowledge and permission of my parole officer.

Initial _d √_

20. I will not have names, addresses, cut out pictures or photos of minors in my possession without the prior permission of my parole officer.

Initial _d √_

21. I will not hitchhike or pick up hitchhikers at any time. I shall not offer anyone a ride in my motor vehicle without the permission of my Parole Officer.

Initial _d √_

22. I will not purchase or possess photographic or video equipment without prior and written permission of my parole officer.

Initial _d √_

23. I will not cross dress or participate in any sexual fetishes.

Initial _d √_

24. I will notify my Parole Officer when I establish a relationship with a consenting adult and then shall inform the party of my prior criminal history concerning sexual abuse, in the presence of my parole officer. I will also inform my parole officer of HOW and WHEN this person can be contacted, and provide an address and telephone number for this person.

Initial _d √_

25. I will enter and complete _NYCATS_ Alcohol/ Substance Abuse Treatment Program, and I will not leave that program without the consent of my parole officer.

Initial _d √_

Signed this _26_ day of _July_, _2017_

Releasee _D. Tam_   _w der Duress_   Witness: _[signature]_

Name: *Vincent, Damon*   NYSID: *08013901 R*

26. I will abstain from the use of ALL alcoholic beverages, I will not frequent any establishment that sells alcoholic beverages for onsite consumption.  Additionally, I will not possess or purchase any alcohol.

Initial   *dv*

27. I will submit to random drug/ alcohol testing.  Further, I will not purchase, possess or consume substances for the purpose of altering the results of any substance abuse testing.

Initial   *dv*

28. I will not use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization.

Initial   *dv*

29. I will participate and fully cooperate with any therapy or counseling as directed by the Court and/ or my parole officer.

Initial   *dv*

30. I will abide by the following curfew:

I shall be in my approved residence between the hours of _____ *PM* and _____ *AM* on weekdays between the hours of _____ *PM* and _____ *AM* on weekends (Friday and Saturday nights) unless given written permission by Parole Officer to do otherwise.

Initial   *dv*

31. I will not own or operate a motor vehicle nor will I apply for, or possess a driver's license without the knowledge and permission of my parole officer.  Should I be given permission to apply for and receive a driver's license, I will keep a driving log specifying distances, dates, times, places and mileage.  I will also inform my parole officer of all vehicles that I may operate if given permission to drive.  Further, I will only use this mode of transportation to attend sex offender treatment, medical appointments, vocational training, employment, pre-approved leisure activities and reporting to my parole officer.  I further agree to go directly to and from these destinations only.

Initial   *dv*

32. I will not rent, operate or be a passenger in any vehicle without the permission of my parole officer.

Initial   *dv*

33. I will live and remain at my approved residence and have NO unauthorized visitations from others without prior approval or knowledge of my parole officer.

Initial   *dv*

34. I will enter into a vocational and/ or academic program if directed by my parole officer to do so.  I will not leave such program without the knowledge or permission of my parole officer.

Initial   *dv*

35. I will not own or possess a beeper, scanner or cell phone without permission of my parole officer.  If given permission to possess a cell phone, I will not possess one that is video or photo-capable.

Initial   *dv*

Signed this *26* day of *July* *2017*

Released: _____   *under Duress*   Witness: _____

Name: _Vincent, Damon_   NYSID _080139821 R_

36. I will have no telephone blocks or answering machines used to screen telephone calls.

Initial ___dv___

37. I will not rent or have control of a U.S. Post Office box without the prior knowledge or permission of my parole officer.

Initial ___dv___

38. I will cooperate fully with the implementations of a GPS or ELECTRONIC MONITORING PROGRAM. I will not tamper with ANY equipment and will ensure that ALL equipment is returned to the Division of Parole upon completion.

Initial ___N/A.___

39. I will possess only one computer and/ or laptop at my residence if granted permission by my parole officer. I will give my parole officer my password.

