UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EQUAN YUNUS, SR.,<br><br>      Plaintiff,<br><br>  -against-<br><br>ANDREW CUOMO[1], Governor of the State of New York, and ANTHONY J. ANNUCCI, Acting Commissioner of the New York State Department of Corrections and Community Supervision, in their official capacities; JOAN LEWIS-ROBINSON, Parole Officer, DEREK JONES, Bureau Chief, RODNEY YOUNG[2], Regional Director, RODNEY SMITH, Senior Parole Officer, DENISE GRANNUM, Senior Parole Officer, and YOLANDA VAZQUEZ, Parole Officer, in their individual and official capacities,<br><br>      Defendants. | No. 17-CV-5839 (AJN) (BCM) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

---

[1] Plaintiff no longer is pursuing his claims against Defendant Governor Cuomo as the relevant injunctive relief he seeks can be obtained from Defendant Annucci.

[2] Defendant Young was served on April 27, 2018. An affidavit of service was filed on April 30, 2018.

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................iii-vi

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND........................................................................................................2

LEGAL STANDARD....................................................................................................................5

ARGUMENT .................................................................................................................................5

    I.     PLAINTIFF STATES A CLAIM FOR A VIOLATION OF PROCEDURAL
          DUE PROCESS ............................................................................................................5

    II.    PLAINTIFF STATES A CLAIM FOR A VIOLATION OF SUBSTANTIVE
          DUE PROCESS ............................................................................................................9

    III.   PLAINTIFF STATES VIABLE CHALLENGES TO MANY OF HIS
          INDIVIDUAL CONDITIONS OF PAROLE..........................................................11

         A.     Plaintiff has Pled Multiple Claims Challenging his Residency Restrictions .12

              1.     Plaintiff Has Adequately Pled a Challenge to SORA's 1,000 Feet
                    Restriction ..........................................................................................12

              2.     Plaintiff Has Pled a Challenge to His Restriction that He Cannot
                    Be Within 300 Yards of Places "where children congregate"..........14

               3.     Plaintiff has Pled that His Residency Restrictions have Been
                    Applied in Arbitrary Manner ...............................................................16

         B.     Plaintiff's Denial of Access to His Family Violates Due Process .................16

         C.     The "Relationship" Condition" is Unconstitutionally Vague and Arbitrary .18

         D.     Plaintiff has Pled a Violation of his First Amendment Rights as He Has
              Been Barred from Social Media or the Internet..............................................18

         E.     Additional Conditions of Plaintiff's Parole Are Unrelated to His Prior
              Conduct.............................................................................................................19

              1.     Cell Phone and Computer Phone Use...............................................19

               2.     Vehicle Ban.......................................................................................21

               3.     Additional Arbitrary Conditions .......................................................21

    IV.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY ROOKER-FELDMAN...........22

V.      MANY OF PLAINTIFF'S CLAIMS ARE NOT BARRED BY QUALIFIED
        IMMUNITY.........................................................................................................23

CONCLUSION.................................................................................................................25

TABLE OF AUTHORITIES

**Cases**

*ACLU of NM v. City of Albuquerque,*
    137 P.3d 1215 (N.M. 2006) ................................................................. 11

*Adler v. Pataki,*
    185 F.3d 35 (2d Cir. 1999)................................................................... 24

*Anderson v. Creighton,*
    483 U.S. 635 (1987)............................................................................ 24

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................. 5

*Chambers v. Colorado Dep't of Corr.,*
    205 F.3d 1237 (10th Cir. 2000) ............................................................ 8

*Coleman v. Dretke,*
    395 F.3d 216 (5th Cir. 2004) ................................................................ 9

*Connecticut Department of Public Safety v. Doe,*
    538 U.S. 1 (2003)............................................................................. 8, 9

*Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y.,*
    660 F.3d 612 (2d Cir. 2011).......................................................... 12, 13

*Doe v. Cuomo,*
    755 F.3d 105 (2d Cir. 2014)................................................................. 9

*Doe v. Lima,*
    270 F. Supp. 3d 684 (S.D.N.Y. 2017).................................................. 17

*Doe v. Pataki,*
    3 F. Supp. 2d 456 (S.D.N.Y. 1998)................................................. 5, 22

*Doe v. Snyder,*
    101 F. Supp. 3d 672 (E.D. Mich. 2015)............................................... 13

*Doe v. Strange,*
    No. 2:15-CV-606, 2016 WL 1079153 (M.D. Ala. Mar. 18, 2016)................................. 14

*Does #1-5 v. Snyder,*
    834 F.3d 696 (6th Cir. 2016) .............................................................. 10

*Fowlkes v. Parker,*
    No. 9:08-CV-1198, 2010 WL 5490739 (N.D.N.Y. Dec. 9, 2010) ................................... 9

*Gerena v. Rodriguez*,
  192 A.D.2d 606 (1993) ................................................................................. 21

*Gonzalez v. City of Schenectady*,
  728 F.3d 149 (2d Cir. 2013) ......................................................................... 23

*Hachamovitch v. DeBuono*,
  159 F.3d 687 (2d Cir. 1998) ......................................................................... 23

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ...................................................................................... 24

*Jacobs v. Ramirez*,
  400 F.3d 105 (2d Cir. 2005) ......................................................................... 16

*Johnson v. United States*,
  135 S. Ct. 2551 (2015) ............................................................................ 15, 16

*Kentucky Dep't of Corr. v. Thompson*,
  490 U.S. 454 (1989) ........................................................................................ 5

*Kirby v. Siegelman*,
  195 F.3d 1285 (11th Cir. 1999) ...................................................................... 8

*LoFranco v. U.S. Parole Comm'n*,
  986 F. Supp. 796 (S.D.N.Y. 1997) .............................................................. 12

*Lopez v. Jet Blue Airways*,
  662 F.3d 593 (2d Cir. 2011) ........................................................................... 5

*Maldonado v. Fischer*,
  No. 11-CV-1091, 2013 WL 5487429 (W.D.N.Y. Sept. 30, 2013) ................ 12

*Meza v. Livingston*,
  No. 09-50367, 2010 WL 6511727 (5th Cir. Oct. 19, 2010) ............................ 8

*Moore v. City of E. Cleveland*,
  431 U.S. 494 (1977) ........................................................................... 17, 18, 24

*Nagle v. Marron*,
  663 F.3d 100 (2d Cir. 2011) ......................................................................... 24

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*,
  723 F.3d 192 (2d Cir. 2013) ........................................................................... 5

*Neal v. Shimoda*,
  131 F.3d 818 (9th Cir. 1997) ................................................................... 7, 8, 9

*Packingham v. North Carolina*,
　　137 S. Ct. 1730 (2017) ................................................................................ 19, 24

*People v. Knox*,
　　12 N.Y.3d 60 (2009) ........................................................................................ 10

*People v. Robbins*,
　　5 N.Y.3d 556 (2005) ........................................................................................ 13

*Robinson v. New York*,
　　No. 1:09-CV-0455, 2010 WL 11507493 (N.D.N.Y. Mar. 26, 2010) .............................. 11

*Sessions v. Dimaya*,
　　584 U.S. ___ (2018) ........................................................................................ 15

