UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 1 1 2019

Equan Yunus, Sr.,

        Plaintiff,

–v–

J. Lewis Robinson *et al.*,

        Defendants.

17-cv-5839 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Since 2016, Plaintiff has been required to register as a sex offender and has been subject to parole conditions designed to control the threat posed by sex offenders, including limitations on where he can live and travel, what websites he can access and what technology he can possess, and whether he can own a pet or rent a post office box. Plaintiff was even re-incarcerated for several months for possessing a smartphone and laptop. Report & Recommendation ("R & R"), Dkt. No. 79, at 61. Yet the record before the Court does not indicate that Plaintiff has ever committed any sexual misconduct. Instead, Plaintiff pled guilty to a crime—kidnapping of an unrelated minor under the age of 17—that automatically rendered him a sex offender under New York's Sex Offender Registration Act ("SORA"), N.Y. Correct. Law (CL) § 168-a. No evidence before the Court suggests that there was anything sexual about Plaintiff's crime, but rather that it was carried out to ransom the victim in exchange for money and drugs. At the state court hearing to determine his risk level classification as a sex offender, the judge found that there was "virtually no likelihood that [Plaintiff] will commit a sex crime ever." R & R at 10. Indeed, for the purposes of these two motions, Defendants have conceded that there was no sexual element to Plaintiff's offense.

Plaintiff brought this action under 42 U.S.C. §1983, alleging that this situation violates several of his constitutional rights. Plaintiff argues that being forced to register as a sex offender violates his substantive and procedural due process rights, while a number of his specific conditions of parole violate his rights under the Due Process Clause and the First Amendment. Plaintiff sought a preliminary injunction on some of his claims, while Defendants moved to dismiss his complaint in its entirety. These motions were referred to Magistrate Judge Moses for a Report and Recommendation. Judge Moses recommended that the Court grant a preliminary injunction on Plaintiff's claim that SORA, as applied to him, violates his right to substantive due process. Judge Moses also recommended granting Defendants' motion to dismiss in part and denying it in part.

For the reasons given below, the Court adopts Judge Moses' recommendation and grants Plaintiff a preliminary injunction on his substantive due process claim. The Court also grants Defendants' motion to dismiss as to several of Plaintiff's claims, including all of his claims for damages, while denying it as to his substantive due process claim, his challenges to his conditions of parole limiting where he can travel, his ability to seek alternate residences, his access to social media, what technology he can own and use, and his ability to interact with minor members of his family.

## I.    Background

The Court assumes the parties' familiarity with the facts of this case and will rely on Judge Moses's thorough discussion of the factual and procedural history of this case in her Report and Recommendation to the Court. *See* R & R at 8-18. In short, Plaintiff pleaded guilty in 2002 to two counts of kidnapping for ransom under New York law. R & R at 9. One of the victims was a boy under seventeen years old who was not Plaintiff's child. R & R at 9. Under SORA, a conviction for kidnapping a minor who is not the kidnapper's child is designated as a

"sex offense." N.Y. Correct. Law § 168-a(2)(a)(i). Plaintiff was classified a level one sex offender—the lowest possible level—at a SORA hearing following his term of incarceration. R & R at 10-11. However, there was no allegation of a sexual component to Plaintiff's crime and he has never been accused of committing any form of sexual misconduct. R & R at 9. Furthermore, at his SORA hearing, the presiding judge—Justice Obus, who had also presided over Plaintiff's sentencing in his underlying criminal case—found that there was virtually no likelihood that Plaintiff would ever commit a sex crime. R & R at 10. Plaintiff was released to parole on July 14, 2016, and numerous parole conditions were imposed, some mandatory and some discretionary. *See* R & R at 11-18 (outlining relevant parole conditions and modifications that have been made over time to those conditions).

On August 1, 2017, Plaintiff commenced this action by filing a pro se complaint. Dkt. No. 2. Following the appearance of pro bono counsel for Plaintiff, he filed a motion for a preliminary injunction on March 26, 2018 and a Second Amended Complaint on March 29, 2018. *See* Mot. for PI, Dkt. No. 43; SAC, Dkt. No. 54. In his Second Amended Complaint, Plaintiff challenges his designation as a sex offender on procedural due process and substantive due process grounds. SAC ¶¶ 139-51. He also challenges numerous specific conditions of his parole, arguing that they are void for vagueness, SAC ¶¶ 152-58, violate his First Amendment rights, SAC ¶¶ 159-63, violate his due process right by interfering with his family relations, SAC ¶¶ 164-69, and impose conditions that are arbitrary and capricious, SAC ¶¶ 170-75. The Court referred the motion for a preliminary injunction to Magistrate Judge Barbara Moses for a Report and Recommendation. Dkt. No. 51.

On April 17, 2018, the Defendants in this action filed a motion to dismiss the Second Amended Complaint. Def. Mot. to Dismiss, Dkt. No. 59. The Court referred consideration of

this motion to Judge Moses as well. Dkt. No. 62. On June 29, 2018, Judge Moses filed her

Report recommending resolution of Plaintiff's motion for a preliminary injunction and

Defendants' motion to dismiss. *See* R & R at 84-86. On July 20, 2018, both parties timely filed

their objections to the Report, Pl. R & R Obj., Dkt. No. 85; Def. R & R Obj., Dkt. No. 86, and

responded to one another's objections, Def. R & R Obj. Resp., Dkt. No. 93, Pl. R & R Obj.

Resp., Dkt. No. 94. After having reviewed Judge Moses's Report and the parties' objections, the

Court requested supplemental briefing on (1) whether preclusion doctrines barred some of

Plaintiff's claims and (2) whether Defendants had waived any preclusion arguments by failing to

raise them in the first instance before Judge Moses. Dkt. No. 98. The parties provided briefing,

Def. Supp. Br., Dkt. No. 101; Pl. Supp. Br., Dkt. No. 102, and the Court held oral argument on

October 3, 2018.

## II.    Legal Standards

### A.    Review of Objections to a Magistrate Judge's Report

A court may "designate a magistrate judge to conduct hearings, including evidentiary

hearings, and to submit to a judge of the court proposed findings of fact and recommendations

for the disposition" of certain motions, including motions for injunctive relief and motions to

dismiss. 28 U.S.C. § 636(b)(1)(B). A party to the action may file objections to the proposed

findings and recommendations. *Id.* § 636(b)(1)(C). Specific objections to a magistrate judge's

recommendation are reviewed *de novo. See, e.g., Amadasu v. Ngai*, No. 05-CV-2585(RRM),

2012 WL 3930386, at *3 (E.D.N.Y. Sept. 9, 2012). Where a party does not object, or simply

makes "conclusory or general objections," the district court will review for clear error. *Id.*

(citing cases). Under this standard, portions of the report to which no objections were made will

be accepted unless they are "facially erroneous." *Bryant v. New York State Dep't of Corr.*

*Servs.*, 146 F.Supp.2d 422, 424–25 (S.D.N.Y.2001); *see also DiPilato v. 7-Eleven, Inc.*, 662 F.

Supp. 2d 333, 339–40 (S.D.N.Y. 2009) ("A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, [ ] left with the definite and firm conviction that a mistake has been committed.'" (alteration in original) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir.2006)).

## B.     Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court may issue a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Ordinarily, a party seeking a preliminary injunction must make one of two showings: First, he may "show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest." *ACLU v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015). Alternatively, he "may show irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Id.* (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)). However, if "the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)). When the moving party seeks a mandatory injunction, "'[t]he moving party must make a clear or substantial showing of a

likelihood of success' on the merits, a standard especially appropriate when a preliminary injunction is sought against government." *D.D. ex rel. V.D. v. N.Y. Bd. Of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (alteration in original) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996)).

### C.    Motion to Dismiss

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b) (1), a district court . . . may refer to evidence outside the pleadings." *Id.* The party asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." *Id.* Jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

To survive a motion to dismiss for failure to state a claim under Rule 12(b) (6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if plaintiffs cannot "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed," *Twombly*, 550 U.S. at 570. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the

particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). When considering a motion to dismiss under Rule 12(b)(6), "a court must accept as true all of the [factual] allegations contained in [the] complaint." *Iqbal*, 556 U.S. at 678. However, the court should not accept legal conclusions as true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### D. Qualified Immunity

Several of Plaintiff's claims seek money damages, all of which Defendants contend should be dismissed on the grounds of qualified immunity. Def. Mot. to Dismiss, Dkt. No. 60, at 17-20. Because this issue arises at a number of points in the opinion, the Court provides a summary of the standard here.

Qualified immunity may be raised on a motion to dismiss under Rule 12(b)(6). However, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). In such cases, the facts supporting the immunity defense must be plain on the face of the complaint and "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

The defense of qualified immunity "protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity

analysis asks whether (1) a plaintiff has sufficiently pled the violation of a constitutional or statutory right, (2) whether that right was "clearly established," and (3) whether it was "objectively reasonable" for the official to believe their conduct was lawful. *Id.* at 154-55 (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133–34 (2d Cir.2010)). A right may be clearly established by either controlling authority or "a robust consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011) (internal quotation marks omitted) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). The applicable legal rule at issue should not be defined "at a high level of generality," but rather must be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017) (internal quotation marks omitted). It is not necessary that "the very action in question" have been previously held unlawful, as "an officer might lose qualified immunity even if there is no reported case 'directly on point.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017). On the other hand, "in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Id.* at 1867 (internal quotation marks omitted).

As to the reasonableness inquiry, this turns on whether the official could have reasonably believed that their actions were legal given the law at the time of the actions in question. *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018). Objective reasonableness is a mixed question of law and fact, which "requires examination of the information possessed by the officials at that time (without consideration of subjective intent)." *Id.* at 109-10. The operative question is "whether a reasonable official would reasonably believe that his conduct did not violate a clearly established right[.]" *Id.*

## III. Judge Moses's Report and Recommendation

As a threshold matter, Judge Moses's Report addresses Defendants' arguments that Plaintiff's due process challenges are barred by the *Rooker-Feldman* doctrine, recommending

that this case did not meet the narrow conditions for the doctrine to apply. Turning to the merits

of the motion to dismiss, the Report recommends granting the motion to dismiss with respect to

the following claims:

> The First Claim, in its entirety;
> The Third Claim, to the extent it alleges that Special Condition No. 24 (the "consenting adult" rule) is void for vagueness;
> The Third Claim, to the extent it seeks damages against any of the Parole Officer Defendants[1] for their past enforcement of any of the parole conditions challenged as void for vagueness;
> The Fourth Claim, to the extent it seeks damages against the Parole Officer Defendants other than PO Lewis-Robinson for their past enforcement of the cellphone, computer, and social media restrictions contained in Special Conditions No. 12, 22, 35, 39, and 48;
> The Fourth Claim, to the extent it seeks damages against PO Lewis-Robinson arising from her conduct prior to the decision in *Packingham*;
> The Fifth Claim, to the extent it seeks damages against the Parole Officer Defendants other than PO Lewis-Robinson for their past enforcement of Special Condition No. 15 (no contact with minors);
> The Sixth Claim, to the extent it seeks damages against any of the Parole Officer Defendants for their past conduct in denying plaintiffs' requests to move in with his fiancée and his uncle;
> The Sixth Claim, to the extent it seeks damages against the Parole Officer Defendants other than PO Lewis-Robinson in connection with the denial of Plaintiff's request to move in with Ms. Blake;
> The Sixth Claim, to the extent it seeks damages against any of the Parole Officer Defendants for their past enforcement of Special Condition No. 24;
> The Sixth Claim, to the extent it seeks either damages or injunctive relief in connection with Special Conditions No. 31 and 32 (motor vehicles), No. 14 (sexually explicit materials), No. 19 (pets) or No. 37 (Post Office boxes).