➤ I will not use, possess, have control of any/ all computer or computer related materials until I obtain approval by my parole officer.

➤ If I use someone else's computer, I will inform my parole officer.

➤ I will provide all personal/ business phones, internet and/ or cable records to my parole officer.

➤ I will obtain prior written approval from my parole officer to use an electronic bulletin board system, services that provide access to the internet, or any public or private computer network. Billing/ transaction records will be submitted to my parole officer upon request.

➤ I will not use any form of encryption, cryptography, steganography, compression and/ or other method that might limit access to, or change the appearance of, date and/ or images of any computer without prior written approval from my parole officer.

➤ I will cooperate with unannounced examinations by my parole officer of any and all computer's and/ or other electronic device (s) to which I have access. This includes access to all date and/ or images stored on hard disk drives, floppy diskettes, CD-ROMs, optical disks, magnetic tape and/ or any other storage media whether installed within a device or removable.

➤ I will install or allow to be installed at my own expense equipment and/ or software to monitor or limit computer use, remove any hardware device including modem, network card, and/ or other device that may be used to provide access to another computer or computers.

➤ I will acknowledge that individuals who have access to (my) any computer system and/ or other communication or electronics storage devices that are approved will also be subject to monitoring and/ or search and seizure. I agree to be fully responsible for all material, data, images and information found on (my) such computer and/ or other communication or electronic storage devices at all times.

Signed this _26_ day of _July_, _2017_

Released: _____   under Duress   Witness: _____

Name: Vincent Damon   NYSID: 08013901R

> I will not attempt to circumvent, alter, inhibit, or prevent the functioning of any monitoring or limiting equipment, device or software that has been installed by or at the behest of, or is being utilized by, the Division of Parole for the purposes of recording, monitoring or limiting my computer or Internet use and access, nor will I attempt or remove or tamper with such equipment, device or software in any way.

> I will not alter or destroy any records of computer use without the approval of the Division of Parole. This includes, but is not limited to, the deletion or removal of browser history data regardless of its age, and the possession of software or any items designed to boot into the utilize RAM kernels, alter or "wipe" computer media, defeat forensic software, or block monitoring software. This also includes a prohibition against restoring a computer to a previous state or the reinstallation of operating systems without the prior approval of the Division of Parole.

> I will not, if prohibited by condition (s) of release access or possess certain items, information of material, utilize or attempt to utilize any computer or device for purposes of accessing or possessing such items, information or material. If I am prohibited by condition (s) of release from contacting or communicating with any person (s), I will not utilize or attempt to utilize any computer or device for purposes of contacting or communicating with such person (s).

Initial _____

40. I will participate and fully cooperate with any recommended mental health evaluations and will fully comply with the mental health provider's recommendations that may include and not be limited to psychiatric examinations, medication therapy, individual therapy, group therapy and appropriate laboratory testing for levels of psychotropic or neuroactive medication.

Initial _____

41. I will submit to psychiatric examinations as designated by the Commissioner of Mental Health to determine continued suitability for Strict and Intensive Supervision and Treatment.

Initial _____

42. I will participate and fully cooperate with my case manager in areas of case management services that may include but not be limited to entitlements, housing, vocational, educational and recreational programs.

Initial _____

43. I will not leave the five boroughs for work or pleasure without prior approval of parole officer/ senior parole officer.

Initial _____

44. If I have police contact I will report to my parole officer within 24 hours.

Initial _____

**Sexual Enhancements**

45. I will not use any medication prescribed or non prescribed that is meant to enhance stimulation, erectile functioning and performance (such as Viagra) for any reason unless I have permission of NYS Division of Parole.