*Singleton v. Doe*,
　　210 F. Supp. 3d 359 (E.D.N.Y. 2016) ................................................................ 11, 20

*Spiteri v. Camacho*,
　　622 F. App'x 9 (2d Cir. 2015) .......................................................................... 22

*Spiteri v. Russo*,
　　No. 12-CV-2780, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013) ................................... 22

*State v. Robinson*,
　　873 So. 2d 1205 (Fla. 2004)............................................................................. 11

*Trisvan v. Annucci*,
　　284 F. Supp. 3d 288 (E.D.N.Y. 2018) ................................................................ 21

*United States v. Johnson*,
　　446 F.3d 272 (2d Cir. 2006)........................................................................ 18, 20

*United States v. MacMillen*,
　　544 F.3d 71 (2d Cir. 2008)............................................................................. 15

*United States v. Myers*,
　　426 F.3d 117 (2d Cir. 2005)............................................................................ 17

*United States v. Peterson*,
　　248 F.3d 79 (2d Cir. 2001)......................................................................... 20, 25

*United States v. Reeves*,
　　591 F.3d 77 (2d Cir. 2010)............................................................................. 18

*United States v. Sofsky*,
　　287 F.3d 122 (2d Cir. 2002).......................................................................... 20, 25

*Valmonte v. Bane*,
    18 F.3d 992 (2d Cir. 1994) ............................................................................. 6

*Vega v. Lantz*,
    596 F.3d 77 (2d Cir. 2010) ......................................................................... 5, 6

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
    535 U.S. 635 (2002) ..................................................................................... 23

*Wills v. U.S. Parole Comm'n*,
    882 F. Supp. 2d 60 (D.D.C. 2012) ................................................................. 6

*Woe v. Spitzer*,
    571 F. Supp. 2d 382 (E.D.N.Y. 2008) ........................................................... 9

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ....................................................................................... 7

## Statutes

Jacob Wetterling Act, 42 USC § 14071 ................................................................. 11

N.Y. Correct. Law § 168 ................................................................................... 8, 22

N.Y. Exec. Law § 259 ........................................................................................... 19

## Rules

N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.3 .................................................... 23

## PRELIMINARY STATEMENT

Defendants' motion to dismiss distorts the facts and misstates the law.  Plaintiff Equan Yunus, Sr. served fifteen years in prison for the crime of kidnapping-for-ransom.  It is undisputed that he never has, and likely never will, commit sexual misconduct.  Now, having reformed his life and been released on parole, Mr. Yunus is subject to daily restrictions and conditions that may be suitable for a high-risk sex offender, but are entirely unjustified for him.

Because Plaintiff pled guilty to kidnapping a minor, New York law requires that he be labeled a "sex offender."  But the mere fact that New York law requires that he be so designated does not make the label—to use Defendants' word and emphasis—"true."  What is *actually* true is that Equan Yunus has never committed a sex-related crime; that the only judge ever to have considered the question found that he likely never will commit a sex-related crime; and that the legal designation of Mr. Yunus as a "sex offender" is false, deeply stigmatizing, and results in numerous mandatory restrictions on Mr. Yunus's liberty.  As applied to Mr. Yunus, this designation, and the mandatory restrictions it carries with it, violates the constitutional requirements of procedural and substantive due process, as set forth more fully below.

Quite apart from the statutory designation of Mr. Yunus as a "sex offender" and the accompanying mandatory restrictions on his liberty, Mr. Yunus also suffers from additional restrictions imposed on him by his Parole Officers as a matter of their discretion.  These discretionary restrictions are unconstitutional because they bear no relation to his prior misconduct.  While acknowledging, as they must, that Plaintiff has never committed a sex-related crime, Defendants argue that the discretionary conditions of parole fit for a person who committed sexual misconduct against children are appropriate for Mr. Yunus because he is designated as a "sex offender" under  New York law.  This isn't an argument; it's a tautology. Just as the New York Legislature cannot avoid constitutional scrutiny simply by defining an

offense differently from its actual nature, parole officers imposing discretionary conditions cannot dodge constitutional review by relying on the Legislature's arbitrary label with no consideration for the *facts* of the parolee's prior offense.  What is now undisputed is that, upon his release, Plaintiff was accorded the *lowest* sex-offender risk designation New York provides, but the conditions imposed upon him by parole officers—including being forced to live in a homeless shelter; denied access to his family; and denied access to a cell phone entirely and a computer except in the most limited circumstances—are appropriate only for *high-risk* sexual offenders.  This mismatch between parole conditions and crime is at the core of Plaintiff's case. Defendants' effort to evade its fulsome review must be rejected.

Equan Yunus, Sr., a convicted felon and now a parolee, is entitled only to limited freedom; he knows and he accepts that fact.  But he is not without rights at all.  When liberty is curtailed, the Constitution draws lines—and stigmatizing designations and suffocating conditions that bear no relation to a parolee's past conduct violate our constitutional guarantees.  In this case, Defendants have crossed this line.  Because the stigmatizing designation of "sex offender" violates Plaintiff's rights to procedural and substantive due process, *infra* Part I-II, and the conditions of his parole are unconstitutionally vague, violate the First Amendment, and bear no relation to his prior conduct, *infra* Part III, Defendants' motion to dismiss must be denied.

## FACTUAL BACKGROUND

Sixteen years ago, Equan Yunus, Sr. pled guilty to the crime of kidnapping-for-ransom. Second Amended Complaint ("SAC") ¶ 22.   The crime arose in the context of the drug trade, and had no sexual component.  *Id.* ¶ 23.  During his time incarcerated, Mr. Yunus went to school, avoided drugs, and reformed his life.  *Id.* ¶ 26-28.  He has been drug free for 17 years.  *Id.* ¶ 28.

Plaintiff was released on parole in July 2016.  *Id.* ¶ 39.  Shortly before his release, Mr. Yunus learned for the first time that he would be designated as a sex offender, and went before

the Honorable Michael J. Obus, the judge who had sentenced him years earlier, for a mandated

hearing under New York's Sex Offender Registration Act ("SORA").  *Id.* ¶ 30.  At this hearing,

Justice Obus had only three options, he could designate Mr. Yunus Level One (low-risk), Two

(moderate-risk) or Three (high-risk)—"not a sex offender at all" was not an option.  *Id.* ¶ 31.

Justice Obus imposed a designation of Level One.[3]

Upon Plaintiff's release, forty-eight highly restrictive special conditions of parole were

imposed upon him.  *Id.* Ex. B.  These restrictive conditions have been maintained over Mr.

Yunus's protests by the various additional Parole Officers ("POs") and their supervisors to

whom Mr. Yunus has been assigned.  *Id.* ¶ 41; Ex. C.  Among countless restrictive conditions,

Mr. Yunus was forbidden from: (i) being present within 300 yards of any place where children

"congregate"; (ii) using a cell phone or computer without his PO's permission; (iii)

communicating with any minor (including his own family members); (iv) driving or riding in a

motor vehicle; (v) accessing social media; (vi) owning photographic or video equipment; (vii)

owning a pet; (viii)  having a post office box; and (ix) owning sexually explicit materials.  *Id.* Ex.

B & C. ¶¶ 15, 17, 19, 22, 24 31, 32, 35, 39.  Mr. Yunus also must inform any "consenting adult"

with whom he enters into a "relationship" that he is a sex offender.  *Id.*  Ex. B & C. ¶ 24.