R & R at 84. The Report recommends denying Defendants' motion to dismiss as to the

remaining claims. The Report also recommends that the Court grant Plaintiff's request for a

preliminary injunction in part. R & R at 85. It concludes that Plaintiff's designation as a sex

offender violates his substantive due process rights and therefore recommends that the Court

enjoin Defendants from "enforcing, as against plaintiff, the registration and notification

provisions made applicable to designated sex offenders by SORA (CL §§ 168a-168w), or the

---

[1] The Court adopts the term "Parole Officer Defendants" employed by Judge Moses' Report. R & R at 8.

mandatory conditions prescribed by EL §§ 259-c(14) and (15) for parolees sentenced for an

offense for which registration as a sex offender is required," and directing Defendants "to rescind

the discretionary provisions of the Sex Offender Conditions (Yunus Decl. Ex. C, at ECF pages 4-

10) except to the extent they deem those conditions appropriate for plaintiff in light of his *non-*

*sexual* criminal history and characteristics." R & R at 85. Alternatively, Judge Moses

recommends that if the Court does not grant a preliminary injunction on Plaintiff's substantive

due process claim, it should grant a preliminary injunction as to several of his parole conditions.

R & R at 85-86.

**IV. Discussion**

The Court first addresses Defendants' claims that the *Rooker-Feldman* doctrine deprives

it of subject-matter jurisdiction. The Court will then examine the issue of preclusion, which was

only raised by Defendants after Judge Moses's Report, and the related question of waiver. The

Court will then turn to the merits of Defendants' motion to dismiss and Plaintiff's motion for a

preliminary injunction, addressing each in turn.

### A.   Plaintiff's First and Second Claims Are Not Barred by the *Rooker-Feldman* Doctrine

Defendants argue that Plaintiff's first and second claims, which challenge his designation

as a sex offender on procedural due process and substantive due process grounds, are barred by

the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine bars "cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This doctrine

deprives federal courts of subject-matter jurisdiction to hear cases "that are, in substance, appeals

from state court judgments[.]" *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir.

2005). For the *Rooker-Feldman* doctrine to apply, four conditions must be met:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" – i.e., *Rooker-Feldman* has no application to federal court suits proceeding in parallel with ongoing state-court litigation.

*Id.* at 85 (alterations in original) (footnote omitted) (quoting *Exxon-Mobil*, 544 U.S. at 284).

The Report recommends that the *Rooker-Feldman* doctrine does not deprive the Court of

subject-matter jurisdiction here, both because Plaintiff did not lose in state court and because the

injuries he complains of resulted from the SORA statute rather than a state court judgment. R &

R at 22-25. Defendants raise several objections, which the Court reviews *de novo*.

First, Defendants object that Plaintiff's SORA hearing *did* address whether it was

constitutional to require Plaintiff to register as a sex offender. Def. R & R Obj. at 6-7. Yet it is

clear from the surrounding context that the section of the hearing transcript they cite to only

addresses what level of classification should apply to Plaintiff and does not challenge that SORA

as applied to him is unconstitutional. SORA Tr. 5:12-22. The Court agrees with the Report that

SORA's constitutionality was neither challenged nor decided at the hearing.

Defendants next object that *Rooker-Feldman* bars any claim asserting injury based on a

state judgment even if the injury was not actually contested in state-court proceedings. Def. R &

R Obj. at 7-8. Yet the relevant inquiry for the purpose of *Rooker-Feldman* is whether the

judicial decision at Plaintiff's SORA hearing itself *caused* Plaintiff's injury; if an injury was

caused prior to the state judicial action, *Rooker-Feldman* is inapplicable. *See Sung Cho v. City of

New York*, 910 F.3d 639, 649 (2d Cir. 2018). Indeed, it is settled law that *Rooker-Feldman* does

not apply if the judicial determination in question "simply ratified, acquiesced in, or left

11

unpunished" Plaintiff's injury. *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) (quoting *Hoblock*, 422 F.3d at 88). Here, Plaintiff's injury did not result from his SORA hearing, but rather from the statute itself. *See Spiteri v. Russo*, No. 12-cv-2780 (MKB) (RLM), 2013 WL 4806960, at *13 (E.D.N.Y. Sept. 7, 2013) (holding *Rooker-Feldman* inapplicable to a claim challenging the plaintiff's designation as a sex offender because "[t]he issue before [the presiding judge] was Plaintiff's risk level classification, not whether he was required to register as a sex offender"). Defendants' argument that Plaintiff's injuries were caused by the hearing because SORA does not make a convicted individual's sex-offender status automatic is belied by the plain text of the statute. *See* N.Y. Correct. Law § 168-a(1) (defining "sex offender" as "any person who is convicted of any of the offenses" listed in the statute), *id.* § 168-d(1)(a) (requiring that "upon conviction of any of the offenses set forth" in SORA, "the court shall certify that the person is a sex offender" and failure to certify "shall not relieve a sex offender of the obligations imposed by this article"); *id.* § 168-*l*(8) ("A failure by a state or local agency or the board to act or by a court to render a determination within the time period specified in this article shall not affect the obligation of the sex offender to register . . .."); *id.* § 168-n(2) (providing that the SORA hearing will determine the risk level of the offender); *see also* R & R at 4-5 & 5 n.5, 23 (discussing SORA's statutory requirements in greater depth). Defendants accuse Judge Moses of "misread[ing]" New York Corrections Law section 168-*l*(8). Def. R & R Obj. at 8. In their view, that section only "provides . . . that a failure of the SORA hearing court to render a decision 'within the time periods specified in this article' does not preclude a later determination by the court that registration is required." Def. R & R Obj. at 8. Defendants have apparently overlooked that section 168-*l*(8) includes both the provision identified by Judge Moses and quoted by the Court above and a *separate* clause allowing a court to later impose a risk level to

12

an offender outside of the prescribed time period.[2] The Court therefore concludes that Plaintiff's sex offender status was automatic under SORA as a function of his conviction.

Seeking to undermine this conclusion, Defendants also point to the fact that New York courts have been willing to entertain constitutional challenges to SORA that were initially raised in SORA hearings. Def. R & R Obj. at 8 (citing *People v. Knox*, 12 N.Y.3d 60, 65 (N.Y. 2009)). But this does not alter the *Rooker-Feldman* analysis. Even if a state court may have been willing to consider a constitutional challenge to Plaintiff's designation as a sex offender on appeal from his SORA hearing, it does not change the fact that Plaintiff's sex offender status was already imposed by statute. At most then, the judicial determination in his SORA hearing "simply ratified," *McKithen*, 481 F.3d at 97-98, what SORA dictated—that Plaintiff be designated a sex offender because of his conviction for kidnapping a minor not related to him. As a result, Plaintiff challenges New York's SORA legislation rather than an adjudication, and in such circumstances, *Rooker-Feldman* has no application. *Hachamovitch v. DeBuono*, 159 F.3d 687, 694 (2d Cir. 1998).

Finally, Defendants argue that if Plaintiff is not challenging injury caused by his SORA hearing, he must be challenging his underlying conviction, which would also be barred by the *Rooker-Feldman* doctrine. Def. R & R Obj. at 9. However, the Court agrees with the Report that Plaintiff is neither challenging his underlying conviction nor asking the Court to relieve him of it—he only seeks review of a statutorily-imposed collateral consequence that even Defendants do not contend could have been raised on direct appeal from that conviction. R & R at 25 n.19.

---

[2] Section 168-*l*(8) states in relevant part: "A failure by a state or local agency or the board to act or by a court to render a determination within the time period specified in this article shall not affect the obligation of the sex offender to register or verify under this article *nor shall such failure prevent a court from making a determination regarding the sex offender's level* of notification and whether such offender is required by law to be registered for a period of twenty years or for life." N.Y. Correct. Law § 168-*l*(8) (emphasis added).

For the forgoing reasons, the Defendants' objections to the Report are denied as to subject-matter jurisdiction, and the Report is ADOPTED in full on this issue.

**B.** **Defendants Waived Their *Res Judicata* and Collateral Estoppel Arguments for the Purposes of These Motions**

Moving from *Rooker-Feldman* to preclusion, Defendants argue that Plaintiff's first and second claims are precluded by the prior decision in the SORA hearing under theories of both collateral estoppel and *res judicata*. Defendants did not raise either argument in their briefings before Judge Moses. Judge Moses, in her Report, addressed the distinction between *Rooker-Feldman* and preclusion doctrine in a footnote, without making a recommendation either way as to the applicability of preclusion doctrine to Plaintiff's claims. R & R at 24 n. 18. Defendants, in their objections to the Report, mentioned *res judicata* only in passing, stating that Plaintiff's claims "should still be dismissed on the alternative grounds of res judicata suggested in the R & R." Def. R & R Obj. at 9. Subsequently, the Court requested supplemental briefing on preclusion and whether Defendants had waived these arguments by failing to raise them before Judge Moses.

Defendants do not dispute that they failed to raise their collateral estoppel or *res judicata* arguments before Judge Moses. Instead, they argue that despite this failure—and their conclusory treatment of preclusion in their objections to Judge Moses' Report—these arguments have not been waived. Plaintiff, on the other hand, argues that Defendants waived these arguments by not raising them earlier and failing to object to Judge Moses' mention of preclusion with sufficient particularity. For the purposes of the instant motions alone, the Court agrees with Plaintiff. However, this decision does not bar Defendants from raising preclusion in an answer.