Initial _____

Signed this 26 day of July 2017

Releasee _____   Witness: _____

under Duress

Name _Vincent Damon_  NYSID: _080139018_

46. I will not submit to any medical procedures meant to enhance my sexual functioning such as penal implants.

Initial _dv_

47. I will not use or have in my possession any type of sexually enhancing toys.

Initial _dv_

48. I will not use the internet to access pornographic material, access a commercial social networking website, communicate with other individuals or groups for the purpose of promoting sexual relations with persons under the age of eighteen, and communicate with a person under the age of eighteen unless I receive written permission from the Board of Parole to use the internet to communicate with a minor child under eighteen years of age who I am the parent of and who I am not otherwise prohibited from communicating with.

Initial _dv_

**Additional Conditions Imposed**

I will provide my assigned parole officer with a list of all individuals who I expect to visit with me at my approved residence:

I will not allow spontaneous visitors to enter my approved residence without the prior permission from my assigned parole officer.

**Name(s)**

Signed this _16_ day of _July_ _2017_

Releasee: _____ (und Duress)     Witness: _____

Exhibit D

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 88 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 63 of 69
Vincent / Yunus page 1 of 5

Date: October 28, 2016

Damon Vincent, a.k.a.
Equan Yunus
NYSID: 08013901R

J.Lewis-Robinson
Parole Officer, Bronx II SOU,
NYSDOCCS
Division of Parole
82 Lincoln Ave
Bronx, NY 10454

RE: REMOVAL OF EXTREME S.O.R.A. CONDITIONS;
    OUTREACH drug program

P.O. Lewis-Robinson:

   On October 26, 2016 at approximately 4:50 PM I arrived at the

OUTREACH program for drug treatment. Immediately upon seeing my assigned counselor Mrs.

Maria Pietruszka I was informed by Mrs. Pietruszka that I could no longer attend this drug

program due to the fact I was a level one sex offender. I asked Mrs. Pietruszka for this in writing

and she refused to give her statement (that I could no longer attend this program due to my level

one sex offender status) in writing, and because I asked for this statement in writing to which I

had a right to receive, she claimed I was being disrespectful, I did not disrespect this counselor (

I only asked for documentation).

I explained to her that my offense for which I was on parole had no sexual component and that I

was only made a low level sex offender because it was a legal requirement, she refused to allow

me to attend this program. She also attempted to recommend me for a drug treatment program

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 89 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 64 of 69
Vincent / Yunus page 2 of 5

for sex offenders, I explained to her I was not required to take sex offender treatment, as my

crime had no sexual component, and that I must speak with you my parole officer before I

commit to any program. I refused to sign the document  recommending that I be placed in a drug

treatment program for sex offenders, due to the fact that I did not want to waive my rights, I am

not required to be in any sex offender treatment programs, and because I had not spoken with

you about her actions.


I provide this letter as notice again after our lengthy discussion the afternoon of October 26,

2016 of the problems I have faced being placed under sex offender status with no sexual

component to the crime for which I am currently on parole. I have been denied 4 housing

opportunities, I have been in a shelter since my release 3 months ago, there is virtually no where

I can live in New York City that is not 1,000 feet away from a school, couple this with the high

rents of NYC and this amounts to banishment which is a due process violation under the 14th

amendment of the U.S. constitution. I have been denied 2 employment opportunities, I lost these

opportunities due to the fact of my level one sex offender status, I was forced into employment

of a lower pay scale and am fearful I will eventually lose this job when it is found out I am on

parole and a sex offender. This job has no contact with minors as I discussed with you. I am not

allowed to access the internet or own a smart-phone, computer, or camera for personal reasons

and these are a first amendment violations by established federal precedents in this federal circuit

and others. Doe v. Synder,  15-1536 (6th Cir  August 25, 2016), Doe v. Prosecutor, Marion

County indiana, 2013 WL 238735 (7th Cir Jan 23, 2013) (S.O.R.A. law banning social media

use illegal) Although I have no electronic prohibitions from the division of parole because my

crime had no sexual component. I am not allowed to have contact with family members who are minors, I am prohibited from traveling, owning a license and visiting any place where minors congregate, etc.. I am also forced to notify directors at my college BMCC of my sex offender status, this information is leaked into the school population, and I am viewed suspiciously and believe it will affect my grades and school assignments. I am without a doubt these are all constitutional violations .