These restrictions have had debilitating effects on Mr. Yunus's efforts to reenter his

community.  First, Mr. Yunus has been effectively confined to the homeless shelter that the

Department of Corrections ("DOCCS") assigned him to upon release.  By virtue of his sex

offender designation, Mr. Yunus is subject to a mandatory parole condition that he cannot reside

---

[3] At the hearing, Justice Obus stated that he was "very familiar" with Mr. Yunus's case, that there is "not only . . .
no allegation of sexual abuse in this case, but . . . also no suggestion of any history of sexual misconduct on the part
of the Defendant at all . . . [n]or is there any indication of any propensity on the part of the defendant for sexual
misconduct." *Id.* ¶ 32-33; Ex. A at 20-22.  In light of those observations, Justice Obus was satisfied that "there is
virtually no likelihood that [Mr. Yunus] will commit a sex crime ever." *Id.* ¶ 34; Ex. A at 20-22.

within 1,000 feet of any "school grounds." Ex. C ¶ 4. This restriction, coupled with the special parole condition of not being able to live within 300 yards of any place "where children congregate," covers virtually all of New York City. Even so, Mr. Yunus used Google Maps to identify two locations that would not run afoul of the "set-back" restrictions. *Id.* ¶¶ 62-63. But the POs responsible for his case nonetheless rejected these proposals, claiming that they were less than 1,000 feet from a school. *Id.* ¶¶ 65, 69. No PO was able to explain how this measurement was performed or why Plaintiff's mapping was incorrect. *Id.* ¶¶ 67, 71.

Mr. Yunus also requested to live with his fiancée's sister, Lisa Blake, and gave PO Lewis-Robinson Ms. Blake's address and phone number. *Id.* ¶ 72-73. She took no action on the request for nearly *nine months* despite two follow-up letters from Ms. Blake. *Id.* ¶¶ 75-76. When PO Lewis-Robinson finally did call, she proposed a date for a site visit on which Ms. Blake was unavailable. *Id.* ¶ 76. Ms. Blake responded with an alternative date—but PO Lewis-Robinson declared Ms. Blake "uncooperative" and denied Plaintiff's request. *Id.* ¶ 77.

Other special parole conditions have sharply limited Mr. Yunus' freedom as well, all without justification. For example, restrictions on his phone and computer use have hindered his ability to pursue his education or engage in First Amendment expression. *Id.* ¶¶ 81-92. An arbitrary switch in his curfew prevented him from accepting a full-time job. *Id.* ¶¶ 106-10.

His conditions have also hindered Plaintiff's ability to develop important personal relationships. Mr. Yunus has two siblings, both of whom have minor daughters; Mr. Yunus is forbidden from visiting with them. *Id.* ¶¶ 96-98. This restriction on contact with minors not only prevents him from developing a relationship with his nieces, but largely prevents him from seeing his siblings, who must make alternative child care arrangements to see him. *Id.* ¶ 99. Mr. Yunus is also very close to his uncle, who has invited for Mr. Yunus to live with him, his wife,

4

and his grandchildren. *Id.* ¶ 100-02. But Mr. Yunus cannot even visit his young cousins and has

not been unable to spend meaningful time with his uncle and aunt as a result. *Id.* ¶¶ 102-03.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead sufficient facts "to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "To

be plausible, the complaint need not show a probability of plaintiff's success," but need only

"evidence more than a mere possibility of a right to relief." *Nakahata v. N.Y.-Presbyterian*

*Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013). When considering a Rule 12(b)(6)

motion, the Court must accept well-pleaded factual allegations as true and draw all reasonable

inferences in the Plaintiffs' favor. *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).

## ARGUMENT

## I.   PLAINTIFF STATES A CLAIM FOR A VIOLATION OF PROCEDURAL DUE PROCESS

To state a procedural due process claim, a plaintiff must show: (1) a liberty or property

interest that has been interfered with by the state; and (2) constitutionally insufficient process

before that interest was interfered with. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454,

460 (1989). A reputational injury—such as a stigmatizing public designation—coupled with the

"impairment of some additional interest" is a sufficient deprivation of liberty to invoke the

protections the Due Process Clause. *Doe v. Pataki*, 3 F. Supp. 2d 456, 467 (S.D.N.Y. 1998). In

order to rise to a due process violation, the protested designation must be "capable of being

proved false." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010).

With respect to a protected liberty interest, the SAC sets forth that, despite having never

even been charged with sexual misconduct, Plaintiff has been forced to falsely register as a sex

offender. SAC ¶¶ 22-25, 29, 33-34. This misleading label has imposed "impairments" on many

interests, including his interests in being free from onerous registration requirements and visiting with his family. *Id.* ¶¶ 39-129. The false stigmatizing "sex offender" label, coupled with the additional "impairments" it creates, amounts to a liberty interest interfered with by the state. *See Vega*, 596 F.3d at 81-82 ("it continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest"); *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (stigma of being placed on sex offender central registry implicated constitutional liberty interest); *Wills v. U.S. Parole Comm'n*, 882 F. Supp. 2d 60, 75 (D.D.C. 2012) (citing to 5 Circuit Courts of Appeal for the proposition that "protected liberty interest in avoiding at least those stigmatizing consequences arising jointly from sex offender classification or labeling and its corresponding conditions").

Defendants assert that because Plaintiff was convicted of an offense that statutorily requires him to register as a sex offender, the statement that he is a sex offender is "true," and therefore cannot violate a cognizable liberty interest. Defs' Mot. to Dismiss ("Defs' Br.") 8-9. They rely upon *Vega v. Lantz*—but *Vega* was not nearly so broad. When analyzing whether a plaintiff who had committed a heinous sexual offense suffered a reputational injury from being deemed a "sex offender," the court focused on the underlying *facts* of the plaintiff's crime, not the label the Legislature gave the offense. It held that, because of what the plaintiff had actually *done*, he could not plausibly allege that the statement that he is a sex offender is "false." *Vega*, 596 F.3d at 82 ("Vega has not alleged that the conduct underlying his conviction for assault—the removal of a teenage girl's nipple and the forcing her to swallow it—did not occur.").

Unlike the plaintiff in *Vega*, Mr. Yunus has never even been charged with a sex-related crime, much less convicted of one, SAC ¶¶ 23, 29, and the state judge that presided over his criminal trial has made a judicial finding that he never has, and likely never will, commit a

sexual offense. *Id.* ¶¶ 32-34; Ex. A at 20-22. The fact that the Legislature placed the crime he

did commit in the same "bucket" as sex-related crimes is irrelevant to the inquiry; what matters

is what Mr. Yunus did and did not do. He did not engage in sexual misconduct, ever. Under

these circumstances, the designation of Mr. Yunus as a "sex offender" is, as alleged, false and

reputation-damaging, and thus the SAC asserts a cognizable liberty interest.

Mr. Yunus has also properly alleged the second element of a procedural due process

violation, as he never had the opportunity to challenge this false designation in an adversarial

proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). The Ninth Circuit's decision in

*Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), is instructive.