14

Courts in this circuit have taken different positions as to whether failure to raise an argument before a magistrate judge waives those arguments. The Second Circuit has yet to decide this question. *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 433 (S.D.N.Y. 2015) ("The question 'whether a party may raise a new legal argument for the first time in objections to a magistrate judge's Report has not yet been decided in this Circuit.'" (internal brackets and ellipses omitted) (quoting *Amadasu*, 2012 WL 3930386, at *5).

For reasons it continues to find persuasive, this Court has previously found that, as a general matter, arguments made for the first time in objection are waived. *See Tarafa v. Artus*, No. 10 CIV. 3870 (AJN), 2013 WL 3789089, at *2 (S.D.N.Y. July 18, 2013) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all." (citing cases)); *Watson v. Geithner*, No. 11 CIV. 9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013) (noting that "a party waives any arguments not presented to the magistrate judge"). Other courts in this circuit have taken a similar approach, noting that "[i]f the Court were to consider formally these untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments." *Abu-Nassar v. Elders Futures, Inc.*, No. 88 CIV. 7906 (PKL), 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994); *see also Smith v. Hulihan*, No. 11 CV 2948 (HB), 2012 WL 4928904, at *1 (S.D.N.Y. Oct. 17, 2012); *Rosello v. Barnhart*, No. 02 CIV. 4629 (RMB), 2004 WL 2366177, at *3 (S.D.N.Y. Oct. 20, 2004); *Lewyckyj v. Colvin*, No. 3:13-CV-126 (MAD), 2014 WL 3534551, at *2 (N.D.N.Y. July 17, 2014). This is consistent with the history and purposes of the Magistrate Act. *See Anna Ready Mix, Inc. v. N.E. Pierson Const. Co.*, 747 F. Supp. 1299, 1303 (S.D. Ill. 1990) (reviewing "the legislative history of the 1976 amendments to the United States

Magistrate Act, applicable precedent, and the views of commentators" and concluding that "arguments raised for the first time in objections to a magistrate's report ought to be disregarded absent compelling reasons"). This position is also consistent with the majority of circuit courts to have examined this issue—though some have indicated that district courts have discretion in the matter.[3] In a case like this, it would undermine the efficiencies offered by the Magistrate Act to permit parties to raise arguments after a full briefing on both a motion for a preliminary injunction and a motion to dismiss, after which Judge Moses issued a detailed and thorough 86-page Report.

However, the Court need not rely on that reasoning to reach its conclusion here today, since an application of the balancing test adopted by other courts in this circuit would result in the same outcome. *See Wells Fargo Bank N.A. v. Sinnot*, 2010 WL 297830, at *3-4 (D. Vt. Jan.19, 2010); *Levy*, 103 F. Supp. 3d at 433-34. Defendants have not given any reason for their failure to raise these issues before Judge Moses and no intervening change in law has occurred. Unanswered questions remain that received little to no briefing. *See Wells Fargo*, 2010 WL 297830, at *4. Allowing Defendants to raise this new defense after several rounds of briefing in which they neglected to raise it except for a passing mention would, for the reasons given above, be an inefficient deviation from the purpose of the Magistrate Act. And given the ongoing harm to Plaintiff, fairness favors providing a prompt determination of his motion for a preliminary

---

[3]*See, e.g., Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *Cupit v. Whitley*, 28 F.3d 532, 535 & n. 5 (5th Cir.1994) (holding that a party had waived arguments that were only raised after the magistrate judge had issued their Report); *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate."); *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act. We do not believe that the Magistrates Act was intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court."), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir.1992) (en banc).

injunction without allowing Defendants to interpose new arguments that would result in further delay. Finally, no manifest injustice would result from deeming Defendants' arguments waived for the purposes of these motions. Considering and balancing these factors, the Court concludes that Defendants have waived preclusion. *See Amadasu*, 2012 WL 3930386, at *5-7. However, the Court only finds that Defendants have waived these arguments for the purposes of these motions and are free to raise them in an answer as affirmative defenses. *See Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971) (*res judicata* and collateral estoppel are affirmative defenses) (citing Fed. Rules Civ. Pro. 8(c)).

### C. Defendants' Motion to Dismiss is Granted in Part and Denied in Part

Having addressed these threshold matters, the Court turns first to Defendants' motion to dismiss.

#### 1. Defendants' Motion to Dismiss is Granted as to Plaintiff's Procedural Due Process Claim (Claim 1)

Plaintiff alleges that he was deprived of constitutionally-required procedural due process because he had no opportunity to challenge his designation as a "sex offender" in an adversarial proceeding. SAC ¶¶ 139-45. Judge Moses agreed with Plaintiff that he had a cognizable liberty interest in not being labelled as a sex offender. R & R at 29-35. However, Judge Moses found that under governing Supreme Court and Second Circuit precedent, a person who has been convicted of an offense requiring registration under SORA is not entitled to any additional hearing, either *ex ante* or *ex post*, to adjudicate his obligation to register. R & R at 35-38 (citing *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003) and *Doe v. Cuomo*, 755 F.3d 105 (2d Cir. 2014)). Plaintiff objects only to Judge Moses's recommendation on this claim as an "alternative basis for relief" and notes that if the Court agrees with the Report that SORA as applied to Plaintiff is a substantive due process violation, "no additional process or injunctive

relief is necessary." Pl. R & R Op. at 3. Nonetheless, as Plaintiff does state various specific legal objections to Judge Moses's reasoning, the Court will review it *de novo*. Defendants, for their part, challenge Judge Moses' determination that Plaintiff had a procedural liberty interest in not being labeled a sex offender. Def. R & R Obj. at 9-10. However, since that issue is unnecessary to the Court's resolution of this claim, the Court neither adopts nor rejects Judge Moses' Report on that particular question.

The Court agrees with Judge Moses' reading of the governing precedent. Under *Connecticut v. Doe*, "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme*." 538 U.S. at 8 (emphasis added); *see also Doe v. Cuomo*, 755 F.3d at 112. Plaintiff sought to distinguish these two cases on the grounds that in both the plaintiffs had been convicted of *sexual* misconduct. Pl. R & R Obj. at 7-8. However, as Judge Moses determined in her Report, this argument fails to go to the *procedural* sufficiency of process afforded, as that fact is not relevant under SORA. Instead, it implicates a *substantive* challenge to Plaintiff's designation under the law as a sex offender. R & R at 37-38. As a result, Plaintiff's claim "must ultimately be analyzed in terms of substantive, not procedural, due process." *Connecticut v. Doe*, 538 U.S. at 8 (internal quotation marks omitted). The Court therefore ADOPTS Judge Moses' Report as to the second prong of the procedural Due Process analysis and GRANTS Defendants' motion to dismiss this claim. As it is unnecessary for resolution, the Court makes no finding with respect to the Report's analysis of Plaintiff's procedural liberty interest.

### 2. Defendants' Motion to Dismiss is Denied as to Plaintiff's Substantive Due Process Claim (Claim 2)

Plaintiff's second claim asserts that requiring him to register as a sex offender is a violation of his right to substantive due process. "To establish a substantive due process

18

violation, a plaintiff must show both (1) that she has an interest protected by the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not rationally related to a legitimate government interest." *Winston v. City of Syracuse*, 887 F.3d 553, 566 (2d Cir. 2018). Rational basis review "is highly deferential," but "it is not meant to be toothless." *Id.* at 560 (quoting *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013)). Even under the rational basis test, a state may not "rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).[4] When considering whether a state had a rational basis to impose a statute, the reviewing court may properly consider the "countervailing costs" to the targets of the challenged statute. *Plyler v. Doe*, 457 U.S. 202, 223-24 (1982).

In her Report, Judge Moses concludes that designating Plaintiff as a sex offender bears no rational relationship to the purposes of SORA. Reviewing the enabling legislation, Judge Moses identifies the purpose of SORA as "to combat 'the danger of recidivism posed by *sex offenders*, especially those *sexually violent* offenders who commit predatory acts characterized by repetitive and compulsive behavior,' and to assist the criminal justice system 'to identify, investigate, apprehend and prosecute *sex offenders*.'" R & R at 40 (emphasis added in Report) (quoting 1995 N.Y. Sess. Laws ch. 192, § 1). As a result, Judge Moses concludes that applying the label of sex offender to the narrow class of individuals like Plaintiff who "has received a

---

[4] While *Cleburne* and *Plyler* involved Equal Protection Clause challenges, the Second Circuit has analogized between rational basis review in the equal protection and substantive due process contexts. *See Winston*, 887 F.3d at 562-67 (relying on its determination that a law lacked a rational basis in its analysis of an equal protection claim to find that the law also failed substantive due process review); *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (analyzing equal protection and substantive due process claims jointly under rational basis review).

judicial finding that he never has and near certainly never will commit a sexual offense" bears no rational relationship to that purpose. R & R at 42-46.

Defendants object to the Report on several grounds. They argue that designating Plaintiff as a sex offender could be rationally based on: (i) preventing dangerous sex offenders from slipping through the cracks, (ii) avoiding administrative costs, and (iii) protecting minors from harm more generally, not just sexual abuse. None of these arguments are persuasive.

As an initial matter, Defendants do not argue in their objections that Plaintiff has no *substantive* liberty interest. Def. R & R Obj. at 10-12. To the contrary, Defendants emphasize that Judge Moses erred by finding a procedural liberty interest, rather than a substantive one. *Id.* at 10. The Court finds no clear error in the conclusion that Plaintiff has a substantive liberty interest in not being labeled a sex offender when he has committed no sexual offense. *See Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010) ("[W]rongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest.").

Defendants first object that the Legislature could have rationally concluded that the sex offender label should be applied in a blanket manner to various crimes involving minors, even when a sexual element is not evident, to avoid any dangerous sex offenders "slipping through the cracks." Def. R & R Obj. at 11-12; Def. Mot. to Dismiss at 9-10; *see also People v. Knox*, 12 N.Y.3d 60, 69 (2009) (finding that, along with administrative burden, "the risk that some dangerous sex offenders would escape registration" provided a rational basis for "a hard and fast rule, with no exceptions"). It is true that there may be cases, such as when the victim cannot or will not testify, when it will be administratively difficult in practice to prove that an offense was sexual in nature. As a result, it would not necessarily be irrational for the Legislature to

conclude that for certain high-risk crimes toward minors, individuals should be designated as sex offenders even when it is ambiguous whether their specific offense was sexual.