Not only this it was just recently ruled in a sex offender case in <u>DOE V. ANNUCCI</u> , 14 CIV 2953 (PAE) (S.D.N.Y. JULY 15, 2015) that parole officials do not have absolute immunity, nor immunity from damages for discretionary decisions in applying parole conditions which pre-exist, especially where there are not adequate alternatives, and parole conditions must be reasonably related to past conduct, and not arbitrary and capricious, designed to deter recidivism, and prevent further offenses.

My parole conditions imposed by the NYSDOCCS division of parole were <u>sex offender case specific,</u> none of the extreme conditions imposed my parole officers, were imposed by my trial judge who did my S.O.R.A. hearing nor the NYSDOCCS division of parole, as they all understood my crime had no true sexual component .After I was released from prison my parole conditions have been bundled with level three and level two sex offenders men and women who crimes have a true sexual nature, whereas my crime did not. The legislative purpose S.O.R.A is to prevent recidivism, S.O.R.A. is truly irrational in my case as how can a recidivist prevention be applied where there was never sexual contact in the first place.

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 91 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 66 of 69
Vincent / Yunus page 4 of 5

I have been the subject of irrational and illogical parole and personal constraints due to my sex offender status involving a crime with no alleged or actual sexual component.

I now provide this letter as notice, that I would like that these level two and level three extreme sexual offender constraints be removed from my parole conditions as they are unconstitutional and illegal as discussed above, not only were they not applied by my S.O.R.A. judge, they were not imposed by the division of parole. They are personally being applied by parole officials without true understanding of their ramifications.

(Sworn) I do declare under the penalty of perjury the foregoing is true and correct.
28 U.S.C. 1746;  N.Y.P.L. 210.45

DATE: October 28, 2016                          Respectfully Submitted,

                                                X  /S/

CC: Director, NYSDOCCS                           Damon Vincent, a.k.a
     Division of Parole                          Equan Yunus

Case 1:17-cv-05839-AJN-BCM   Document 33   Filed 02/13/18   Page 92 of 94
Case 1:17-cv-05839-UA   Document 2-1   Filed 08/01/17   Page 67 of 69
Vincent / Yunus page 5 of 5

Certificate of Service

Damon Vincent, a.k.a.
Equan Yunus
NYSID: 08013901R

I Damon Vincent, a.k.a Equan Yunus do declare under penalty of perjury the following:

That I on October 28, 2016 I did send this document by electronic text to J. Lewis-Robinson@ (718) 551-6162, and served in personal  this attached document requesting removal of extreme S.O.R.A conditions at Willow Men's Shelter, 781 E. 135th street, Bronx NY 10454.

(Sworn) I do declare under the penalty of perjury the foregoing is true and correct.
28 U.S.C. 1746; N.Y.P.L. 210.45

DATE: October 28, 2016

Respectfully Submitted,

X _/S/_____

CC: Director, NYSDOCCS
    Division of Parole

Damon Vincent, a.k.a
Equan Yunus

Exhibit E

Date: November 22, 2016

To: Anthony Annucci, Acting director /
Commissioner NYS Doccs — Div of Parole
NYS Doccs — Bldg 2, 1220 washington Ave
Albany, NY 12226

from: Equan Yunus / Damon Vincent
DIN # 02A2314, NYSID: 08013901R

Re: Erroneous Sex offender Parole Conditions

Dear Acting Commissioner Annucci:

Please review The Enclosed october 28,
2016 letter requesting removal of sex offender
Conditions of Parole As my Crime has
No Sexual Component, nor do I have any
Sexual history, Propensity, or likelihood to
Commit future Sexual offenses. see S.O.R.A.
minutes enclosed.

Action requested: That Special Sex offender
Parole Conditions be removed for The
above reasons

X _____

Equan Yunus
a.k.a. Damon
Vincent.

encl.