In *Neal*, the Ninth Circuit considered whether Hawaii's designation of two men—one of

whom had been convicted of attempted rape, and the other of whom had been indicted for sexual

misconduct, but had only been convicted of robbery, kidnapping and attempted murder—as sex

offenders without a hearing violated their due process rights. *Id.* at 821. For the man who had

been convicted of attempted rape, the court concluded that no further process was necessary

because his crime of conviction was "obviously a sex offense" and "an inmate who has been

convicted of a sex crime in a prior adversarial setting"—the criminal trial—"has received the

minimum protections required by due process." *Id.* at 831. For the man convicted of violent, but

not sexual, crimes, the court held that it was "equally clear . . . that [he] did not receive the

minimum due process protections" as he "has never been convicted of a sex offense and has

never had an opportunity to formally challenge the imposition of the 'sex offender' label in an

adversarial setting." *Id.* The fact that Hawaii law made no distinction between those convicted

of sexual offenses and those who had been only accused of such conduct did not mean that it was

constitutionally permissible to label the second plaintiff a "sex offender" without a hearing.

At least three other circuits have adopted *Neal*'s reasoning by requiring persons convicted of only non-sexual offenses to receive a hearing before being deemed "sex offenders."  *See Meza v. Livingston*, No. 09-50367, 2010 WL 6511727, at *1 (5th Cir. Oct. 19, 2010) ("This court has made clear that sex offender conditions may only be imposed on individuals not convicted of a sex offense after the individual has received due process."); *Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237, 1243 (10th Cir. 2000) (same); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) ("An inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender.").

While Defendants assert that Plaintiff has participated in two adversarial proceedings related to his designation—his guilty plea in state court, and his SORA hearing, Defs' Br. 8-9—neither of those proceedings gave Mr. Yunus, who has never even been accused of sexual misconduct, "the opportunity to formally challenge the imposition of the 'sex offender' label in an adversarial setting."  *Neal*, 131 F.3d at 831.  Mr. Yunus's criminal conviction does not satisfy due process in and of itself, because he was not convicted of an inherently-sexual offense and he was never advised when he pled guilty that his conviction would result in his designation as a sex offender.  SAC ¶¶ 22, 23, 25, 29.

Plaintiff's SORA hearing is also inadequate, as that hearing only allowed Justice Obus to assess the "risk level" designation to be imposed on Mr. Yunus, not *whether* the designation itself was constitutionally permissible at all.  N.Y. Correct. Law § 168-n(1)-(3).  Mr. Yunus is entitled to a hearing where he is given an opportunity to challenge his designation in the first instance—not just where on the sex offender spectrum he falls.

*Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), upon which Defendants rely, compels no contrary conclusion.  In that case, the petitioner had been convicted

of a sex offense, and argued that he was entitled to a separate hearing to assess whether he was "dangerous" before he could be branded a sex offender.  *Id.* at 6.  The Supreme Court disagreed, explaining that because the relevant state law deemed a person a sex offender by virtue of his conviction of a sex-related crime (irrespective of "dangerousness"), the process attendant to the criminal conviction was sufficient.  *Id.* at 8.  Here, Plaintiff was not convicted of a sex-related crime at all, SAC ¶¶ 23, 29, and this holding—that states are free impose the "sex offender" label on those convicted of sexual crimes without an additional hearing to assess danger—is simply inapplicable.  *See Coleman v. Dretke*, 395 F.3d 216, 223  n.30 (5th Cir. 2004).

*Doe v. Cuomo*, 755 F.3d 105 (2d Cir. 2014), is also inapposite, as that case fell squarely within *Connecticut Department of Public Safety*'s holding.  There, a plaintiff with a child pornography conviction claimed that it violated procedural due process to continue to designate him a sex offender without providing him an opportunity to show he was no longer "a danger to the community."  *Doe*, 755 F.3d at 113.  Under those facts, the Second Circuit correctly held that *Connecticut Department of Public Safety* controlled.  *Id.*  Mr. Yunus does not claim entitlement to the twice-rejected idea of a "dangerousness" hearing.  He challenges the very "procedure by which New York State determined" that he was a sex offender *at all*.  *Id.* at 113.[4]

## II.   PLAINTIFF STATES A CLAIM FOR A VIOLATION OF SUBSTANTIVE DUE PROCESS

Defendants contend that Plaintiff cannot state a substantive due process claim because the New York Court of Appeals has already held that designating persons who have been convicted of kidnapping a minor as sex offenders is rationally related to SORA's purpose.  Defs' Br. 9-10

---

[4] The additional cases cited by Defendants are equally inapplicable.  *See Fowlkes v. Parker*, No. 9:08-CV-1198, 2010 WL 5490739, at *7 (N.D.N.Y. Dec. 9, 2010) (citing to *Neal* for the proposition that defendant *who has been convicted of sexual misconduct* is not entitled to a hearing before being deemed a sex offender); *Woe v. Spitzer*, 571 F. Supp. 2d 382, 387 (E.D.N.Y. 2008) (challenge to amendment increasing time that Level-One Sex Offender must stay on registry and unrelated to underlying designation as a sex offender).

(relying on *People v. Knox*, 12 N.Y.3d 60, 67 (2009)).  Defendants do not defend the Court of

Appeals analysis, but simply quote its decision and implore this Court to adopt its reasoning.

The New York Court of Appeals is not the final arbiter of constitutional questions, and its

reasoning in *Knox* does not withstand scrutiny.

The *Knox* court held that the Legislature acted rationally when it defined the term "sex

offender" to include both those who commit a sex-related offense, and those who victimize

minors, including by way of kidnapping.  While the Legislature "might well have made . . . an

exception" for persons who kidnapped a minor but did not engage in sexual misconduct, instead,

it chose to prioritize the administrative ease of giving *all* persons convicted of kidnapping a

minor the same "sex offender" label.  *Id.* at 69.  The *Knox* Court opined that persons in Mr.

Yunus's position would have no basis to protest a designation connoting danger to children (i.e.

"child predator"), and that because the difference between the terms "child predator" and "sex

offender" is minimal, it was rational for the legislature to prioritize the ease of giving all persons

convicted of kidnapping a minor the same "sex offender" label over ensuring that all persons

labeled "sex offenders" have actually committed a sexual offense.

The purpose underlying SORA is "the protection of the community against people who

have shown themselves capable of committing sex crimes."  *Id.* at 67.  Deeming Mr. Yunus, who

all agree has not "shown himself capable" of committing sexual misconduct, a sex offender bears

no rational relationship to this purpose.  The *Knox* Court, in our view, was cavalier in its

reasoning to hold otherwise.