Yet even assuming it would be rational for the Legislature to designate individuals as sex offenders when there is uncertainty about whether their offense was sexual in nature, this does not satisfactorily answer Plaintiff's as-applied challenge. Plaintiff does not challenge that SORA is facially unconstitutional, nor even that it is unconstitutional as applied to all individuals who kidnapped unrelated minors. R & R at 42. Instead, the exceptionally narrow question before the Court for the purposes of these motions is whether there is a rational basis for designating someone as a sex offender solely in virtue of an offense that was undisputedly non-sexual. A case involving any suggestion or allegation of sexual misconduct—or even just ambiguity— would present a different question that need not be resolved here.

At this stage in the litigation, the lack of a sexual element to Plaintiff's offense can safely be termed conclusive. Based partly on the absence of any allegation of sexual abuse in this case, Justice Obus concluded at Plaintiff's SORA hearing that "I am satisfied that there is virtually no likelihood that [Plaintiff] will commit a sex crime ever." R & R at 10. Justice Obus' conclusion is particularly persuasive, as he was "very familiar" with Plaintiff, having conducted the trial of Plaintiff's co-defendant and accepted Plaintiff's plea in the underlying criminal case. SORA Tr., Dkt. No. 45-1, 20:8-12. Defendants do not contest Justice Obus' conclusion. Even more importantly, Defendants conceded for the purposes of these combined motions that there was no sexual component to Plaintiff's offenses. 10/03/18 Hearing Tr. 25:22-25, 26:1-18 (Plaintiff's counsel presenting as undisputed that Plaintiff's offenses had nothing to do with sex); 32:5-11, 14-17 (Defendants' counsel conceding this for the purposes of this motion). It is on the basis of this factual record and these representations that Plaintiff's claim must be evaluated. The Court

is careful to note, however, that Defendants only conceded the absence of a sexual element for the purposes of these motions. Further argument, allegations, or evidence could present a meaningfully different issue. As a result, the risk that Plaintiff is a dangerous sex offender who might slip through the cracks is not just low, it is, at this stage, non-existent.

The slipping-through-the-cracks argument is therefore insufficient to provide a rational basis for imposing extensive civil and stigmatizing burdens on Plaintiff. R & R at 42-45. To reach this conclusion, the Court need not declare it irrational for the Legislature to weigh the harms and conclude that for individuals who committed high-risk crimes that *may* have had a sexual component, the public good is better served by a blanket rule. But extending the sex offender designation to individuals for whom the absence of a sexual element is undisputed and who have been adjudicated by a state court to pose essentially no sexual risk cannot be justified as a means of protecting against *sex offenders* falling through the cracks. *See City of Cleburne*, 473 U.S. at 446 (even under rational basis review, a court will strike down "a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."). Indeed, as various state courts have concluded when the lack of a sexual element to the underlying offense was stipulated, "[a]lthough the Legislature's concern for protecting our children from sexual predators may be reasonable . . . the application of this statute to a defendant *whom the State concedes* did not commit a sexual offense is not." *State v. Robinson*, 873 So. 2d 1205, 1215 (Fla. 2004) (emphasis added); *see also State v. Reine*, 2003-Ohio-50, ¶ 28, *cause dismissed*, 795 N.E.2d 686 (designating an individual as a sex offender "in a case in which *it has been stipulated* that his offenses were committed without any sexual motivation or purpose" lacks rational basis (emphasis added)). There is no more reason to classify Plaintiff as a *sex* offender at this stage than if he had been convicted of shoplifting, drug dealing, or any

other crime that has no sexual element at all—indeed the label is less apt for Plaintiff, given Defendants' concession. Therefore, casting a wide net to include all grey area cases bears no rational relationship to this case, which, at this stage, presents no uncertainty at all.

Defendants further object that the Legislature could have rationally concluded that it needed to include *all* individuals who had committed certain high-risk crimes, to avoid the administrative costs of determining in each case whether someone's crime was sexual. *See Knox*, 12 N.Y.3d at 69. Even assuming this would be rational, in cases in which the absence of a sexual element is undisputed, no further administrative effort is required. This Court's opinion today reaches no further than the situation at hand, in which the non-sexual nature of Plaintiff's offense has been conceded. *See Robinson*, 873 So. 2d at 1215; *Reine*, 2003-Ohio-50, ¶ 28. An ambiguous case that would require the expenditure of administrative resources to decide could well present a distinct question. For example, if an individual contended that an evidentiary hearing was required to show that there was no sexual element to their offense, the issue of administrative resources might require a different analysis.

Defendants next argue that the Legislature "could have rationally determined that individuals convicted of kidnapping a minor constitute a potential risk to other minors, whether that risk is characterized as sexual or not, and that this risk justifies all the restrictions set forth at length in the R & R." Def. R & R Obj. at 12. However, this argument ignores that both the stated purpose of SORA and the way it is designed are focused on preventing *sexual offenses* rather than all crimes that are dangerous to minors. *See* R & R at 40 (quoting from SORA's legislative history as to SORA's purpose). The list of offenses that require designation as a sex offender do not include all crimes that involve harm to a minor, even serious, violent crimes. *See* CL § 168-a(2)(a)(i); *People v. Bell*, 3 Misc. 3d 773, 788 (Sup. Ct. 2003) (noting that "the

conviction of Bruno Hauptman for the Lindbergh infant's murder would *not* have subjected him to classification and registration under SORA" (emphasis in original)). And even beyond the Legislature's own statements about its purpose and SORA's design, the Court finds that Defendants' proffered explanation is inconsistent with labeling Plaintiff (and requiring him to register) as specifically a *sex* offender. There is no rational reason for applying this intensely stigmatizing designation to an individual in Plaintiff's position. Nor do Defendants give any explanation for why the sexual element of the designation is related to protecting against non-sexual harms—indeed, nothing about the Court's decision would prevent Defendants from imposing a designation on Plaintiff that was rationally related to any non-sexual risk that he might pose to children. What it does prohibit is applying a specifically sexual stigmatizing designation and restrictions designed to prevent sexual abuse to an individual who has not committed any and who poses virtually no risk of doing so. Such an action cannot be viewed as rationally related to SORA's purpose.

Finally, the heavy costs imposed by Plaintiff's designation as a sex offender further support the conclusion that there is no rational basis for so classifying him. In conducting a rational basis analysis, a court may appropriately take into account the costs imposed by the law. *Plyler*, 457 U.S. at 223-24. SORA imposes significant civil burdens, as Plaintiff's case well illustrates. His life and liberty have been drastically limited in many ways, from where he can live to what speech he can engage in. SORA has also branded Plaintiff with one of the most stigmatizing labels that exists in our society, in this case doing so without a factual basis. *See, e.g., ACLU of NM v. City of Albuquerque*, 2006-NMCA-078, ¶ 25, 139 N.M. 761, 772 ("[T]he hardship imposed on an offender convicted of kidnaping or false imprisonment to be labeled a sex offender, absent any evidence of a sexual motivation for the crime, is great."); *Vega*, 596

F.3d at 81-82. And labeling individuals as sex offenders when their crimes are not sexual actually risks undermining the usefulness of the registry created to effectuate SORA's purpose. *See People v. Diaz*, 150 A.D.3d 60, 66 (N.Y. App. Div.), *aff'd on other grounds*, No. 134, 2018 WL 6492716 (N.Y. Dec. 11, 2018). These significant harms to Plaintiff and the risk that labeling him as a sex offender actually undercuts public safety further support the conclusion that SORA as applied to Plaintiff lacks rational basis.

For all of the above stated reasons, the Court ADOPTS Judge Moses's recommendation—albeit on the additional grounds given above, which include Defendants' concession at oral argument—and Defendants' motion to dismiss this claim is DENIED.

### 3. Defendants' Motion to Dismiss is Granted in Part and Denied in Part as to Plaintiff's Vagueness Claims (Claim 3)

Plaintiff's third claim alleges that three of his parole conditions are unconstitutionally vague: Special Condition No. 4, "which excludes plaintiff from 'school grounds' – defined to include public areas within 1,000 feet of the school"; Special Condition No. 17, "which prohibits him from being 'within 300 yards of places where children congregate'"; and Special Condition No. 24, "which directs him to notify his parole officer and make certain disclosures when he 'establish[es] a relationship with a consenting adult.'" R & R at 46 (alteration in Report). Judge Moses recommends that the Court deny the motion to dismiss as to Conditions Nos. 4 and 7 and grant it as to Condition No. 24. Defendants object to the former, while Plaintiff does not object to the latter.

Under the Due Process Clause, "[a] statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing

*Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)). And parole conditions are subject to review as

void for vagueness. *LoFranco v. U.S. Parole Comm'n*, 986 F. Supp. 796, 808 (S.D.N.Y. 1997),

*aff'd*, 175 F.3d 1008 (2d Cir. 1999). Applying this standard, the Court will address each of the

challenged conditions in turn.

> **a. Defendants' Motion to Dismiss Plaintiff's Claim that Special Condition No. 4 is Unconstitutionally Vague is Denied in Part and Granted in Part**

Plaintiff seeks injunctive relief, but not damages, on his vagueness challenge to Special

Parole Condition No. 4. This condition, which is a statutorily mandated parole condition for

parolees convicted of offenses that include Plaintiff's, R & R at 6, excludes Plaintiff from

"school grounds," defined to include public areas within 1,000 feet of a school, while minors are

present. EL § 259-c(14); PL § 220.00(14). Judge Moses recommended that: (i) Special

Condition No. 4 is not unconstitutionally vague as applied to where Plaintiff may reside, since

preclearance of residences by a parole office means there is no risk of an inadvertent violation;

and (ii) this condition is unconstitutionally vague as to where Plaintiff is allowed to travel, both

because it fails to provide sufficient notice *and* because it authorizes or encourages arbitrary

enforcement. R & R at 49. Plaintiff did not object to the first part of Judge Moses'

recommendation with sufficient specificity, Pl. R & R Obj. Resp. at 16, so it will be reviewed for

clear error. *Kirk v. Burge*, 646 F. Supp. 2d 534, 537 (S.D.N.Y. 2009). Defendants raise two

principal objections to the second part of Judge Moses' recommendation: first, because the

condition has a knowledge requirement, there is no risk of an inadvertent violation; and second,

Judge Moses improperly considered hypotheticals in an as-applied vagueness challenge, which

must be confined to a plaintiff's actual conduct. These will be reviewed *de novo*.

The Court agrees with Judge Moses that because Special Condition No. 4 requires that a

proposed residence be precleared by Plaintiff's parole officer, it is not void for vagueness. This

is particularly true since both the applicable statute and New York state court decisions interpreting it provide precise definitions to determine how the 1,000 feet in question are calculated. R & R at 48. Finding no error, clear or otherwise, in this portion of Judge Moses' Report, the Court adopts it in full.