The *Knox* Court ignored the overwhelming power and profound stigma associated with

the term "sex offender."  As the Sixth Circuit recently noted, sex offender registries "brand

registrants as moral lepers," *Does #1-5 v. Snyder*, 834 F.3d 696, 705 (6th Cir. 2016).  And, as

this court has acknowledged, a sex offender designation is "likely to carry with it shame, humiliation, ostracism, loss of employment and decreased opportunities for employment, perhaps even physical violence, and a multitude of other adverse consequences." *Doe v. Pataki*, 3 F. Supp. 2d at 467-68. While it is possible some other name would carry similar stigma, this is an untested guess; what is undeniable is the heinous image of a "sex offender" that has been ingrained in the public consciousness for decades. The *Knox* Court improperly underestimated the tremendous burden associated with being branded a "sex offender." When the weight of that stigma is fairly considered, it was irrational for the legislature to simply dismiss it in the name of bureaucratic ease. *See State v. Robinson*, 873 So. 2d 1205, 1215 (Fla. 2004); *ACLU of NM v. City of Albuquerque*, 137 P.3d 1215, 1226 (N.M. 2006).[5]

## III.   PLAINTIFF STATES VIABLE CHALLENGES TO MANY OF HIS INDIVIDUAL CONDITIONS OF PAROLE

With respect to his discretionary parole conditions, Defendants act as though New York's statutory requirement that Mr. Yunus register as a sex offender makes it appropriate for DOCCS to impose parole conditions as though he committed a sexually violent offense. That simply is not the law. Discretionary conditions of parole must be reasonably related to a parolee's *prior conduct*, irrespective of statutory designations that attach to the crime of conviction. *See Robinson v. New York*, No. 1:09-CV-0455, 2010 WL 11507493, at *3 (N.D.N.Y. Mar. 26, 2010); *Singleton v. Doe*, 210 F. Supp. 3d 359, 372-73 (E.D.N.Y. 2016). Defendants' insinuation that these challenges are more properly raised in a state Article 78 proceeding is also incorrect. The very case Defendants repeatedly cite for that proposition makes clear that either an Article 78

---

[5] Overlooking the distinction between the label of "sex offender" and a different label indicating potential danger to children, Defendants incorrectly claim that ruling in Plaintiff's favor would require the court to deem both SORA and the federal Jacob Wetterling Act, 42 USC § 14071, unconstitutional. Defs' Br. 10. Not so, as "the [federal law] does not require attaching the label 'sex offender' to the perpetrators of [kidnapping a minor]. That was the New York Legislature's choice." *Knox*, 12 N.Y.3d at 68.

proceeding or a federal constitutional claim is available and appropriate as a mechanism to challenge arbitrary parole conditions. *Maldonado v. Fischer*, No. 11-CV-1091, 2013 WL 5487429, at *4 (W.D.N.Y. Sept. 30, 2013) ("plaintiff may seek review of those conditions through an article 78 petition *or another action in this Court*") (emphasis added).

### A.    Plaintiff has Pled Multiple Claims Challenging his Residency Restrictions

Plaintiff attacks two restrictions that limit where he is able to live.  First, as a mandatory condition under SORA, he may not reside on or enter into "school grounds," which includes "areas within one-thousand feet of the real property boundary line" of any school.  SAC Ex. C. ¶ 4.  Second, as a discretionary condition of his parole, Plaintiff may "not enter or be within 300 yards of places where children congregate, such as toy stores, parks, pet stores, schools, playgrounds, video galleries, malls, bike trails, skating rinks, amusement parks, bowling parks, bowling alleys, pool halls, etc. . . ."  *Id.* ¶ 17.  Both of these conditions are unconstitutionally vague and have been applied to Plaintiff in an arbitrary and irrational manner.

#### 1.    *Plaintiff Has Adequately Pled a Challenge to SORA's 1,000 Feet Restriction*

A parole condition is unconstitutionally vague if "a person of common knowledge must guess at its meaning."  *LoFranco v. U.S. Parole Comm'n*, 986 F. Supp. 796, 808 (S.D.N.Y. 1997*), aff'd*, 175 F.3d 1008 (2d Cir. 1999).  The Second Circuit has made clear that regulations providing general guidance of what is prohibited, but not the terms of measurement that allow for the demarcation of boundaries, are too vague to satisfy due process.  *Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y.*, 660 F.3d 612 (2d Cir. 2011).  In *Cunney*, the Circuit held that an ordinance banning the building of structures "over two stories tall or four and one-half feet above the easterly side of River Road" was void for vagueness.  *Id.* at 617.  While the restriction "afford[ed] a reasonable person adequate notice of what it generally prohibits (e.g.,

12

three-story buildings will be in violation), it [was] remarkably unclear with respect to how the four and a half foot limitation is defined." *Id.* at 621.

The same reasoning applies to SORA's restriction preventing Mr. Yunus from residing within 1,000 feet of a school. Like the ordinance in *Cunney*, New York's "1,000 feet from school grounds" condition provides *general* guidance as to what is prohibited (i.e. a registered sex offender cannot live next door to a school), but it fails to provide *specific* guidance as to how 1,000 feet should be measured. *See Doe v. Snyder*, 101 F. Supp. 3d 672, 683 (E.D. Mich. 2015) (relying on *Cunney* to strike down analogous 1,000 feet from a school restriction). While the statute says that the 1,000 feet buffer is measured from the "real property boundary line" of a school, New York law does not explain how that measurement is to occur on the other end.

Defendants gamely assert the New York Court of Appeals has clarified this issue by endorsing the "straight line method" of measurement. Defs' Br. 11. But the case they rely upon concerns a different statute with different purposes and imperatives. In *People v. Robbins*, 5 N.Y.3d 556 (2005), the New York Court of Appeals addressed the measurement question in connection with a prohibition on dealing drugs "on school grounds." *Id.* at 557. The resulting "straight-line" methodology it adopted was tied specifically to the anti-drug rationale of the underlying statute. *Id.* at 560. It is thus unsurprising that no court has cited *Robbins* as controlling measurements for a SORA restriction. This single discussion of how 1,000 feet is measured in the context of drug-dealing cannot be sufficient for Mr. Yunus to assess his limitation.

Even if one were to accept the "straight-line method" for SORA purposes, New York's "1,000 feet" rule would still be unconstitutionally vague for an entirely separate reason: DOCCS makes absolutely no effort to provide parolees with any means to perform these measurements,

or even to measure the 1,000 feet consistently.  In *Snyder*, the court held that Michigan's 1,000 foot restriction was impermissibly vague for the independent reason that parolees were not provided with relevant exclusion zones or a list of school properties.  101 F. Supp. 3d at 684.  The *Snyder* court rejected the state's argument that internet tools such as Google Maps were sufficient to assist those affected by the restrictions.  While such tools "can provide helpful estimates. . . [they] would not provide a registrant with the necessary detail to determine whether a property that is close to 1,000 feet away from a school property line falls within an exclusion zone." *Id.*; *see also Doe v. Strange*, No. 2:15-CV-606, 2016 WL 1079153, at *9 (M.D. Ala. Mar. 18, 2016) ("registrants face a virtually insurmountable hurdle of determining the location of qualifying schools . . . without accurate data of current land use within the state").

New York, like Michigan and Alabama, does not provide parolees with any tools to assess their compliance with these limitations, and Mr. Yunus's experience is emblematic of the restrictions' vagueness.  Mr. Yunus twice used Google Maps to evaluate potential residences, only to be told that the publicly-accessible maps he used were inadequate.  SAC ¶¶ 63-71.  As Plaintiff has not been provided any means to perform these measurements and the public tools available to him have been outright rejected, he is left to guess as to where his conditions apply.

At the very least, discovery is necessary to assess how DOCCS measures 1,000 feet from a school and what tools are made available to parolees to perform the same measurement.