Defendants object that Condition No. 4 cannot be unconstitutionally vague, because its requirement that violations be knowing precludes inadvertent violations. Yet this does not address the separate conclusion that Condition No. 4, as applied to Plaintiff, is void on the separate and independent grounds that "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. Indeed, the Supreme Court has indicated that "the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). In the absence of such guidelines, a "criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id.* (alteration in original) (quoting *Goguen*, 415 U.S. at 575). The 1,000-foot rule encompasses vast swaths of New York City. R & R at 50. It would also cover innocent conduct, since, as Judge Moses noted, this prohibition includes the courthouse where Plaintiff has been required to appear. R & R at 50. The knowledge requirement does not provide sufficient standards to govern the conduct that may be penalized as it is reasonable to presume that "the fact that there are schools and childcare facilities throughout New York City is something everyone . . . knows." *State v. Floyd Y.*, 56 Misc. 3d 271, 273 (N.Y. Sup. Ct. N.Y. Co. 2017). Therefore, unless Plaintiff remains in his shelter for much if not all of the day, he will necessarily knowingly violate the law on countless occasions. While in practice, this condition

may only be enforced as to residency, Def. R & R Obj. at 14, these informal enforcement practices cannot rescue the condition from vagueness where they "would not provide a defense" to Plaintiff if he were to be arrested. *See City of Chicago*, 527 U.S. at 63-64. Nor is a saving construction available, given the explicit language of the statute. R & R at 51-52 (citing EL § 259-c(14)). This mandatory condition therefore places almost limitless discretion in the hands of Plaintiff's parole officers to arrest him for traveling almost anywhere in the city that he lives, raising precisely the concerns that void-for-vagueness doctrine seeks to prevent. *See Kolender*, 461 U.S. at 357-58.

As the Court finds that Plaintiff has sufficiently stated a claim that the condition is void for authorizing arbitrary enforcement, it need not reach whether it is void for lack of notice.

Defendants' other objection, that Plaintiff's claim is not a proper as-applied challenge, fares no better. Defendants contend that Judge Moses erred by permitting Plaintiff to challenge Condition No. 4 on vagueness grounds based on hypothetical future enforcement when, with the exception of residency requirements, it has not been enforced again him. Defendants cite *Copeland v. Vance* for the proposition that Plaintiff may not "seek to show that the ... law is vague by positing hypothetical unfair enforcement actions in which the statute could not be constitutionally applied." 893 F.3d 101, 113 (2d Cir. 2018). Yet *Copeland* made clear that prospective, as-applied challenges are possible. *Id.* at 111-13 (noting also that "a party asserting a pre-enforcement challenge obviously cannot be required to show that a prior action was invalid"). What *Copeland* required is that: "A party asserting a prospective as-applied challenge must tailor the proof to the specific conduct that she would pursue but for fear of future enforcement" and show that enforcement as to this conduct would raise vagueness concerns. *Id.* at 112-13. In *Copeland*, Plaintiffs did not offer evidence of specific conduct they wished to

engage in that would trigger vagueness concerns, instead positing hypothetical scenarios in an attempt to have the entire statute struck down. *Id.* at 113. Here, however, Plaintiff *himself* has sufficiently alleged that he would engage in specific conduct that would violate the 1,000-feet provision and in so doing raise vagueness concerns about arbitrary enforcement. SAC ¶ 61. Therefore, Plaintiff's challenge is properly framed as an as-applied challenge.

In light of the analysis above, the Court ADOPTS Judge Moses' reasoning with respect to arbitrary enforcement, but not to lack of notice. Defendants' motion to dismiss this claim is hereby DENIED.

### b. Defendants' Motion to Dismiss Plaintiff's Claim that Special Condition No. 17 is Unconstitutionally Vague is Denied in Part and Granted in Part

Plaintiff seeks injunctive relief and damages on his vagueness challenge to Special Condition No. 17. This condition expressly prohibits Plaintiff from "enter[ing]" or "be[ing]" within 300 yards of "places where children congregate" without prior approval from his parole officer. R & R at 52-53 (alterations in Report). Judge Moses recommended that: (i) this condition is void for vagueness for both lack of notice and for allowing arbitrary enforcement; and (ii) because Plaintiff has not alleged this was enforced against him in the past, his claim for damages should be dismissed. R &R at 52-55. Defendants object on similar grounds as they did for the 1,000-foot rule: first, that there is no possibility of inadvertent violations because a knowledge requirement should be read into the condition and because the condition provides a list of examples illustrating the kinds of areas in question; and second, that Judge Moses improperly relied on hypotheticals in evaluating an as-applied challenge.

As with Condition No. 4, however, even aside from the question of whether a person of ordinary intelligence would have a reasonable opportunity to determine what conduct Condition No. 17 prohibits, the condition would still be unconstitutionally vague because it "authorizes or

29

even encourages discriminatory enforcement." *Hill*, 530 U.S. at 732. If anything, this provision applies to a broader swath of territory than Special Condition No. 4, as it not only includes schools but also a number of other places as well, such as parks, bike trails, and pool halls. SAC Ex. C ¶17. Nor does it actually require the presence of a minor. Judge Moses noted that, once again, the courthouse was within 300 yards of Columbus Park, R & R at 54 n.40, while Plaintiff noted that the Willow Avenue shelter, where he is currently housed, is directly across the street from a family shelter at which young children congregate. *See* SAC ¶ 80. Once again, this exceptionally broad scope places essentially total enforcement discretion in the hands of Plaintiff's parole officers, allowing them to arrest Plaintiff for a host of legitimate activity, such as stepping out of the shelter where his parole restrictions have effectively required him to remain. *See United States v. Malenya*, 736 F.3d 554, 561 (D.C. Cir. 2013) (noting how a similar restriction gave "the probation office the power to prevent [the registered sex offender] from living almost anywhere and going to almost any place"). As applied to Plaintiff, this provision is therefore unconstitutionally vague.

As above, since the Court finds that Plaintiff has sufficiently stated a claim that the condition is void for authorizing arbitrary enforcement, it need not reach whether it is void for lack of notice.

Turning to Plaintiff's claim for damages, the Court finds no error, clear or otherwise, in Judge Moses' recommendation that this claim should be dismissed because Plaintiff failed to allege that this condition had been enforced against him in the past.

The Court ADOPTS the Report as to the finding that this condition authorizes arbitrary enforcement and as to damages, but not as to lack of notice. Defendants' motion to dismiss this claim is DENIED as to injunctive relief and GRANTED as to money damages.

### c. Defendants' Motion to Dismiss Plaintiff's Claim that Special Condition No. 24 is Unconstitutionally Vague is Granted

Plaintiff seeks both injunctive relief and damages on his claim that Special Condition No. 24 is void for vagueness. Condition No. 24 requires Plaintiff to notify his parole officer "when I establish a relationship with a consenting adult and then shall inform the party of my prior criminal history concerning sexual abuse, in the presence of my parole officer." SAC Ex. C ¶ 24 (emphasis in original). Judge Moses found that this was not void for vagueness and recommended dismissal. R &R at 55-56. Plaintiff did not object to this ruling and therefore the Court reviews it for clear error.

Judge Moses found that a reasonable individual in Plaintiff's position would understand that this condition referred not to all relationships, but only consensual sexual relationships. R & R at 55-56. Judge Moses also noted that since Plaintiff had already disclosed his relationship to his fiancée, he "clearly understood the type of relationship the special condition targeted." R & R at 56. The Court does not find the Report to be clearly erroneous. The Court ADOPTS the Report in full on this claim, and GRANTS Defendants' motion to dismiss.

### 4. Defendants' Motion to Dismiss is Denied as to Plaintiff's Claim that Special Parole Condition No. 48 and Other Technology Restrictions Violate His First Amendment Rights (Claim 4)

Plaintiff's parole conditions place a variety of de jure and de facto limitations on his ability to access the internet, particularly social media. Under Special Condition No. 12, Plaintiff cannot "engage or participate in any online computer service that involves the exchange of electronic messages"; No. 35 states that he may not "own or possess a beeper, scanner or cell phone without permission of [his] parole officer" and that if he is given permission to possess a cell phone, it cannot be video or photo-capable; No. 39 prevents him from possessing a computer or computer-related materials without approval by his parole officer; and No. 48 which, *inter*

31

*alia*, prohibits him categorically from accessing "a commercial social networking website." SAC, Ex. C at 5-10. In addition to the specific restrictions on internet use itself, Plaintiff alleges that the limitations on his access to technology have the de facto effect of barring him from accessing the internet for nearly all purposes. SAC ¶ 81-92, 162. Plaintiff argues that these conditions violate his First Amendment rights and seeks injunctive relief and damages.

Judge Moses recommended that Condition No. 48, operating in conjunction with the limitations on Plaintiff's access to technological devices, violated Plaintiff's First Amendment rights under the Supreme Court's recent decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017). As to Plaintiff's request for damages, Judge Moses recommended dismissal on qualified immunity grounds except as to officer Lewis-Robinson for the period after the Supreme Court's decision in *Packingham*. R & R at 63-64. Defendants object to the Report's recommendation on the merits of Plaintiff's First Amendment claim and as to whether qualified immunity precludes money damages even post-*Packingham*. Plaintiff does not object to the recommended denial of damages pre-*Packingham*. The Court will address the merits of Plaintiff's claim and the question of qualified immunity in turn.

### a. The Motion to Dismiss is Denied as to Plaintiff's First Amendment Claim

Defendants' primary objection is that *Packingham* does not apply to parole conditions and Judge Moses erred in imposing intermediate scrutiny. Def. R & R Obj. at 17-19. The Court disagrees.

Under *Packingham*, blanket limitations on an individual's ability to access social media will receive intermediate scrutiny, even when imposed as conditions of parole. There is no indication in *Packingham* that parolees are exempted from the Court's decision. The North Carolina law challenged in *Packingham* applied to registered sex offenders generally, without

distinguishing between those who had finished any period of supervised release. *Packingham*, 137 S. Ct. at 1733-34; N.C. Gen. Stat. Ann. § 14-202.5(a) (applying the prohibition to registered sex offenders).[5] In fact, the Court was clear that the distinction between those who were presently under the supervision of the criminal justice system and those who no longer were was not a basis for its holding: "the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system is also *not* an issue before the Court." *Id.* at 1737 (emphasis added); *see also United States v. Browder*, 866 F.3d 504, 511 n.26 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 693 (2018) (noting that the Court in *Packingham* did not seem to rely on the fact that the ban extended beyond the supervision of the criminal justice system). More generally, after describing the myriad ways in which the internet and social networks are part of an ongoing revolution in human communication, the Court cautioned that it would "exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks in that medium." *Packingham*, 137 S. Ct. at 1736. Indeed, the Supreme Court's decision to apply intermediate scrutiny was based on the sheer breadth of legitimate speech burdened, a concern that applies with equal force here. *Packingham*, 137 S. Ct. at 1735-37. While the Court stated that "it can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor" it then made clear "[s]pecific laws of that type *must be* the State's first resort to ward off the serious harm that sexual crimes inflict." *Id.* at 1737 (emphasis added). Therefore, while in some

---

[5] *See also* Brief for Amici Curiae the Cato Institute, the American Civil Liberties Union, and the American Civil Liberties Union of North Carolina in Support of Petitioner, *Packingham v. North Carolina*, 2016 WL 8136359 (U.S.), 7 (U.S., 2016) ("North Carolina's registry law in turn applies whether or not a former offender is on parole or probation.").

contexts parolees receive a lesser degree of constitutional protection, it would be inconsistent with *Packingham* to categorically exempt parole conditions from its reach.