   2.   *Plaintiff Has Pled a Challenge to His Restriction that He Cannot Be Within 300 Yards of Places "where children congregate"*

Mr. Yunus's discretionary parole condition that he cannot be "within 300 yards of places where children congregate," SAC Ex. C ¶ 17, is unconstitutional for the same reasons.  The

statute provides no guidance as to the point from which "300 yards" should be measured, nor does it provide any data or methodology to assist parolees in locating qualifying establishments.[6]

This restriction is also unconstitutionally vague because there is no definitive meaning on what it means to be a place where children "congregate."  Relying on *United States v. MacMillen*, 544 F.3d 71 (2d Cir. 2008), Defendants contend that the Second Circuit has validated all restrictions banning parolees from places "where children congregate" so long as an exemplar list of such establishments is provided.  Defs' Br. 12.  But the exemplar list at issue in *MacMillen* was far narrower and is not controlling for the broad restriction placed on Mr. Yunus.

In *MacMillen*, the Second Circuit upheld a condition requiring that defendant not be in "any areas or locations where children are likely to congregate[,] such as schools, daycare facilities, playgrounds, theme parks, arcades, recreational facilities, and recreation parks."  544 F.3d at 74.  The Second Circuit emphasized that the list provided was sufficiently clear as to what types of places were prohibited.  *Id.* at 75.  Unlike the list used in *MacMillen*,  the list provided to Mr. Yunus indicates that he cannot be in many places of general public enjoyment such as a mall or any park, and even some places that one would not typically associate with children, such as a pool hall.  It is left entirely *un*defined in Mr. Yunus's case what the threshold of child attendance must be for a location to constitute a place where children "congregate."

It is also unclear that *MacMillen* is still good law in light of the Supreme Court's modern jurisprudence on the danger of using exemplar lists to cure vague language in statutes carrying criminal penalties.  *See Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015) (exemplar list where items are not sufficiently similar created more "unpredictability and arbitrariness than the Due Process Clause tolerates"); *Sessions v. Dimaya*, 584 U.S. ___ (2018), slip op. at 11 (Roberts,

---

[6]  Even if *Robbins* were sufficient to dictate the proper measurement for all statutes using the penal law's definition of "school grounds" it still sheds no light on how to measure "300 yards from places where children congregate."

C.J., dissenting) ("our Court's failed attempts to make sense of [an exemplar list], w[as] essential to *Johnson* 's conclusion [that the relevant statute was unduly vague]").

> ### 3.      Plaintiff has Pled that His Residency Restrictions have Been Applied in Arbitrary Manner

In addition to these challenges, Plaintiff has also pled that his residency restrictions have been applied in an arbitrary manner, as he has effectively been confined to a homeless shelter. When assessing the reasonableness of parole conditions, courts look beyond the condition as written and assess how the condition is carried out in practice.  *See Jacobs v. Ramirez*, 400 F.3d 105, 107 (2d Cir. 2005); *Meza*, 2010 WL 6511727, at *2 (5th Cir. Oct. 19, 2010).

Defendants do not address Plaintiff's allegations that: (1) he submitted the address of his fiancée's  sister, Lisa Blake,  as a proposed residence; (2) Defendant Lewis-Robinson made no effort to contact Ms. Blake for some 9 months; and (3) once she did call Ms. Blake, she immediately declared Ms. Blake uncooperative because Ms. Blake was unavailable at the one time PO Lewis-Robinson proposed.  SAC ¶¶ 72-77.[7]  Defendant has told Plaintiff that she prefers all of her parolees reside at the shelter and, upon information and belief, all parolees under her supervision do reside there, despite the presence of a family shelter across the street. *Id.* ¶¶ 78-80.  These allegations create at least a reasonable inference that Mr. Yunus effectively has an arbitrary parole condition that he must reside in a homeless shelter.

### B.      Plaintiff's Denial of Access to His Family Violates Due Process

Mr. Yunus's special parole conditions require that he refrain from contact with any minor unless approved by a parole officer.  SAC ¶ 93; Ex. C. ¶ 15.  Plaintiff's PO has rigorously enforced this condition even as applied to minor family members.  *Id.*  ¶¶ 94-95.

---

[7] Subsequent conversations with Ms. Blake have revealed that she and PO Lewis-Robinson did set a time for a site visit that PO Lewis-Robinson inexplicably cancelled.  These slightly revised facts support the same legal claim that Mr. Yunus has been baselessly confined to a shelter.

As Defendants concede, the Supreme Court has recognized that the Due Process Clause creates a "private realm of family life" that is not limited by the "arbitrary boundary" of the nuclear family. *Moore v. City of E. Cleveland*, 431 U.S. 494, 502 (1977). Following this admonition, courts in the Second Circuit have held that parole conditions that interfere with these protected familial relationships must satisfy strict scrutiny. *See United States v. Myers*, 426 F.3d 117 (2d Cir. 2005); *Doe v. Lima*, 270 F. Supp. 3d 684, 702 (S.D.N.Y. 2017).

Defendants claim that Plaintiff cannot invoke this due process protection by attempting to cabin the right at issue to situations of custodial responsibility over minors. Defs' Br. 15. But this protection is not nearly so limited. In *Moore*, the Supreme Court observed that extended relatives must be able to assume new roles to help vulnerable family members as "[e]specially in times of adversity . . . the broader family has tended to come together for mutual sustenance and to maintain or rebuild a secure home life." 431 U.S. at 505.

Mr. Yunus is in exactly such a time of adversity, and his aunt, uncle and sister would like to provide him with "sustenance" to allow him to "rebuild" his life with his family. But they are unable to do so because Mr. Yunus is not permitted to have contact with a significant portion of the family they seek to bring together—their children and grandchildren. SAC ¶¶ 99-105.

Defendants also incorrectly claim that Plaintiff is not entitled to this protection because he has not alleged a sufficiently close relationship with the children themselves. Defs' Br. 16. That argument ignores the reality that Mr. Yunus has been in prison or on parole (without the ability to contact minors) since 2002. SAC ¶¶ 4, 93-95. Defendants cannot deny Mr. Yunus access to the children in his family and then claim that he is not entitled to due process protections because his close relationship is with their parents rather than the children directly. It is the opportunity for the family that has gone through "adversity" to "rebuild" the familial bond

17

that the Due Process clause is meant to protect, and this indiscriminate ban cannot be upheld without individualized consideration.[8]  *Moore*, 431 U.S. at 504-05; *Lima*, 270 F. Supp. 3d at 704.

### C.    The "Relationship" Condition" is Unconstitutionally Vague and Arbitrary

As a special condition of his parole, when Mr. Yunus enters into a "relationship with a consenting adult," he must inform his PO, and then inform the "consenting adult" that he is a sex offender.  SAC ¶ 119; Ex. C ¶ 24.  In *United States v. Reeves*, 591 F.3d 77 (2d Cir. 2010), the Second Circuit struck down a condition requiring a defendant to inform the parole department if he entered into a "significant romantic relationship" as impermissibly vague.  *Id.* at 79-81.

The same rule should apply here.  While Defendants contend that it is "clear that this requirement refers to sexual activity," this view oversimplifies the restriction.  Defs' Br. 12. While the "consent" in "consenting adult" could refer to sexual activity, it could also simply mean an adult who has "given assent or approval" to be in "relationship" with Mr. Yunus— creating the same problem with the word "relationship" identified in *Reeves*.  *See* "consenting." Merriam-Webster Dictionary, http://www.merriam-webster.com (Apr. 26, 2018)).