Nor is the Court persuaded by Defendants' objection that *Packingham* is distinguishable because Plaintiff's parole conditions are not absolute. Def. R & R Obj. at 18-19. Condition No. 48, prohibiting access to commercial social networking websites, is not written to allow parole officers to grant individualized exceptions. And Plaintiff alleges that in practice these conditions have functioned as an almost absolute bar, with the exception of using a school computer and "only for academic purposes and for purposes related to this lawsuit." SAC ¶¶ 81-92. These limited exceptions do not satisfy the concerns about access to the "vast democratic forums of the internet" for a multiplicity of purposes that was the basis for the Supreme Court's decision. *Packingham*, 137 S. Ct. at 1735-37 (internal quotation marks omitted). Furthermore, the possibility of certain case-by-case exceptions was insufficient to save other overly broad conditions of supervised release limiting internet or technology access, even when analyzed under a less demanding standard. *See United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002); *United States v. Peterson*, 248 F.3d 79, 81, 82-84 (2d Cir. 2001). Therefore, the possibility of case-by-case exceptions from some of these conditions does not exempt them from *Packingham*, a conclusion reinforced by the nearly blanket manner they have allegedly been applied.

Defendants do not argue that these conditions can withstand intermediate scrutiny and the Court agrees with Judge Moses that they cannot. Under intermediate scrutiny, a law must not "burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 134 S.Ct. 2518, 2535 (2014) (internal quotation marks omitted). Plaintiff's crime did not involve the internet, social media, the exchange of electronic messages,

cell phones, or computers. R & R at 62. As applied to Plaintiff, these restrictions therefore plainly burden substantially more speech than necessary and therefore fail intermediate scrutiny.

### b. Defendants Are Entitled to Qualified Immunity on Plaintiff's First Amendment Claims

While Plaintiff has sufficiently pled a First Amendment claim on the merits, the Court must still address whether the doctrine of qualified immunity warrants dismissing Plaintiff's claim for money damages. If a defendant can show that qualified immunity applies, a claim for money damages should be dismissed as a matter of law. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Qualified immunity would not, however, bar Plaintiff's request for injunctive relief. *See, e.g.*, *Horne v. Coughlin*, 191 F.3d 244, 250 (2d Cir. 1999) (qualified immunity is not a defense to injunctive relief).

The Court finds that Plaintiff's rights were not clearly established under *Packingham* and that Defendants are therefore entitled to qualified immunity. For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotes omitted). Though for the reasons above the Court ultimately agrees with Plaintiff's reading of *Packingham*, it has not been established in this jurisdiction that it applies to conditions of supervised release and a number of other federal courts have indicated that it might not. *See, e.g.*, *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017). Therefore, the constitutional question of *Packingham*'s application in this context was not beyond debate.

As to the period before *Packingham*, Plaintiff did not object to Judge Moses's conclusion that his rights before the Supreme Court's decision were not clearly established. Reviewed under the deferential clear error standard, it was not clearly erroneous for Judge Moses to conclude that—in part because Plaintiff had implicitly conceded this argument, R & R at 64—

35

the unlawfulness of Defendants' conduct under the First Amendment was not clearly established prior to *Packingham*. Therefore, qualified immunity bars Plaintiff's request for money damages on his First Amendment claim both before and after *Packingham*.

For these reasons, the Court ADOPTS the Report's reasoning as to the merits of Plaintiff's First Amendment claim but not as to damages. Defendants' motion to dismiss Plaintiff's First Amendment claim on the merits is DENIED, but Defendants' motion to dismiss Plaintiff's claim for money damages is GRANTED.

### 5. Defendants' Motion to Dismiss is Denied in Part as to Plaintiff's Claim of Interference with his Family Relationships (Claim 5)

Plaintiff contends that he has a fundamental right to contact with his extended family and that his parole conditions prohibiting contact with minors in his family violates his due process rights. Plaintiff seeks both injunctive relief and money damages on this claim. Under Special Condition No. 15, Plaintiff is prohibited from having any contact with children under the age of 18 without the prior approval of his parole officer. SAC, Ex. C at 6. Judge Moses agreed with Defendants that Plaintiff had no fundamental right to contact extended family members who are not his own children and with whom he never had a close or custodial relationship. R & R at 65-67. However, even though no fundamental right was at stake, Judge Moses found that the Due Process Clause still requires that parole conditions be "reasonably related to [the parolee's] prior conduct or the government's interest in his rehabilitation." R & R at 67 (alteration in Report) (quoting *Singleton v. Doe*, 210 F. Supp. 3d 359, 374 (E.D.N.Y. 2016)). Judge Moses found that viewed on the motion to dismiss standard, Plaintiff had sufficiently alleged a claim for injunctive relief and damages as against Defendant Lewis-Robinson. Defendants object on several grounds, Plaintiff does not.

The Court does not find any error—clear or otherwise—in Judge Moses's conclusion that Plaintiff's fundamental rights were not implicated here and adopts this portion of the Report.

Defendants object that Plaintiff only pled a violation of his fundamental rights, and therefore Judge Moses erred by proceeding to apply the lower standard of review. Def. R & R Obj. at 19-21. It is true that Plaintiff did not include Special Condition No. 15 among the conditions that he challenged in a separate section as arbitrary and capricious. SAC ¶¶ 171-73. Nonetheless, Plaintiff did plead that the way the condition is applied to him violates the Due Process Clause, *id.* ¶¶ 93-105, 164-69, which provides the level of review that Judge Moses applied, *Singleton*, 210 F. Supp. 3d at 372-74. Therefore, the Court finds that Plaintiff stated a claim that the way Condition No. 15 is being applied to him violates his rights under the Due Process Clause.

As to the merits of Plaintiff's claim, Defendants object that because Plaintiff's crime involved harm to a minor, there is a rational relationship between this condition and the threat Plaintiff poses to children. Def. R & R Obj. at 19-20. Drawing all reasonable inferences in Plaintiff's favor, Plaintiff has alleged that Condition No. 15 is being applied as an absolute ban on his ever coming into contact with a minor member of his family. The Court agrees with Judge Moses that Plaintiff's kidnapping for ransom of an unrelated minor has no rational relationship to an absolute bar on his ever seeing minors to whom he is related, even in the presence of other adult family members. R & R at 68-69. Therefore, the Court rejects Defendants' objection.

Defendants also specifically object that neither form of relief sought by Plaintiff, injunctive relief and money damages, are available on this claim, warranting dismissal. Def. R & R Obj. at 20, 20 n.3. The Court addresses each objection in turn.

Separate from their arguments about the preliminary injunction, Defendants object that Plaintiff's request for injunctive relief should be dismissed entirely, since the only relief he could ultimately receive would be an impermissibly vague injunction ordering Defendants to "follow the law." *Id.* at 20 n.3. Defendants are correct that "[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)). Under this standard, "an injunction must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" *Id.* at 240-41 (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir.1989)). The purpose of this rule is "to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing." *Id.* at 241 (internal quotation marks omitted) (quoting *Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir.1997)). The Court does not find that, as a matter of law, it would be impossible to tailor sufficiently specific injunctive relief to this claim. For example, an injunction requiring Plaintiff's parole officers to consider his requests on a case-by-case basis and provide an explanation based on legitimate interests such as public safety and rehabilitation would provide sufficient notice to Defendants as to what is prohibited, and be definite enough in scope for further review.

As to damages, the Court concludes that it was not clearly established that Defendant Lewis-Robinson's conduct was unlawful and she is therefore entitled to qualified immunity. While it is established that parole conditions may not be applied in an arbitrary and capricious manner, the qualified immunity analysis requires greater particularity. *See White v. Pauly*, 137 S. Ct. 548, 551-52 (2017). The only factually similar case to which Plaintiff points, *Doe v. Lima*,

involved an individual's relationship with his son, and therefore implicated a fundamental liberty interest. 270 F. Supp. 3d 684, 704 (S.D.N.Y. 2017); *see also Doe v. Annucci*, No. 14 CIV. 2953 (PAE), 2015 WL 4393012, at *12-13 (S.D.N.Y. July 15, 2015) (same). Absent other authority, the Court agrees with *Singleton*, which found that qualified immunity applies to due process challenges to parole conditions as "[a]lthough parolees are entitled to certain limited due process rights in the conditions of their parole, those due process rights are not clearly defined." 210 F. Supp. 3d at 374. Therefore, the Court concludes that all Defendants are entitled to qualified immunity on this claim.

For the reasons given above, the Court ADOPTS the Report as to the merits of Plaintiff's claim, but not as to qualified immunity. Defendants' motion to dismiss is DENIED as to the merits of Plaintiff's claim, but GRANTED as to Plaintiff's claim for damages.

### 6. Defendants' Motion to Dismiss is Denied in Part on Plaintiff's Claim that Nine of His Parole Conditions Are Arbitrary and Capricious (Claim 6)

In Plaintiff's sixth and final claim, he alleges that a number of his parole conditions are arbitrary and capricious and that his parole officers acted arbitrarily and capriciously, in violation of the Due Process Clause. This includes officer Lewis-Robinson's alleged refusal to consider alternate proposed residences besides the shelter to which he has been assigned, the restrictions on his internet and technology use, as well as "Special Condition No. 24, governing his relationships with consenting adults; Nos. 31 and 32, which prohibit him from owning, operating, or being a passenger in a motor vehicle without the permission of his PO; No. 14, which prohibits him from purchasing or possessing sexually explicit materials; No. 19, which prevents him from owning a pet; and No. 37, which prohibits him from renting a post office box without his PO's prior approval." R & R at 70. Plaintiff seeks injunctive relief and damages on these claims. The Court will address each of these restrictions in turn.