Equally critically, Mr. Yunus is a "sex offender" in name only, and this condition  serves no purpose beyond causing stigma and embarrassment.  SAC ¶ 156.

### D.    Plaintiff has Pled a Violation of his First Amendment Rights as He Has Been Barred from Social Media or the Internet

As a discretionary condition of parole, Mr. Yunus is barred from using a cell phone or computer without his PO's consent.  SAC ¶ 81; Ex. C. ¶¶ 35, 39.  On the day of this filing, Plaintiff's prior ability to possess a smart phone for limited academic use and to communicate with counsel was revoked, and his PO informed him he would be "locked up" if he was seen

---

[8] *United States v. Johnson*, 446 F.3d 272 (2d Cir. 2006), is irrelevant to this case.  While the Second Circuit upheld a ban on all contact with minors, the basis of the challenge was vagueness—not interference with a familial relationship.  *Id.* at 280.

with any phone at all.  Ex. 1.  While Plaintiff, as of now at least, is able to use school computers in limited academic circumstances, he is barred from using his personal computer, and is not permitted to use the internet or social media for any non-academic purpose.  *Id.*  ¶¶ 85-88.

Last term, the Supreme Court held that a state law categorically barring sex offenders from accessing social media violated those offenders' First Amendment rights.  *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).  Because most social media networks, including those discussed in *Packingham*, such as Facebook, Twitter, and LinkedIn, may only be accessed through the devices Mr. Yunus is prohibited from using except for academic purposes—i.e., not for the First Amendment expressive purposes discussed in *Packingham*—these conditions are effective social media bans that cannot withstand First Amendment scrutiny.  *Id.*

Mr. Yunus is also subject to an explicit, mandatory condition banning him from accessing "any commercial social networking website."  N.Y. Exec. Law § 259-c(15).  This blanket requirement is likewise unconstitutional in light of *Packingham*.  Defendants' assertion that Plaintiff is allowed access to LinkedIn is both outside the scope of a motion to dismiss— where the facts alleged in the complaint must be accepted as true—and, in any event, is irrelevant.  Plaintiff was allowed access to LinkedIn for a project for a marketing class at his college—he has no access to social media for his own First Amendment use.  SAC ¶¶ 87-88.

### E.      Additional Conditions of Plaintiff's Parole Are Unrelated to His Prior Conduct

#### 1.      Cell Phone and Computer Phone Use

In addition to violating his First Amendment rights, the restrictions on Mr. Yunus's cell phone and computer use bear no relationship to his prior conduct.  Just as they are an effective ban on social media use, these restrictions are functionally a ban on accessing the internet at all.

As early as 2001, the Second Circuit observed that "[c]omputers and Internet access have become virtually indispensable in the modern world of communications and information gathering" and struck down a condition of supervised release restricting computer ownership and internet access as unrelated to a defendant's prior bank larceny and incest.[9]  *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001).  The Circuit held that "the fact that a computer with Internet access offers the possibility of abusive use for illegitimate purposes does not . . . justify so broad a prohibition."  *Id.*; *see also, e.g.*, *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002); *Singleton*, 210 F. Supp. 3d at 376 (relying on *Sofsky* and *Peterson* and holding state parole condition is impermissible if it "functions as an overbroad ban on an item simply because Plaintiff could use its functions to commit a future lewd act").

If computers and the internet were "indispensable to modern life" in 2001, today, they are even more so.  Here, Mr. Yunus did not use a cell phone, computer, or the internet in committing his crime of conviction, nor has he ever been charged with using these devices for any illicit purpose.  SAC ¶¶ 83-84.  Nevertheless, Mr. Yunus cannot use a cell phone or his personal computer at all, and can only use the internet for academic and legal purposes.

In claiming this restriction is reasonable, Defendants rely only on cases that stand for the general proposition that conditions of parole may limit internet access in ways that are "reasonably related" to prior crimes.  Defs' Br. 15.  Here, they are not.  Defendants cite no case to support the proposition that no cell phone use and "academics only" computer and internet use is appropriate for all sex offenders regardless of the underlying facts of conviction.[10]

---

[9] While acknowledging that cases involving federal probation conditions are subject to "slightly more stringent" standards than state parole conditions, courts look to cases involving federal probation for guidance when assessing the constitutionality of special conditions of state parole.  *See, e.g.*, *Singleton*, 210 F. Supp. 3d at 376.

[10] Defendants' citation to *United States v. Johnson*, 446 F.3d 272, 275 (2d Cir. 2006), a case where an aerospace engineer used his knowledge of computers to commit sexual offenses against minors, provides an example of a case where a reasonable relationship to the crime of conviction justified a computer ban.  No such facts exist here.

2.      *Vehicle Ban*

Plaintiff is also subject to discretionary conditions of parole that bar him from driving or riding in a motor vehicle.  SAC ¶ 125; Ex. C. ¶¶ 31-32.  Defendants rely on *Gerena v. Rodriguez*, 192 A.D.2d 606 (1993), to assert that because Mr. Yunus used a vehicle in the commission of his crime almost 20 years ago, these restrictions are justified. Defs' Br. 17 n. 9.   But the parolee in that case was only prohibited from operating a vehicle, *see Gerena* ,192 A.D. 2d at 606—Mr. Yunus is prohibited from even *riding* in a vehicle without permission.  SAC Ex. C. ¶¶ 31-32. While Mr. Yunus has sometimes been allowed to ride in vehicles, the condition remains in place, and he runs the risk of being incarcerated if he so much as accepts a ride to school on a day where the subway isn't running.  This restriction is overly broad and should be struck.

3.      *Additional Arbitrary Conditions*

Contrary to Defendants' representation that Plaintiff challenges "almost all" of his conditions of parole, Defs' Br. 16, he challenges only an additional *four* of the forty plus conditions he is subject to—that he cannot possess photographic or recording equipment, cannot possess sexually explicit magazines or tapes, cannot own a pet, or cannot have a Post Office Box.  SAC ¶¶ 128-29.  Plaintiff has pled the only facts relevant to whether these restrictions relate to his prior conduct—that he did not use these instruments in carrying out his crime of conviction.  *Id.*

In *Trisvan v. Annucci*, 284 F. Supp. 3d 288 (E.D.N.Y. 2018), upon which defendants rely, a pro se plaintiff alleged, without any factual explanation of his crime, that all restrictions were unnecessary because he "served his time" and was a "law-abiding member of his community." *Id.* at 296.  The court's admonition that "plaintiff must therefore describe in detail the facts underlying his crime of conviction" was not a statement of a general pleading requirement for all challenges to parole conditions.  It was a warning that a plaintiff cannot just allege blanket

criticism that conditions are "unnecessary" without any factual explanation.  Here, Mr. Yunus

has explained why the challenged conditions have no relation to his underlying conviction.

## IV.    PLAINTIFF'S CLAIMS ARE NOT BARRED BY ROOKER-FELDMAN

Defendants' assertion that all of Plaintiff's claims are barred by the *Rooker-Feldman*

doctrine is meritless.  Defs' Br. 5-7.  Plaintiff is not challenging any judicial order of any state

court.  He is challenging administrative actions of DOCCS carried out pursuant to legislative

authority.  The duty to "establish and maintain" New York's sex offender registry, under which

Plaintiff is registered, falls solely with DOCCS.  N.Y. Correct. Law § 168-b.  By the time Mr.