As an initial matter, the parties and Judge Moses agree as to the legal standard for evaluating such claims.[6] "[P]arolees are entitled to some form of due process in the imposition of special conditions of parole." *Pollard v. United States Parole Comm'n*, No. 15-CV-9131 (KBF), 2016 WL 3167229, at *4 (S.D.N.Y. June 6, 2016) (citing cases). "In the Second Circuit, special restrictions on a parolee's rights are upheld where they 'are reasonably and necessarily related to the interests that the Government retains after his conditional release.'" *Muhammad v. Evans*, No. 11 CV 2113 (CM), 2014 WL 4232496, at *9 (S.D.N.Y. Aug. 15, 2014) (quoting *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir.1972)). Conditions will be upheld if there is a reasonable relationship to the parolee's prior conduct or to a legitimate government interest such as rehabilitation, the prevention of recidivism and future offenses, and protection of the public. *Singleton*, 210 F. Supp. 3d at 372–74 (citing cases). On the other hand, if conditions are arbitrary and capricious, they will be invalidated. *See, e.g.*, *Boddie*, 2011 WL 1697965, at *2 (citing cases). Defendants argue that there is effectively a heightened pleading standard for such claims, Def. Mot. to Dismiss, Dkt. No. 60, at 17, but the Court agrees with Judge Moses that the sole case on which Defendants purport to base this principle, *Trisvan v. Annucci*, 284 F. Supp. 3d 288, 304 (E.D.N.Y. 2018), is properly understood as reflecting the unusual circumstances surrounding that case, not announcing a general heightened pleading standard. R & R at 76-77, 77 n.5. The Court will apply the standard pleading requirements and the arbitrary and capricious standard to Plaintiff's various challenges.

### a. Defendants' Motion to Dismiss is Denied in Part as to Special Condition No. 4

---

[6] Defendants had initially argued that state court was the only proper venue for such claims, but appear to no longer press that argument after Judge Moses correctly rejected it. R & R at 68 n.48.

Plaintiff challenges that Defendants are arbitrarily and capriciously requiring him to stay in the shelter to which he has been assigned. Judge Moses recommended that Defendants' motion to dismiss be denied as to the merits of Plaintiff's claim, but granted as to money damages except with respect to Defendant Lewis-Robinson. R & R at 70-71. Defendants object as to both.

Defendants object that Judge Moses erred by finding that Plaintiff has stated a claim on the basis of a single incident alone. Def. R & R Obj. at 21-22. The Court relies on Judge Moses's thorough description of Plaintiff's allegations surrounding his request to move out of the Willow Avenue Men's Shelter and in with his fiancée's sister, Ms. Blake. R & R 70-71. The Court agrees with Judge Moses that Plaintiff has alleged facts giving rise to a plausible claim on the merits that his residency requirements are being arbitrarily and capriciously applied in a manner that de facto confines him to the shelter for the convenience of his parole officer. R & R at 71. This objection is therefore rejected.

Here again, Defendants specifically object that neither injunctive relief nor money damages are available on this claim, warranting dismissal. The Court addresses each in turn.

Independently of their arguments about a preliminary injunction, Defendants object that any injunctive relief on this claim would be so vague as to be unenforceable and so the claim for injunctive relief should be dismissed entirely. Def. R & R Obj. at 22. As above, the Court cannot conclude that, as a matter of law, it would be impossible to tailor sufficiently specific injunctive relief on this claim. For example, Plaintiff offers that if he could establish in discovery "that Ms. Blake would be willing to house him and there is no non-arbitrary reason to deny his request to move" the Court could require Defendants to allow Plaintiff to live with Ms.

Blake. Pl. R & R Obj. Resp. at 27. Therefore, the Court cannot conclude that, as a matter of law, no appropriate injunctive relief could be granted on this claim.

As to damages, the Court finds that while it is established that in general parole conditions cannot be arbitrary and capricious, neither Judge Moses nor Plaintiff identified any sufficiently similar cases to clearly establish that Defendant Lewis-Robinson's conduct with respect to alternate residences was unconstitutionally arbitrary. *See Pauly*, 137 S. Ct. at 551-52; *Singleton*, 210 F. Supp. 3d at 374. Therefore, the parole officer defendants are entitled to qualified immunity on this claim.

For the reasons above, the Court therefore ADOPTS the Report as to the merits of Plaintiff's claim, but not as to qualified immunity. Defendants' motion to dismiss Plaintiff's claim on the merits is DENIED, but Defendants' motion to dismiss Plaintiff's claim for money damages is GRANTED.

### b. Defendants' Motion to Dismiss is Granted as to Special Condition No. 24

Special Condition No. 24 requires Plaintiff to disclose his sexual relationships to his parole officer and disclose his supposed prior history of sexual abuse to his partners. SAC, Ex. C ¶24. Judge Moses recommended that since this was not "reasonably related to his prior conduct or to the government's interest in his rehabilitation[,]" the motion to dismiss should be denied as to the merits of Plaintiff's claim. R & R at 74-75. However, Judge Moses recommended granting the motion to dismiss with respect to money damages, as Plaintiff had failed to sufficiently allege harm and Defendants were entitled to qualified immunity. *Id.* at 75. For the reasons given below, the Courts finds it unnecessary to address the merits of this claim, as Plaintiff has failed to show standing on his claim for injunctive relief, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-06 (1983), and qualified immunity bars his claim for damages, *Mesa v.*

42

*City of New York*, No. 09 CIV. 10464 JPO, 2013 WL 31002, at *7 (S.D.N.Y. Jan. 3, 2013) (a court is not required to address the merits of a claim before deciding that qualified immunity applies).

Though this was not raised as an objection, the Court finds that Plaintiff has failed to sufficiently allege a risk of future harm sufficient for standing to bring a claim for injunctive relief. A federal court has an obligation to confirm whether a plaintiff has standing, including raising the issue *sua sponte*. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). "[A] plaintiff seeking injunctive relief must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent." *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (emphasis in original) (citing *Lyons*, 461 U.S. at 105-06). To satisfy the first prong, a Plaintiff must establish that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Lyons*, 461 U.S. at 101-02 (internal quotation marks omitted). Past injury alone is insufficient to satisfy this requirement, unless it is causing continuing, present harm. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir.1998). In this case, Plaintiff has only alleged the past harm of being required to tell his fiancée about his status and that "he was forced to disclose the sexual nature of his relationship to PO Lewis-Robinson in detail." SAC ¶¶ 121-22. Plaintiff has not alleged that either of these requirements is ongoing, nor that he plans to enter into a new relationship such that this disclosure would be triggered again. Therefore, the Court will dismiss, without prejudice, Plaintiff's request for injunctive relief on this claim for lack of standing.[7]

---

[7] *See Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*.") (emphasis in original).

As to damages, for similar reasons as those given in the qualified immunity analyses above, there are no sufficiently similar cases to establish with sufficient particularity that Defendant Lewis-Robinson's conduct with respect to this claim was unconstitutionally arbitrary. *See Pauly*, 137 S. Ct. at 551-52; *Singleton*, 210 F. Supp. 3d at 374. Defendant parole officers are therefore entitled to qualified immunity on this claim. For this reason, the Court does not reach the question of whether Plaintiff sufficiently alleged past harm.

For the forgoing reasons, neither injunctive relief nor money damages are available on this claim, which must therefore be dismissed. The Report is ADOPTED as to qualified immunity, but not as to the merits of Plaintiff's claim or whether Plaintiff sufficiently alleged harm. Defendants' motion to dismiss this claim is hereby GRANTED in full.

### c. Defendants' Motion to Dismiss is Granted as to Special Conditions Nos. 31 and 32

Plaintiff challenges Special Conditions Nos. 31 and 32, which *inter alia*, prohibit him from obtaining a driver's license, as well as from owning, operating, or being a passenger in a motor vehicle, without permission of his Parole Officer. SAC, Ex. C ¶¶ 31-32. Judge Moses found that because Plaintiff had used a car in the commission of his crime and the conditions imposed on him were not absolute, these limitations were not arbitrary and capricious and recommended dismissal of these claims. R & R at 75-76. Plaintiff did not object to this recommendation, which will therefore be reviewed for clear error. The Court finds that Judge Moses' recommendation is not clearly erroneous. Where an individual used a vehicle in the commission of their crime, a parole condition limiting their access to such vehicles without approval is not unreasonable. *See Gerena v. Rodriguez*, 192 A.D.2d 606, 606-07 (1993). Therefore, the Court ADOPTS the Report in full as to this claim and Defendants' motion to dismiss this claim is hereby GRANTED.

### d. Defendants' Motion to Dismiss is Granted as to Special Conditions Nos. 14, 19, and 37

Plaintiff challenges that prohibitions on his viewing pornography (Special Condition No. 14), owning a pet (Special Condition No. 19), or owning a post office box (Special Condition No. 37), are arbitrary and capricious. R & R at 76-78. However, Judge Moses recommended that because Plaintiff had failed to allege that any of these prohibitions were having any impact on his life, his claims should be dismissed. R & R at 78. Plaintiff did not object to this recommendation, which will therefore be reviewed for clear error.

This Court finds no clear error in Judge Moses's recommendation. Plaintiff has not pled standing sufficient for either injunctive relief or money damages. As to injunctive relief, even drawing all reasonable inferences in his favor, Plaintiff has failed to allege "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Lyons*, 461 U.S. at 101-02. Nor has Plaintiff pled past harm that would warrant money damages. Indeed, Plaintiff has pled no injury at all resulting from these conditions, but rather simply lists them off in his complaint. SAC ¶¶ 128-29, 173. Because Plaintiff lacks standing, these claims must be dismissed. Therefore, the Court ADOPTS the Report on this claim and Defendants' motion to dismiss Plaintiff's claims with respect to Special Conditions Nos. 14, 19, and 37 is therefore GRANTED without prejudice.

### e. Defendants Are Entitled to Qualified Immunity on Plaintiff's Claim that the Internet and Technology Restrictions Are Arbitrary and Capricious

In addition to his First Amendment challenge, Plaintiff also challenges that the parole conditions restricting his access to the internet and technology are arbitrary and capricious. SAC ¶ 173(i)-(ii). The Report does not address this claim separately, as it considered the same issues in its First Amendment analysis. R & R at 70 n.50. Neither party objected. The Court agrees

that it is not necessary to determine the merits of this claim separately. However, whether Defendants are entitled to qualified immunity on Plaintiff's claim for damages under the Due Process Clause requires a separate analysis from the First Amendment claim.