Yunus received a SORA hearing before a state judge, the only open  issue was whether he would

be a Level-One, Two, or Three offender.  *Id.* § 168-n(1)-(3).

Because the only issue litigated in state court was Mr. Yunus's risk level-classification,

*Rooker-Feldman* does not apply.  *Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *13

(E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015)

(*Rooker-Feldman* inapplicable because "the issue before [the state judge] was Plaintiff's risk

level classification, not whether he was required to register as a sex offender").  Plaintiff has no

obligation to pursue this issue in state court before proceeding with a federal lawsuit.  *Id.*

(rejecting argument that Plaintiff could only challenge sex offender designation through Article

78 in analogous posture).  Accordingly, neither Plaintiff's challenges to his designation nor his

challenges to his conditions of parole have been litigated in state court.  *See also Doe*, 3 F. Supp.

2d 456 at 478. ("At a minimum . . . the claims raised in federal court must at least have been

presented in the state court proceeding for [*Rooker-Feldman*] doctrine to apply.").

Defendants' assertion that Mr. Yunus raised a substantive due process claim at his SORA

hearing and that Justice Obus "considered the constitutional application of SORA" is factually

incorrect.  Defs' Br. 3-4.  Mr. Yunus's counsel did not challenge *Knox*, but simply argued a

22

Level-One designation was all that was required.  *See* SAC Ex. A 5:12-6:12.  Justice Obus did

not asses the wisdom of *Knox*; he was bound by it.  All he could do was acknowledge the

premise that under New York law, Plaintiff "must register as a sex offender." *Id.* 20:18-21:3.

Even if this Court were to view Mr. Yunus's present substantive due process challenge as

a challenge to Justice Obus's ruling, the Second Circuit has drawn a distinction between cases

challenging "alleged defect of state administration or legislation"—which are not barred by

*Rooker-Feldman* and those challenging a state "judicial proceeding," which are.  *Hachamovitch*

*v. DeBuono*, 159 F.3d 687, 694 (2d Cir. 1998).  This case is a permissible challenge to a defect in

state "legislation."  Plaintiff does not challenge any of Justice Obus's factual or legal

determinations.  He challenges only the statutory premise Justice Obus was bound by.

Lastly, Parole Officers are solely responsible for the imposition of discretionary

conditions of parole. N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.3.  These determinations, made

by an administrative agency, are not subject to *Rooker-Feldman* preclusion.  *See Verizon*

*Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002).

## V.   MANY OF PLAINTIFF'S CLAIMS ARE NOT BARRED BY QUALIFIED IMMUNITY

Defendants are not entitled to qualified immunity if (1) plaintiff  has plead a violation of

a constitutional right; (2) that right was "clearly established"; and (3) it was not "objectively

reasonable" for the officer to believe the conduct at issue was lawful.  *Gonzalez v. City of*

*Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).  As set forth above, Plaintiff has pled facts

establishing a constitutional violation for each of his claims.

Moving to Steps 2 and 3, Plaintiff does not seek monetary damages on his due process

claims resulting from his sex offender designation and acknowledges, with one exception, that

qualified immunity would apply to mandatory conditions tied to that designation.  Plaintiff seeks

only injunctive relief for these claims.  *Adler v. Pataki*, 185 F.3d 35, 48 (2d Cir. 1999).

Contrary to Defendants' contentions, Defs' Br. 19, Plaintiff's challenges to his social

media ban, denial of access to his family, and discretionary conditions of parole are not barred by

qualified immunity.  The Supreme Court and the Second Circuit have acknowledged that

"clearly established" does not mean "'the very action in question' need [] have been the subject

of a holding," *Nagle v. Marron*, 663 F.3d 100, 115 (2d Cir. 2011) (quoting *Anderson v.

Creighton*, 483 U.S. 635, 640 (1987)), as "officials can be on notice that their conduct violates

established law even in novel factual situations," *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

Here, as to the social media ban, any reasonable officer would know that *Packingham*

clearly established that an outright ban on social media usage is unconstitutional.  The Supreme

Court's unmistakable holding made it unreasonable for the Defendants to rely on this state's

statutory requirement when proscribing conditions of parole.  137 S. Ct. 1730, 1737 (2017).

For Plaintiff's claims regarding the denial of access to his family *Moore v. City of East

Cleveland*, 431 U.S. 494, 502 (1977), made clear the family relationships protected by the Due

Process Clause do not end with the "nuclear family," and that more distant relatives such as

"aunts, uncles, and cousins" are entitled to the same protection.  *Id.* at 504-05.  The Court

emphasized that this right serves its highest purpose "in times of adversity" when broader

families have "tended to come together for mutual sustenance and to maintain or rebuild a secure

home life."  *Id.* at 505.  While this "very action" has not come before the Supreme Court or the

Second Circuit, the "contours" of this right of familial association, especially in times of

adversity, has long been clearly established, and Defendants cannot invoke qualified immunity

for interfering with this relationship under these circumstances.  *Anderson*, 483 U.S. at 640.

24

Defendants are also not entitled to qualified immunity on Plaintiff's effective condition of having to live in a homeless shelter, his cell phone ban, overly restrictive access to a computer, and the various other arbitrary conditions set forth in his sixth claim for relief.  It is well-established in the Second Circuit that conditions of supervised release, which inform the analysis for conditions of parole, must be *reasonably related* to the defendant's conduct of conviction. *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001).  With respect to computer and internet restrictions, the Second Circuit has already specifically held that overbroad bans based on potential misuse, which bear no relation to the conduct of conviction, cannot withstand constitutional scrutiny.  *Id.*; *United States v. Sofsky*, 287 F.3d 122, 124 (2d Cir. 2002).  These cases directly control Mr. Yunus's cell phone and computer restrictions and the Circuit's clear reasoning—that conditions of parole cannot be overbroad bans on a common item simply because it could theoretically be misused—is sufficiently well established to strip Defendants of qualified immunity for their imposition of arbitrary parole conditions that bear no relation to Plaintiff's prior conduct. *Peterson*, 248 F.3d at 83.

## CONCLUSION[11]

For the foregoing reasons, Defendants' motion to dismiss should be denied.  If the Court deems Plaintiff's complaint deficient in any respect, Plaintiff respectfully requests leave to amend his complaint.

---

[11] There are no longer mootness concerns with respect to Plaintiff's claims, as Plaintiff prevailed at his preliminary hearing, vindicating his assertions that his violation was retaliatory, and he is no longer incarcerated.  Defs' Br. 20-21.  There are also no concerns with respect to Eleventh Amendment immunity, as Plaintiff does not seek monetary damages from any Defendants in their official capacities.  Defs' Br.  21.

Dated:   April 30, 2018
         New York, New York

                                      EMERY CELLI BRINCKERHOFF
                                        & ABADY LLP

                                      By:                /s/
                                      Andrew G. Celli, Jr.
                                      David Berman
                                      600 Fifth Avenue
                                      New York, New York 10020
                                      (212) 763-5000

26