The Court finds that Plaintiff's due process rights here were not clearly established for the purposes of qualified immunity. A right may be clearly established by either controlling authority or "a robust consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011) (internal quotation marks omitted). Here, neither condition is met. Second Circuit decisions interpreting the somewhat more stringent statutory standard imposed on federal conditions of supervised release under 18 U.S.C. § 3553(a) and § 3563(b) have invalidated conditions restricting internet or computer access if they were not reasonably related to the purposes of sentencing or inflicted a greater deprivation of liberty than necessary. *See United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002); *United States v. Peterson*, 248 F.3d 79, 82-84 (2d Cir. 2001). Yet given the different legal standard, these are not controlling authority as to the constitutional analysis of state parole conditions. A recent case in the Eastern District of New York drew on these decisions—while noting the different standards—to sustain on summary judgment a challenge to a parole condition limiting a parolee's ability to own a phone with a camera where there was no evidence that it was related to prior conduct. *Singleton*, 210 F. Supp. 3d at 375-76. However, the court in that case also found that Defendants were entitled to qualified immunity given that due process rights in this context are "not clearly defined." *Id.* at 374. Therefore, while a consensus is emerging that it is arbitrary and capricious under the Due Process Clause to impose these kinds of technology and internet restrictions without an individualized link to prior conduct or another legitimate government interest, it has not yet been

sufficiently clearly established for the purposes of the qualified immunity analysis. Defendants' motion to dismiss Plaintiff's claim for damages on this claim is therefore GRANTED.

For the reasons given above, Defendants' motion to dismiss is hereby GRANTED in full as to Claim 1, Claim 3 as to residences and the consensual relationships rule, Claim 6 as to the consensual relationships rule, motor vehicles rule, pornography, pets, and P.O. boxes. Defendants' motion is also GRANTED as to money damages on all claims. Otherwise, Defendants' motion is hereby DENIED.

### D. Plaintiff is Entitled to a Preliminary Injunction on his Substantive Due Process Claim

The Court now turns to Plaintiff's motion for a preliminary injunction. Judge Moses's Report recommended that Plaintiff is entitled to a preliminary injunction on his substantive due process claim. Defendants object on several grounds, which the Court addresses in turn.

As an initial matter, Defendants argue that even if Plaintiff has sufficiently pled a claim to survive their motion to dismiss, Plaintiff has not demonstrated a substantial likelihood of success on the merits. Def. R & R Obj. at 12. For the reasons given above in the section denying Defendants' motion to dismiss this claim, the Court disagrees and concludes that Plaintiff has established a clear likelihood of success on the merits justifying the imposition of a preliminary injunction. Defendants do not object to Judge Moses' recommendation that Plaintiff has shown irreparable harm, and the Court finds no error—clear or otherwise—in Judge Moses' thorough discussion of the question. R & R at 79-82.

Defendants object to the Report's recommendation that the preliminary injunction would be in the public interest. The Court disagrees. Judge Moses is correct that it is in the public interest to grant Plaintiff's motion for preliminary injunction because he presents no "*sexual risks that sex offender registration, and the Sex Offender Conditions, are designed to combat.*" R

& R at 82 (emphasis in original); Pl. R & R Obj. Resp. at 28. As a result, lifting Plaintiff's designation would not just ensure compliance with the Constitution, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citing cases), it would remedy ongoing harm to Plaintiff and increase the accuracy of SORA's designation of individuals as sex offenders, *see People v. Diaz*, 150 A.D.3d 60, 66 (N.Y. App. Div.), *aff'd on other grounds*, No. 134, 2018 WL 6492716 (N.Y. Dec. 11, 2018). And even if remedying a constitutional violation were not, standing alone, always enough to outweigh countervailing public interests, Def. R & R Obj. at 24, Defendants offer no concrete or persuasive examples of how the public interest would be harmed by the injunction. Defendants cursorily argue that the Report "(1) improperly placed the burden of proof on this issue upon defendants rather than plaintiff; (2) was not based on any evidence placed before the Court; (3) failed to offer sufficient deference to the state officials' determinations to the contrary; and (4) was factually incorrect given plaintiff's crimes of conviction." Def. R & R Obj. at 24. As noted above, Defendants at this stage have conceded that there was no sexual element to Plaintiff's offense. And the record offers no indication or allegation of a sexual element to Plaintiff's crime or of any risk of sexual misconduct, but rather a judicial determination by Justice Obus to the contrary. R & R at 10-11. Moreover, a significant number of parole conditions will remain even if Plaintiff is no longer designated as a sex offender, Pl. R & R Obj. Resp. at 28, and Defendants retain their discretion to impose conditions of parole that are reasonably related to a legitimate government interest and any non-sexual risk Plaintiff may pose. Therefore, the Court finds that Plaintiff has shown, based on the record, that it is in the public interest to grant a preliminary injunction.

Defendants also argue that the Court should only consider whether "the parole conditions imposed by the state officials . . . were so arbitrary and irrational that they could not protect the

public from Plaintiff in any manner, sexual or not." Def. R & R Obj. at 23. Even if this were true for Plaintiff's challenges to his specific conditions of parole, Plaintiff's Claim 2 objects to being designated as a "sex offender," and the question before the Court is thus whether that designation is rational and whether enjoining Defendants from labeling Plaintiff as such, and imposing parole conditions solely on that basis, would serve the public interest. Given that, as noted above, the injunction will allow Defendants to impose conditions based on any legitimate interests unrelated to Plaintiff's designation as a sex offender, this objection is unavailing.

Defendants also argue that the issue of parole conditions should be remanded to the Defendants to reconsider before any preliminary injunction issues. Def. R & R Obj. at 25-26. Specifically, the Defendants argue that they should have a chance to determine "whether any of the statutory parole conditions . . . should still be imposed here to protect the public." *Id.* The Court concludes that no such remand is necessary. Defendants cite the Second Circuit's decision in *Schwartz v. Dolan*, 86 F.3d 315 (2d Cir. 1996), to support their argument, but that decision is importantly different from the instant case in two ways.

First, unlike in *Schwartz,* the preliminary injunction here would provide Defendants with significant flexibility to design and tailor the manner in which they will comply. In *Schwartz,* the district court "gave detailed instructions" on how a state agency was required to provide notice to public assistance recipients, which would have involved "extensive modifications to the computer systems that create the notices." *Schwartz*, 86 F.3d at 319. By mandating a specific restructuring of the agency's operations, the district court had foreclosed the remedy the agency would have selected. *Id.* The Second Circuit held that because there were "different possible ways to remedy the violation," the agency should have had an opportunity to present its own plan for remedying the constitutional deficiencies. *Id.* Here, however, the preliminary

injunction language, as crafted by Judge Moses, provides Defendants with precisely the opportunity they seek to consider whether any parole conditions are still necessary to protect the public; Defendants have ample flexibility and discretion to impose parole conditions "to the extent they deem those conditions appropriate for plaintiff in light of his *non-sexual* criminal history and characteristics." R & R at 85. And, contrary to Defendants' contentions, they are not categorically prohibited from imposing discretionary conditions that may be similar in content to the mandatory conditions so long as they are not otherwise inconsistent with the injunction. Def. R & R Obj. at 25. As a result, this injunction does not involve the kind of systemic management by a federal court of the operation of state institutions that was problematic in *Schwartz*. Nor does it foreclose Defendants' ability to select the manner to remedy the violation identified. Since this injunction already provides Defendants with the flexibility they seek, remand is unnecessary to permit Defendants to choose how they wish to comply with the Court's ruling.

Second, *Schwartz* involved a permanent injunction, rather than the preliminary injunctive relief sought here. As is true in this case, preliminary injunctive relief is time-sensitive, which weighs against adopting procedures that will entail delays resulting in further ongoing irreparable harm. This consideration is particularly weighty here, as Plaintiff first filed his motion for a preliminary injunction over nine months ago and represents that remanding to Defendants for subsequent approval by this Court might result in the mooting of several of his claims. Pl. R & R Obj. Resp. at 29 n.11. Furthermore, with a preliminary injunction, a party will be given "an opportunity to present [their] own plan" for complying with a court's ruling, *Schwartz*, 86 F.3d at 319, before permanent injunctive relief, if any, is entered. Because Plaintiff is suffering ongoing,

irreparable harm, the Court declines to require another series of submissions to the Court before entering preliminary relief.

For all of the above-stated reasons, the Court concludes that Plaintiff has satisfied his burden of demonstrating that a preliminary injunction is warranted. The Court will ADOPT Judge Moses' recommended preliminary injunction on Claim 2. In addition, the Court agrees with the Report—and Plaintiff, Pl. R & R Obj. at 3—that the injunction recommended by Judge Moses on Claim 2 is sufficient to address Plaintiff's request for injunctive relief. R & R at 2, 85-86. Therefore, the Court finds it unnecessary to address whether Plaintiff has made a sufficient showing to warrant injunctive relief on his other surviving claims.

## VI.   Conclusion

For the reasons given above, the Court GRANTS Defendants' motion to dismiss as to Claim 1 in full; Claim 3 in full as to the consensual relationships rule, the residency requirement of Condition No. 4, and all claims for damages; Claim 4 as to damages; Claim 5 as to damages; Claim 6 as to damages on all claims, and for both injunctive relief and damages as to the claims regarding conditions regulating consensual relationships, motor vehicles, pornography, pets, and P.O. boxes.

The Court DENIES the motion to dismiss as to all other claims. The Court also clarifies that Defendant Acting Commissioner Annucci remains in this case in his official capacity as the Defendant for the purposes of any injunctive relief on Claims 2, 3, and 4. Pl. R & R Obj. at 9.

Finally, the Court GRANTS Plaintiff's request for a preliminary injunction on Claim 2, and hereby ADOPTS Judge Moses's well-crafted language: Defendants, together with their agents, employees, and all persons acting in concert with them, are preliminarily enjoined, pending the final resolution of this action, from enforcing, as against Plaintiff, the registration

and notification provisions made applicable to designated sex offenders by SORA (CL §§ 168a-168w), or the mandatory conditions prescribed by EL §§ 259-c(14) and (15) for parolees sentenced for an offense for which registration as a sex offender is required; and are directed to rescind the discretionary provisions of the Sex Offender Conditions (Yunus Decl. Ex. C, at ECF pages 4-10) except to the extent they deem those conditions appropriate for plaintiff in light of his non-sexual criminal history and characteristics.

This resolves docket numbers 43 and 59. As this matter has been referred to Magistrate Judge Moses for general pretrial, Dkt. 15, by separate order Judge Moses may schedule a case management conference.

SO ORDERED.

Dated: January ___, 2018
       New York, New York

ALISON J. NATHAN
United States District Judge